JULIE ARIAS YOUNG (State Bar No. 168664)
jyoung@yzllp.com
VICKY H. LIN (State Bar No. 253767)
vlin@yzllp.com
YOUNG & ZINN LLP
1150 South Olive Street, Suite 1800
Los Angeles, California 90015
Telephone: (213) 362-1860
Facsimile:  (213) 362-1861

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DOE, an individual, and on behalf of all others similarly situated; <br><br>     Plaintiff, <br><br>  v. <br><br> UNIVERSITY OF SOUTHERN CALIFORNIA, a California Not-for-Profit Corporation; DOES 1 through 20. <br><br>     Defendants. | Case No. 2:20-cv-06098 JAK (AGRx) <br><br> **DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION** <br><br> Date:  April 26, 2021 <br> Time: 8:30 a.m. |

# **TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................................7

II.     STATEMENT OF FACTS ........................................................................9

        A.      USC Is A World-Renowned University That Conducts
                Business Throughout The Country And The World. ..............................9

        B.      Plaintiff Signed An Arbitration Agreement. ...........................................9

        C.      The Arbitration Agreement Is Enforceable. ..........................................10

        D.      Plaintiff Filed This Lawsuit In Derogation Of Her/His
                Commitment To Arbitrate. ....................................................................12

III.    LEGAL ARGUMENT ............................................................................13

        A.      The FAA Governs The Arbitration Agreement. ...................................13

        B.      Arbitration Agreements Are Presumed To Be
                Valid and Enforceable. .........................................................................14

        C.      The Arbitration Agreement Is Valid And Complies
                With *Armendariz*. ..............................................................................15

        D.      Plaintiff's Claim For Rescission Of The Arbitration
                Agreement Is Meritless. .......................................................................17

                1.      There Is No Procedural Unconscionability. .............................17

                2.      There Is No Substantive Unconscionability. ...........................20

                3.      Plaintiff Cannot Show That Her/His Consent To The
                        Arbitration Agreement Was Obtained by Fraud. .....................25

                4.      Plaintiff Cannot Show That Enforcing The Arbitration
                        Agreement In This Case Would Be Prejudicial To The
                        Public Interest. .......................................................................27

        E.      All of Plaintiff's Claims In This Action Fall Within
                The Scope of The Arbitration Agreement. ...........................................28

        F.      The Court Should Dismiss Or Stay This Litigation
                Pending Arbitration. .............................................................................30

IV.     CONCLUSION ......................................................................................311

# TABLE OF AUTHORITIES

**page(s)**

**California Cases**

*Armendariz v. Foundation Health Psychcare Services,*
   24 Cal.4th 83 (2000).................................................................................*passim*

*Blankenheim v. E. F. Hutton & Co.,*
   217 Cal.App.3d 1463 (1990)...........................................................................26

*Dotson v. Amgen,*
   181 Cal.App.4th 975 (2010)......................................................................18, 20

*Engalla v. Permanente Med. Grp., Inc.,*
   15 Cal.4th 951 (1997)......................................................................................25

*Graham v. Scissor-Tail, Inc.,*
   28 Cal.3d 807 (1981).......................................................................................19

*Guido v. Koopman,*
   1 Cal.App.4th 837 (1991)................................................................................26

*Kinney v. United HealthCare Servs., Inc.,*
   70 Cal.App.4th 1322 (1999)...........................................................................20

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP,*
   74 Cal.App.4th 1105 (2000)...........................................................................19

*Larian v. Larian,*
   123 Cal.App.4th 751 (2004)............................................................................26

*McGill v. Citibank, N.A.,*
   2 Cal.5th 945 (2017)....................................................................................8, 29

*Page v. Superior Court,*
   31 Cal.App.4th 1206 (1995)............................................................................23

*Roman v. Superior Court,*
   172 Cal.App.4th 1462 (2009)..........................................................................18

*Romano v. Rockwell Int'l, Inc.,*
   14 Cal.4th 479 (1996)......................................................................................23

*Sanchez v. Valencia Holding Co.,*
   61 Cal.4th 899 (2015)......................................................................................18

*Sandquist v. Lebo Auto., Inc.,*
   1 Cal.5th 233 (2016)........................................................................................21

*California Cases, cont.*

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal.4th 1109 (2013)....................................................................18

*Stirlen v. Supercuts, Inc.*,
  51 Cal.App.4th 1519 (1997)............................................................28

*Torrecillas v. Fitness Int'l, LLC*,
  52 Cal.App.5th 485 (2020)..............................................................29

*Victrola 89, LLC v. Jaman Properties 8 LLC*,
  46 Cal.App.5th 337 (2020)..............................................................13

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995) .......................................................................13

*Asfaw v. Lowe's HIW, Inc.*,
  No. LA CV14-00697 JAK, 2014 WL 1928612 (C.D. Cal. May 13, 2014)....24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................19, 20

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)......................................................................8, 24

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)........................................................................28

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................19

*Biller v. Toyota Motor Corp.*,
  668 F.3d 655 (9th Cir. 2012)...........................................................13

*Buckeye Check Cashing v. Cardegna*,
  546 U.S. 440 (2006).......................................................................17

*Carter v. Rent-A-Ctr., Inc.*,
  718 Fed.Appx. 502 (9th Cir. 2017)..................................................24

*Circuit City Stores, Inc. v. Adams*,
  279 F.3d 889 (9th Cir. 2002)...........................................................14

*Daghlian v. DeVry Univ., Inc.*,
  582 F.Supp.2d 1231 (C.D. Cal. 2007)..............................................13

DEFENDANT'S MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION

*Federal Cases, cont.*

*Davis v. Nordstrom, Inc.*,
  755 F.3d 1089 (9th Cir. 2014)........................................................14

*Desai v. General Growth Props., Inc.*,
  654 F.Supp.2d 836 (N.D. Ill. 2009) .............................................27

*Epic Systems Corp. v. Lewis*,
  138 S.Ct. 1612 (2018) ...............................................................8, 24

*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (2013) ...................................................................8, 29

*Ferguson v. Countrywide Credit Indus., Inc.*,
  298 F.3d 778 (9th Cir. 2002)........................................................17

*Gelow v. Cent. Pac. Mortg. Corp.*,
  560 F.Supp.2d 972 (E.D. Cal. 2008).............................................13

*Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.*,
  344 F.Supp.3d 1111 (N.D. Cal. 2018) ..........................................30

*In re VeriSign, Inc., Derivative Litig.*,
  531 F.Supp.2d 1173 (N.D. Cal. 2007) ..........................................13

*Kilgore v. KeyBank, N.A.*,
  718 F.3d 1052 (9th Cir. 2013)..................................................24, 29

*Magana v. DoorDash, Inc.*,
  343 F.Supp.3d 891 (N.D. Cal. 2018) ............................................29

*Monster Energy Co. v. City Beverages, LLC*,
  940 F.3d 1130 (9th Cir. 2019).......................................................22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ...................................................................14, 28

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017).......................................................14

*Republic of Nicaragua v. Standard Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991).........................................................28

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017).......................................................27

*Shroyer v. New Cingular Wireless Servs.*,
  498 F.3d 976 (9th Cir. 2007).........................................................18

*Federal Cases, cont.*

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) ................................................................27, 28

*Sparling v. Hoffman Constr. Co.,*
    864 F.2d 635 (9th Cir. 1988) ...............................................30


**California Statutes**

Cal. Bus. & Prof. Code § 14259 .............................................12

Cal. Bus. & Prof. Code § 17200 .............................................12

Cal. Civ. Code § 1567 ............................................................25

Cal. Civ. Code § 1572 ............................................................25

Cal. Civ. Code § 1668 ......................................................21, 28

Cal. Civ. Code § 1670.5 .........................................................21

Cal. Civ. Code § 1689 ......................................................25, 27

Cal. Civ. Code § 1709 ............................................................25

Cal. Civ. Code § 1710 ............................................................25

Cal. Civ. Proc. Code § 1281 ...................................................14


**Federal Statutes**

9 U.S.C. § 2 ............................................................................14

9 U.S.C. § 3 .........................................................................9, 30

9 U.S.C. § 4 ..............................................................................9

**Regulations**

48 C.F.R. § 222.7402 ..............................................................23

48 C.F.R. § 222.7403 ..............................................................23


**Other**

Judicial Counsel of Cal. Jury Instr. 1908 ...............................26

## I.    **INTRODUCTION**

Defendant University of Southern California ("USC") brings this motion to enforce a stand-alone, bilateral arbitration agreement that Doe ("Plaintiff") (a "licensed attorney" with experience in alternative dispute resolution and counseling clients in employment law) signed upon hire in February 2018. Plaintiff is a Senior Investigator in USC's Office of Conduct, Accountability, and Professionalism (OCAP). Following multiple complaints from USC staff and faculty about Plaintiff's professional judgment, demeanor, and skills and Plaintiff's resistance to improvement, Plaintiff received verbal and written counseling and a final written warning in March 2019.[1] Within ten days, Plaintiff went on a year-long leave and, upon return, simultaneously filed two lawsuits (in state court and federal court).

Instead of submitting the claims to arbitration pursuant to Plaintiff's executed Agreement to Arbitrate Claims ("Arbitration Agreement"), Plaintiff has improperly filed a 314-paragraph complaint rife with patently false allegations designed to garner media attention. USC will prove Plaintiff's allegations of discrimination, retaliation, and misconduct false in arbitration; but arbitration is where this action belongs.

The Arbitration Agreement expressly requires Plaintiff to submit to binding arbitration "all claims, whether or not arising out of [Plaintiff's] employment, remuneration or termination, that [Plaintiff] may have against the University or any of its related entities." The Arbitration Agreement is fully bilateral and provides the safeguards set forth in *Armendariz v. Foundation Health Psychcare Services*, 24 Cal.4th 83, 97 (2000), for arbitration agreements between employers and their employees. In particular, the Arbitration Agreement provides for a neutral arbitrator,

---

[1] USC also learned during Plaintiff's employment that another state's supreme court Professional Conduct Committee issued a reprimand to Plaintiff for violating that state's Professional Rules of Conduct governing client conflicts of interest.

1    adequate discovery, and all relief that would otherwise be available in court, and

2    does not require Plaintiff to pay costs greater than the current filing fee in court.

3         In an attempt to avoid the comprehensive Arbitration Agreement Plaintiff

4    knowingly chose to sign, Plaintiff has alleged a claim for relief for "rescission"

5    arguing that the Arbitration Agreement should not be enforced against her/him

6    because (1) it is unconscionable; (2) her/his consent was induced by fraud; and (3)

7    the public interest would be damaged if it is enforced. Whether labeled as a cause of

8    action or arguments asserted in opposition to a motion to compel, is of no matter.

9    Here, the Court must decide whether a valid and enforceable agreement to arbitrate

10   exists and whether that agreement encompasses all of the disputes at issue. The

11   answer to both questions is yes and, thus, the matter should be compelled to

12   arbitration.

13        Nor is Plaintiff's inclusion of class action allegations in her/his complaint an

14   impediment to arbitration. Indeed, Plaintiff specifically agreed when Plaintiff signed

15   the Arbitration Agreement to waive "any right to bring on behalf of persons other

16   than Employee, or to otherwise participate with other persons in, any class or

17   collective action." That waiver is enforceable under the U.S. Supreme Court

18   decisions in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011) and *Epic*

19   *Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018).

20        Finally, that Plaintiff is seeking "public injunctive" relief to enjoin

21   enforcement of USC's arbitration agreements does not prevent compelling this

22   matter to arbitration as contractually agreed by the parties. *Ferguson v. Corinthian*

23   *Colleges, Inc.*, 733 F.3d 928, 934-937 (2013). The Arbitration Agreement does not

24   bar Plaintiff from seeking public injunctive relief "in any forum," and, in any event,

25   Plaintiff has not stated a claim for public injunctive relief, *i.e.*, "relief that has 'the

26   primary purpose and effect of' prohibiting unlawful acts that threaten future injury

27   to the general public." *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 951–952 (2017).

28   Rather, Plaintiff's complaint concerns only Plaintiff and, potentially, a sub-group of

1  USC employees who may seek to avoid their arbitration agreements and sue USC in

2  court.

3       In short, Plaintiff's claims are subject to a valid Arbitration Agreement which

4  the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, requires be enforced according

5  to its terms. USC thus respectfully requests that the Court grant its motion and order

6  Plaintiff to arbitrate all claims and dismiss her/his complaint or, in the alternative,

7  stay the instant proceedings until the arbitration is completed (9 U.S.C. § 3).

8  **II.**   **STATEMENT OF FACTS**

9       **A.**   **USC Is A World-Renowned University That Conducts**

10            **Business Throughout The Country And The World.**

11      USC is a world-renowned private research university that serves a student

12  body of more than 48,000 undergraduate and graduate students from all over the

13  United States and the World.[2] (Decl. of Kedra Ishop ("Ishop Decl.") ¶ 2.) In

14  addition to its two campuses in Los Angeles, USC maintains an educational

15  program in Washington, D.C. and fellowship opportunities throughout the United

16  States. (*Id.* ¶ 3.) USC also offers a wide variety of online courses for students

17  throughout the United States. (*Id.* ¶4.) Over 7,000 graduate students take at least

18  some portion of their courses online, with most of those students pursuing degrees

19  exclusively through distance education. (*Id.*)

20      **B.**   **Plaintiff Signed An Arbitration Agreement.**

21      Plaintiff is a licensed attorney and represents herself as a former "senior

22  partner" who "provided representation to clients regarding a variety of issues

23  including … Labor and Employment." (Compl. ¶ 6; Decl. of Heidi Thompson

24  ("Thompson Decl."), Ex. C.)[3] Plaintiff also claims to have more than 17 years of

25

26  [2] Of the 3,460 students in the 2020 entering first-year class, 57% of the students
    reside outside of California, and 12% of the students reside outside the United
27  States.  (Ishop Decl. ¶ 2.)

28  [3] Because Plaintiff filed this lawsuit using the pseudonym "Doe" instead of her/his

1   experience in the legal field and "13 years of Senior Management Experience,"

2   including "*specific training in ADR methods*." (Thompson Decl., Ex. C (emphasis

3   added)).

4     On or about February 9, 2018, USC extended Plaintiff an offer of

5   employment for the position of Senior Investigator at OCAP. (Thompson Decl., Ex.

6   A.) The offer specifically explains that it was "contingent" on "[a]cceptance of the

7   university's Agreement to Arbitrate Claims" which was "forwarded to [Plaintiff]

8   with th[e] offer." (*Id.* at p. 1.) Plaintiff electronically signed the Arbitration

9   Agreement on February 12, 2018. (*Id.* ¶¶2-3, Ex. B.)

10     **C.**   **The Arbitration Agreement Is Enforceable.**

11     The two-page Arbitration Agreement bears the title "**AGREEMENT TO**

12   **ARBITRATE CLAIMS**" in bold capital letters and states in part:

13     [T]he University and the faculty or staff member named below

14     ("Employee") agree to the resolution by arbitration of all claims,

15     whether or not arising out of Employee's University employment,

16     remuneration or termination, that Employee may have against the

17     University or any of its related entities, including but not limited to

18     faculty practice plans, or its or their officers, trustees, administrators,

19     employees or agents, in their capacity as such or otherwise; and all

20     claims that the University may have against Employee.

21   (Thompson Decl., Ex. B, at p. 1.)

22     The Arbitration Agreement goes on to explain that "[a]ny claim that

23   otherwise would have been decidable in a court of law — whether under local, state

24   or federal law — will instead be decided by arbitration, except as specifically

25   excluded by this Agreement." (Thompson Decl., Ex. B, at p. 1.) It then lists

26        ───────────────

27   real name, USC has redacted Plaintiff's name and other personally identifying

information from the exhibits to the Thompson and Young Declaration. Counsel for

28   USC will provide unredacted copies of these exhibits upon request.  *See* L.R. 5.2-1.

examples of claims it covers, including, without limitation:

> …claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for "whistleblowing" or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.[4]

(*Id.*)

Pursuant to the Arbitration Agreement, "[t]he parties agree that final and binding arbitration shall be the sole exclusive remedy for resolving any claims covered by this Agreement, instead of any court action, which is hereby expressly waived." (*Id.*) I specifically states that both parties "are giving up their respective rights to a jury trial." (Thompson Decl., Ex. B, at p. 1.) It also specifies that the arbitration will proceed "in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), except to the extent such rules conflict with the procedures set forth herein." (*Id.*) The Arbitration Agreement informed Plaintiff that the JAMS Employment Arbitration Rules & Procedures are available at http://www.jamsadr.com/rules-employment-arbitration and that USC would also provide a printed copy upon request. (*Id.*)

---

[4] The only claims excluded are claims under Title VII of the Civil Rights Act of 1964, tort claims related to sexual assault or harassment, claims for workers' compensation or unemployment benefits, faculty claims subject to writ of administrative mandamus, administrative charges with a fair employment practices agency or the NLRB, and claims arising under certain specific statutes. (Thompson Decl., Ex. B, at p. 1.) None of those exclusions are applicable here.

1      With respective to class actions, Plaintiff agreed to the following:

2      To the maximum extent permitted by law, Employee hereby waives any right

3      to bring on behalf of persons other than Employee, or to otherwise participate

4      with other persons in, any class or collective action. Employee retains the

5      right to bring claims in arbitration for himself or herself as an individual (and

6      only for himself or herself).

7  (*Id.* at pp. 1-2.)

8      **D.**      **Plaintiff Filed This Lawsuit In Derogation Of Her/His**

9             **Commitment To Arbitrate.**

10      On July 8, 2020, Plaintiff filed this action, alleging purported claims for: (1)

11  Lanham Act violations; (2) an injunction under the UCL and California Business

12  and Professions Code § 14259;[5] (3) Title IX discrimination and retaliation; (4)

13  negligent hiring, supervision, and retention; (5) rescission of and/or UCL injunction

14  against the arbitration agreement; and (6) a class claim for "avoidance of" and/or

15  UCL injunction against arbitration agreements. These claims do not fall within the

16  limited list of excluded claims excluded from the Arbitration Agreement and, thus,

17  are subject to arbitration.

18      For months prior to the filing of the complaint, the parties have been in contact

19  regarding Plaintiff's intention to file court actions. (Decl. of Julie Arias Young

20  ("Young Decl.") ¶ 2.)  Most recently, on September 11, 2020, USC's counsel wrote

21  counsel for Plaintiff reminding him that Plaintiff had signed the Arbitration

22  Agreement (attaching a copy) and requesting that Plaintiff stipulate to submit the

23  matter to arbitration. (*Id.* ¶ 3 and Ex. E.) Plaintiff chose to file court actions instead.

24  (*Id.* ¶¶ 4-5, Exs. F-G.)

25

26

---

27  [5] Although the caption identifies the second cause of action as "Injunction under

28  Unfair Competition Law § 17200 and Business and Professions Code § 14259," this second cause of action is not in the body of the complaint.

## III.   LEGAL ARGUMENT

### A.   The FAA Governs The Arbitration Agreement.

The FAA governs because the Arbitration Agreement expressly provides that "the Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings pursuant to this Agreement." (Thompson Decl., Ex. B, at p. 2.) This is an enforceable choice of law provision. *Victrola 89, LLC v. Jaman Properties 8 LLC*, 46 Cal.App.5th 337, 346 (2020) ("when an agreement provides that its 'enforcement' shall be governed by the FAA, the FAA governs a party's motion to compel arbitration"); *see Biller v. Toyota Motor Corp.*, 668 F.3d 655, 662–663 (9th Cir. 2012) (applying the FAA where the "plain language" of the arbitration agreement stated that the FAA applied); *In re VeriSign, Inc., Derivative Litig.*, 531 F.Supp.2d 1173, 1224 (N.D. Cal. 2007) ("The FAA governs the issue of arbitrability here because the agreement expressly so provides and because the agreement involves interstate commerce.").

The FAA also governs because USC affects and is engaged in interstate commerce.[6] USC maintains educational programs in states outside of California. The USC community (including employees and students) transacts business and/or communicates with applicants, students, parents, and third parties throughout the

---

[6] The FAA's required nexus to interstate commerce is low; any contract that in any way affects interstate commerce satisfies this requirement. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) (applying the FAA to a termite-extermination contract applicable to one single family home because the defendant was a multistate firm and shipped treatment and repair material from out of state); *Daghlian v. DeVry Univ., Inc.*, 582 F.Supp.2d 1231, 1241, fn.21 (C.D. Cal. 2007) (approving of prior rulings that a school's post-secondary educational services constituted "interstate commerce" because its operation necessarily involved communication between states: information regarding registration, financial aid, curriculum, testing and measurement, and students, faculty, administrators, and money moved back and forth between states.); *Gelow v. Cent. Pac. Mortg. Corp.*, 560 F.Supp.2d 972, 978 (E.D. Cal. 2008) (holding that the FAA applied to the arbitration agreement because defendant's business was involved in interstate commerce as it had operations in several states).

1  country and internationally by telephone, U.S. Mail, the Internet, courier service,
2  and other forms of interstate communications. (Ishop Decl. ¶ 5.) Students also pay
3  their courses using checks, electronic payments, or loans made by institutions – all
4  of which are transacted through mail, telephone, electronically, courier service, or
5  other means involving interstate commerce. (*Id.*)

6          B.     **Arbitration Agreements Are Presumed To Be Valid and**
7                  **Enforceable.**

8          In adjudicating a motion to compel arbitration, "the role of the district court is
9  to determine if a valid arbitration agreement exists, and if so, whether the agreement
10  encompasses the disputes at issue*." Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092
11  (9th Cir. 2014). Arbitration agreements are presumed to be valid and the party
12  seeking to avoid arbitration bears the burden of demonstrating otherwise. 9 U.S.C. §
13  2 (arbitration agreements are "valid, irrevocable and enforceable, save upon such
14  grounds as exist at law or in equity"); Cal. Civ. Proc. Code § 1281 ("A written
15  agreement to submit to arbitration an existing controversy or a controversy
16  thereafter arising is valid, enforceable and irrevocable, save upon such grounds as
17  exist for the revocation of any contract."); *Poublon v. C.H. Robinson Co.*, 846 F.3d
18  1251, 1260 (9th Cir. 2017) ("the party opposing arbitration bears the burden of
19  proving any defense, such as unconscionability") (quotation and citation omitted).
20  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved
21  in favor of arbitration, whether the problem at hand is the construction of the
22  contract language itself or an allegation of waiver, delay, or a like defense to
23  arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,
24  24-25 (1983). "In determining the validity of an agreement to arbitrate, federal
25  courts 'should apply ordinary state-law principles that govern the formation of
26  contracts.'" *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)
27  (citation omitted).

28

C.     **The Arbitration Agreement Is Valid And Complies With** ***Armendariz.***

In *Armendariz*, the California Supreme Court reviewed key features of an arbitration agreement that required the mandatory arbitration of an employee's claims. As the *Armendariz* Court explained, "[s]uch an arbitration agreement is lawful if it: (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Armendariz*, 24 Cal.4th at 102 (citations omitted).

Here, Plaintiff and USC entered into an arbitration agreement that fully complies with *Armendariz*. Moreover, the Arbitration Agreement specifically states that arbitrations "shall" be "conducted in accordance with the JAMS Employment Arbitration Rules & Procedures" ("JAMS Rules"). (Thompson Decl., Ex. B, at p. 1.) The JAMS Rules provide additional procedural safeguards, which are entirely consistent with the standards set forth in *Armendariz*.

First, the Arbitration Agreement provides for "impartial arbitration." (Thompson Decl., Ex. B, at p. 1.) The JAMS Rules also ensure neutral arbitration as they explicitly require that arbitration be conducted by "one neutral Arbitrator." (Young Decl., Ex. H, Rule 7(a).) JAMS Rule 15, meanwhile, provides a mechanism by which the neutral arbitrator is selected via the parties' striking potential arbitrators from a list provided by JAMS. (*Id.*)

Second, the Arbitration Agreement and the rules guarantee more than adequate discovery, sufficient for Plaintiff to vindicate her/his claims. The Arbitration Agreement provides that the Arbitrator "shall afford the parties adequate discovery, including deposition discovery, taking into account their shared desire to have a fast, cost-effective dispute-resolution mechanism." (Thompson Decl., Ex. B, at p. 2.) JAMS' rules provide for the exchange of "all non-privileged documents and

DEFENDANT'S MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION

1  other information … relevant to the dispute or claim" and the "names of individuals

2  whom they may call as witnesses." (Young Decl., Ex. H, Rule 17(a).). The exchange

3  of such information is a continuing obligation by the parties. (Id., Rule 17(c).) In

4  addition, under the JAMS Rules, each party is entitled to take a minimum of one

5  deposition and the Arbitrator is empowered to decide whether to grant additional

6  depositions or other discovery, "based upon the reasonable need for the requested

7  information." (Id., Rule 17(b) and (d).)

8  Third, the Arbitration Agreement provides that "the arbitrator shall render an

9  award and a written, reasoned opinion in support thereof." (Thompson Decl., Ex. B,

10  at p. 2.) The JAMS Rules similarly require a written award and written reasons for

11  the award. (Young Decl., Ex. H, Rule 24(h).)

12  Fourth, under the Arbitration Agreement, "[t]he arbitrator shall award all the

13  remedies to which the prevailing party is legally entitled, including attorneys' fees

14  and/or litigation costs if recoverable under applicable law." (Thompson Decl., Ex.

15  B, at p. 2.) The JAMS Rules contain similar language and allow the arbitrator to

16  grant any remedy or relief that is "within the scope of the Parties' agreement"

17  including any "equitable or legal remedy" and attorneys' fees in accordance with

18  applicable law. (Young Decl., Ex. H, Rule 24(c) and (g).)

19  Fifth, the Arbitration Agreement provides that the "Employee's share of the

20  arbitrator's fee and the JAMS filing fee shall be no more than the then-current filing

21  fee in the California Superior Court...." (Thompson Decl., Ex. B, at p. 1.) The JAMS

22  Rules impose further restrictions that, in cases like this, "the only fee that an

23  employee may be required to pay is the initial JAMS Case Management Fee," which

24  cannot be more than $400. (Young Decl., Ex. H, Rule 31(c); and Ex. I.) This is *less*

25  than the current filing fee of $435 in Los Angeles Superior Court and equivalent to

26  the filing fee in U.S. District Court – Central District of California.

27

28

1    Accordingly, on its face, and when viewed in conjunction with the JAMS

2    Rules that are explicitly incorporated, the Arbitration Agreement is enforceable

3    under *Armendariz*.

4    **D.**    **Plaintiff's Claim For Rescission Of The Arbitration**

5           **Agreement Is Meritless.**

6    Plaintiff's claim for rescission alleges that the Arbitration Agreement is: (1)

7    unconscionable; (2) her/his consent was obtained through fraud; and (3) its

8    enforcement would be "prejudicial to the public interest."[7] These allegations lack

9    merit and fail to undermine the validity of the arbitration agreement.

10           **1.**    **There Is No Procedural Unconscionability.**

11    In California, "[i]n order to render a contract unenforceable under the doctrine

12    of unconscionability, there must be both a procedural and substantive element of

13    unconscionability." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783

14    (9th Cir. 2002) (citing *Armendariz*, 24 Cal. 4th at 114). The former focuses on

15    "oppression" or "surprise" due to unequal bargaining power. *Id*. Substantive

16    unconscionability, on the other hand, is present if the contract terms are "overly

17    harsh" or "one-sided." *Id*. These two elements, however, need not both be present in

18    _____

19    [7] Plaintiff incorrectly alleges that the Arbitration Agreement "reserves to a [] jury to

20    determine the Arbitration Agreement's enforceability." (Compl. ¶ 293). There is no

21    such provision in the Arbitration Agreement. It is well-established that the court

22    determines the validity and enforceability of a stand-alone arbitration agreement

      when it is challenged—as Plaintiff has done in her/his claim for rescission. *See*

      *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-446 (2006). Nor does the

23    "JAMS Policy on Employment Arbitration Minimum Standards of Procedural

      Fairness," on which Plaintiff relies, require a jury determination.  It specifically

24    states: "[i]f a party contests the enforceability of a pre-dispute arbitration agreement

      that was required as a condition of employment, and if compliance with the

25    Minimum Standards is in question, JAMS will, if given notice of the dispute, defer

26    administering the arbitration for a reasonable period of time to allow the contesting

      party to seek a ***judicial ruling*** on the issue" and that "JAMS will comply with that

27    ***judicial determination***." (Young Decl., Ex. J, emphasis added.) This Court's ruling

28    on this motion would constitute such a judicial ruling and determination.

1   the same degree. *See Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981

2   (9th Cir. 2007). The more substantively oppressive the terms are, the less evidence

3   of procedural unconscionability is required to find that the contract is unenforceable,

4   and vice versa. *Id.* Importantly, the "unconscionability inquiry is not a license for

5   courts to impose their renditions of an ideal arbitral scheme." *Sonic-Calabasas A,*

6   *Inc. v. Moreno*, 57 Cal.4th 1109, 1148 (2013). "A party cannot avoid a contractual

7   obligation merely by complaining that the deal, in retrospect, was unfair or a bad

8   bargain." *Sanchez v. Valencia Holding Co.*, 61 Cal.4th 899, 911 (2015).

9        Procedural unconscionability stems from the elements of oppression and

10   unfair surprise. *Dotson v. Amgen*, 181 Cal.App.4th 975, 980 (2010). Oppression in

11   the context of employment contracts arises in situations where there is unequal

12   bargaining power and little meaningful choice. *Id.*, at 980-81. Surprise involves

13   scenarios where the terms of the bargain are hidden in a long document by a

14   party in a superior bargaining position. *See Roman v. Superior Court*, 172

15   Cal.App.4th 1462, 1470-71 (2009) (holding that whatever "unfairness is inherent" in

16   the employer-employee relationship was "limited" since "the arbitration provision

17   was not buried in a lengthy employment agreement[]" and was clearly labeled).

18        Here, there is no evidence of procedural unconscionability. Plaintiff has over

19   eleven years of experience as an attorney advising clients on employment law and

20   represents her/his extensive experience in alternative dispute resolution methods.

21   Plaintiff can hardly claim surprise about the existence or the enforceability of the

22   Arbitration Agreement — a simple, stand-alone two-page document that is written

23   in plain English and bears the title: "**AGREEMENT TO ARBITRATE CLAIMS**"

24   (Thompson Decl., Ex. B, at p. 1, emphasis in original.) The Arbitration Agreement

25   clearly states that the parties are agreeing to arbitrate claims, that arbitration is the

26   sole and exclusive remedy "for resolving any claims covered" by the Arbitration

27   Agreement, and that the parties are "waiving" their "right to a court action" and

28   "giving up their respective rights to a jury trial." (*Id.*)

Plaintiff alleges that the Arbitration Agreement is unconscionable because it was "imposed as a condition of employment" and therefore, "lacks contractual effect because consent must be free and mutual." (Compl. ¶ 106.) It is well established, however, that "a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis." *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal.App.4th 1105, 1127 (2000). "To describe a contract as adhesive" is "the beginning and not the end of the analysis insofar as enforceability of its terms is concerned." *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 819 (1981). "[A] contract of adhesion is fully enforceable according to its terms unless certain other factors are present which, under established legal rules—legislative or judicial—operate to render it otherwise." *Id.*, at 819-20 (citations omitted); *Armendariz*, 24 Cal.4th at 114. A different rule would mean that pre-employment arbitration agreements are never enforceable, a proposition no state or federal court in California court has held.

Plaintiff also alleges that the Arbitration Agreement is procedurally unconscionable because it "imposes more than notice pleading by requiring identification of the nature of all claims asserted." (Compl. ¶ 255). Not so. The Arbitration Agreement provides that "Employee or the University must give written notice of any claim to the other party within the time prescribed by the state or federal statute of limitations applicable to the claim being made" and that "[t]he written notice shall identify and factually describe the nature of all claims asserted." (Thompson Decl., Ex. B, at p.1.) This is no different from Federal Rule of Civil Procedure 8(a), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under this "notice pleading," the complaint must "give the defendant fair notice of what the claim … is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And, while Rule 8(a)

1   does not require detailed factual allegations, "it demands more than an unadorned,

2   the defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. In any

3   event, the Arbitration Agreement's notice requirement applies to both parties and, as

4   such, provides no advantage to one party or the other.

5           2.    **There Is No Substantive Unconscionability.**

6         Substantive unconscionability "focuses on the terms of the agreement and

7   whether those terms are so one-sided as to shock the conscience." *Kinney v. United*

8   *HealthCare Servs., Inc.*, 70 Cal.App.4th 1322, 1330 (1999). Plaintiff alleges that the

9   agreement is substantively unconscionable because it fails to provide employees

10  with "the full panoply of discovery." (Compl. ¶ 208.) However, as noted above, the

11  Arbitration Agreement provides that the Arbitrator "shall afford the parties adequate

12  discovery, including deposition discovery, taking into account their shared desire to

13  have a fast, cost-effective dispute-resolution mechanism." (Thompson Decl., Ex. B,

14  at p. 2.) JAMS Rules provide a comprehensive process for the exchange of

15  information and documents and empowers the Arbitrator to allow such additional

16  discovery as appropriate "based upon the reasonable need for the requested

17  information." (Young Decl., Ex. H, Rule 17.) California law requires nothing more.

18  As the California Supreme Court recognized in *Armendariz*, discovery limitations

19  are an integral part of arbitration and the parties may contractually agree to less than

20  "the full panoply of discovery." *Armendariz*, 24 Cal.4th at 105-06. Rather, the

21  parties to arbitration are only entitled to such discovery as is "necessary to vindicate

22  [their] claim[s]." *Id.* at 106; *see also Dotson*, 181 Cal.App.4th at 983 ("[A]rbitration

23  is meant to be a streamlined procedure. Limitations on discovery . . . is one of the

24  ways streamlining is achieved.").

25        Plaintiff further contends that discovery would not be adequate in arbitration

26  because USC allegedly has a practice of misconduct in its internal workplace

27  investigations, spoliates evidence, withholds documents in discovery which it is

28  required to produce and, accordingly, the Arbitration Agreement is unconscionable

and should be null and void pursuant to Civil Code sections 1668 and 1670.5. (Compl. ¶¶ 100-104, 132-253.) Not only are these allegations patently false, they are irrelevant to the issue of whether substantive unconscionability exists. The Arbitration Agreement and JAMS Rules provide adequate discovery that both parties may need to pursue their claims and/or defenses. In any event, to the extent that any party engages in misconduct during the proceeding, the Arbitrator is fully empowered to address such situations by way of sanctions. (Young Decl. Ex. H, Rule 29) ("The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to … assessment of any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.")[8]

Plaintiff also alleges that the Arbitration Agreement fails to provide a neutral forum because USC is a "repeat player" with JAMS. (Compl. ¶ 274.) So are *Plaintiff's lawyers* who, according to JAMS's public disclosures, have represented parties in at least half a dozen arbitrations before JAMS in the last decade. (Young Decl. ¶9.) Moreover, as the California Supreme Court explained in *Sandquist v. Lebo Auto., Inc*., 1 Cal.5th 233, 259 (2016), this argument is "generally

---

[8] If, however, the Court finds the discovery provisions of the agreement are somehow unconscionable, it has the power to reform the agreement to provide for full discovery, as Plaintiff concedes. (Compl. ¶ 279) ("…Plaintiff seeks to reform the arbitration agreement to provide for [] full discovery.") The Arbitration Agreement provides that "[i]f any provision [] is determined to be void or otherwise unenforceable, this determination shall not affect the validity of the remainder of the Agreement." When an agreement contains such a severability clause, the Court may sever a term it finds unenforceable, as long as the agreement as a whole is not 'permeated' with unconscionability." *See Poublon*, 846 F.3d at 1274 (severance term "makes clear that the parties intended for any invalid portion of the agreement to be restricted").

1  uncognizable" as the courts "may not presume categorically that arbitrators are ill-
2  equipped to disregard such institutional incentives and rule fairly and equitably."

3          Plaintiff further alleges that she/he has reason to doubt JAMS' impartiality
4  because USC and JAMS have a mutually beneficial relationship in that (1) many of
5  JAMS arbitrators are graduates of USC; (2) JAMS arbitrators share in the profits
6  from USC through arbitration fees; (3) JAMS hosts symposiums in partnership with
7  USC; (4) USC changed its dispute resolution provider from AAA to JAMS in 2018;
8  and (5) USC has been the respondent in 13 JAMS proceedings. (Compl. ¶¶ 261-
9  275.) In support of her/his position that these factors should preclude enforcement of
10 the agreement, Plaintiff cites *Monster Energy Company v. City Beverages, LLC*, 940
11 *F.3d 1130, 1136 (9th Cir. 2019)*, where the Ninth Circuit vacated an arbitration
12 award based on the Arbitrator's failure to disclose facts that "create[d] an
13 impression of bias, and should have been disclosed by him, namely, that he held an
14 equity interest in JAMS itself and that JAMS had administered 97 arbitrations "for"
15 one of the parties over the previous five years, which constituted "an average rate of
16 more than one arbitration per month."

17          *Monster Energy* is inapposite for two reasons. First, it addressed what
18 disclosures an arbitrator must make to enable the parties to make an informed
19 decision on their selection of an arbitrator, not the validity of an arbitration
20 agreement. It does ***not*** support Plaintiff's argument that the so-called "repeat player
21 effect" is a basis not to enforce an arbitration agreement. Second, the 13
22 employment arbitrations JAMS has conducted in which USC was a respondent is
23 orders of magnitude less than the 97 arbitrations at issue in *Monster Energy*.

24          The complaint further alleges that the Arbitration Agreement is void because
25 it excludes claims "brought under Title VII" but not under state discrimination
26 claims and thus violates the "Franken Amendment" to the Defense Appropriations
27 Act of 2010. (Compl. ¶¶ 107-116.) This is a red herring. The Franken Amendment is
28 irrelevant because, by its plain language, it was designed to regulate how the

1  Department of Defense appropriates funds, *not* create a defense to arbitration by

2  private civil litigants. 48 C.F.R. §§ 222.7402, 222.7403 (prohibits the Department of

3  Defense from awarding contracts for over $1 million to any contractor who

4  "requires … that the employee or independent contractor agree to resolve through

5  arbitration any claim under Title VII … or any tort related to or arising out of sexual

6  assault or harassment").

7      In any event, the Arbitration Agreement is consistent with the Franken

8  Amendment as it specifically excludes from arbitration "claims brought under Title

9  VII of the Civil Rights Act of 1964," as well as "tort claims (*e.g.*, assault and

10  battery, intentional infliction of emotional distress, false imprisonment or negligent

11  hiring, supervision or retention) if they are related to or arising out of sexual assault

12  or sexual harassment." (Thompson Decl., Ex. B, at p. 1.) Further, contrary to

13  Plaintiff's suggestion that FEHA is but an extension of Title VII, it is well

14  recognized that they are separate statutory schemes. While California courts look to

15  federal decisions under Title VII for assistance in interpreting analogous provisions

16  of FEHA, they will depart from federal precedent where they believe federal

17  decisions to be in error, or the two statutes differ. *See, e.g., Romano v. Rockwell*

18  *Int'l, Inc.,* 14 Cal.4th 479, 496-500 (1996) (rejecting federal case law regarding

19  when statute of limitations begins to run "because they interpret a federal statutory

20  scheme [Title VII] not at issue here"); *see also Page v. Superior Court*, 31

21  Cal.App.4th 1206, 1215-17 (1995) ("[I]t is not appropriate to follow federal

22  decisions where the distinct language of FEHA evidences a legislative intent

23  different from that of Congress.")[9]

24  _____

25  [9] Plaintiff cites California Labor Code sections 432.4 through 432.6 and California

26  Government Code section 12953, which codified AB 51 and were enacted by the
   California legislature to bar pre-employment arbitration agreements. (Compl. ¶¶

27  116, 119-12.) Plaintiff's reliance is misplaced for several reasons.  First, this

28  statutory scheme only applies to "contracts for employment *entered into, modified,*

Finally, Plaintiff alleges that the Arbitration Agreement is substantively unconscionable because it waives an employee's right to bring a class or collective action in court or in arbitration. (Compl. ¶ 258.) However, it is well established that "state rules that prohibit class action waivers are preempted by the FAA." *Asfaw v. Lowe's HIW, Inc*., No. LA CV14-00697 JAK, 2014 WL 1928612, at *9 (C.D. Cal. May 13, 2014) (Kronstadt, J.), citing *AT&T Mobility LLC, supra*, 563 U.S. 333 at 352; *see also Carter v. Rent-A-Ctr., Inc.,* 718 Fed.Appx. 502, 504 (9th Cir. 2017) ("We have interpreted *Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver."); *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (class waiver unconscionability arguments are "now expressly foreclosed by [the Supreme Court's decision in] *Concepcion*"). In its subsequent decision in *Epic Systems Corp., supra*, 138 S.Ct. 1612 (2018), the U.S. Supreme Court held that arbitration agreements in which an employee agrees to arbitrate any claims against an employer on an individual— rather than on a class or collective—basis, are enforceable.[10] That is what the Arbitration Agreement provides:

---

*or extended on or after January 1, 2020*." Cal. Lab. Code § 432.6 (h) (emphasis added).  USC and Plaintiff entered into this Arbitration Agreement in February 2018. Second, these codes are not "intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act." *See* Cal. Lab. Code § 432.6(f). Finally, enforcement of AB 51 has been enjoined by the federal courts on the basis of federal preemption. *See Chamber of Commerce of United States v. Becerra*, 438 F.Supp.3d 1078, 1097 (E.D. Cal. 2020) ("[T]he rule runs afoul of the federal law by contravening the equal footing principle.").

[10] Plaintiff also alleges that the Arbitration Agreement is unconscionable because "it appears to impose a class waiver even as to claims that [it] excludes from arbitration." (Compl. ¶ 259.) This is not true.  The Arbitration Agreement specifies that the class waiver only applies "[t]o the maximum extent permitted by law." (Thompson Decl. Ex. B, at pp. 1-2.)

1   Employee hereby waives any right to bring on behalf of persons other

2   than Employee, or to otherwise participate with other persons in, any

3   class or collective action. Employee retains the right to bring claims in

4   arbitration for himself or herself as an individual (and only for himself

5   or herself).

6   (Thompson Decl., Ex. B, at pp. 1-2.)

### 3.   **Plaintiff Cannot Show That Her/His Consent To The Arbitration Agreement Was Obtained by Fraud.**

9   The Complaint cites various California statutes[11] for the proposition that the

10  Arbitration Agreement is "subject to rescission" based on fraud. This argument is

11  meritless.  "In order to defeat a petition to compel arbitration [based on a claim of

12  fraud], the parties opposing a petition to compel must show that the asserted fraud

13  claim goes specifically 'to the "making" of the agreement to arbitrate[.]'" *Engalla v.*

14  *Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 973 (1997) (holding that the plaintiff

15  established fraud where the purported misrepresentation is "material" such that "a

16  reasonable [person] would attach importance to its existence or nonexistence in

17  determining his choice of action ***in the transaction in question***") (emphasis added).

18  This is not what Plaintiff has alleged. The crux of Plaintiff's allegations is that

19  USC's Code of Ethics secured USC "a reputation as an ethical and reputable

20  institute of higher learning" and Plaintiff "would not have sought to work for

---

22  [11] These statutes are: (1) California Civil Code §1689(b)(1) ("[a] party to a contract

23  may rescind the contract … [i]f the consent … was given by mistake, or obtained

    through fraud."); (2) California Civil Code §1567 (an intentional misrepresentation

24  occurs when "a party to the contract, or with his connivance, with intent to deceive

    another party thereto, or to induce him to enter into the contract" makes "[t]he

25  suggestion, as a fact, of that which is not true, by one who does not believe it to be

26  true."); (3) California Civil Code § 1572 (defines actual fraud); (4) California Civil

27  Code §1709 (imposes damages on "[o]ne who willfully deceives another with intent

    to induce him to alter his position to his injury or risk"); and (5) California Civil

28  Code § 1710 (defines "deceit").

1  Defendant" but for this reputation. (Compl. ¶¶ 124-130.) In short, the fraud claim

2  fails because there is "no evidence of any false representations concerning any

3  contemplated arbitral proceedings that w[ould] result from the arbitration

4  [agreement]." *See Larian v. Larian*, 123 Cal.App.4th 751, 765 (2004) (reversing

5  trial court's denial of motion to compel arbitration and holding that the plaintiff's

6  allegations of misrepresentations were to be "resolved in the arbitral forum" because

7  there was "no evidence of fraud in the inception or execution of the agreement *as it*

8  *relates to the arbitration clause*") (emphasis added). The Arbitration Agreement is a

9  two-page, stand-alone contract that expressly states that it "supersedes any prior or

10  contemporaneous agreement" and is devoid of any reference to the Code of Ethics.

11  It appears that the Plaintiff found the Code of Ethics—which was most recently

12  revised in 2014 (more than 4 years before Plaintiff's offer of employment)—on

13  her/his own online at https://policy.usc.edu/ethics/. (Thompson Decl. ¶ 4, Ex. D.)

14  Moreover, the Code of Ethics does not purport to set forth contractual promises or

15  contain any representations that are materially relevant to the arbitration agreements

16  USC's employees are regularly asked to sign.

17       More to the point, no reasonable person—much less a licensed attorney such

18  as Plaintiff who has over 11 years of experience advising clients on employment

19  law—would rely on such generalized aspirational statements in deciding whether to

20  enter into a pre-employment arbitration agreement with the University. *See* CACI

21  1908 – Reasonable Reliance ("reasonableness must take into account the plaintiff's

22  own intelligence, knowledge, education, and experience") (citing *Blankenheim v. E.*

23  *F. Hutton, Co., Inc*., 217 Cal.App.3d 1463, 1474 (1990)); *Guido v. Koopman,* 1

24  Cal.App.4th 837, 843 (1991) (finding it unreasonable for a "practicing attorney

25  [who] uses releases in her practice" to claim that she relied on false representations

26  by an equestrian instructor concerning a written release).

27       Plaintiff's claim of reliance on general statements in a Code of Ethics in

28  deciding whether she/he would agree to arbitrate any future claims against USC is

DEFENDANT'S MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION

absurd given the nature of a Code of Ethics. As the Ninth Circuit explained in *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (in the context of securities fraud), the contents of a business code of ethics are "aspirational" and thus not material to a stockholder's decision-making. Similarly, in *Desai v. General Growth Props., Inc.*, 654 F.Supp.2d 836, 857 (N.D. Ill. 2009), the court determined that the publishing of a Code of Ethics by a company on its website "is not actionable." Plaintiff's purported reliance on the Code of Ethics in connection with her/his Arbitration Agreement is not reasonable as a matter of law.

> ### 4.   **Plaintiff Cannot Show That Enforcing The Arbitration Agreement In This Case Would Be Prejudicial To The Public Interest.**

In support of the rescission claim, Plaintiff alleges, pursuant to California Civil Code section 1689(b)(6), that "the public interest will be prejudiced by permitting the contract to stand." (Compl. ¶¶ 254-260.) Plaintiff relies on the same baseless allegations on which she/he bases the contention that the Arbitration Agreement is unconscionable. For the reasons stated above, those allegations fail to establish that the agreement should not be enforced.

Moreover, there is no indication that, if the Court did not rescind the agreement, the public would be harmed. The Arbitration Agreement only affects Plaintiff and, potentially, a sub-group of USC employees who may seek to bring claims against USC. While USC is a large employer and a large number of individuals might be affected by a ruling invalidating its arbitration agreements, this is not the equivalent of the "public" at large. There are no potential health, environmental, financial, or governmental concerns implicated by the Arbitration Agreement. In fact, the greater public interest here is to encourage the efficient resolution of disputes through arbitration. Indeed, public policy strongly favors the enforcement of arbitration agreements. *See Southland Corp. v. Keating*, 465 U.S. 1,

10 (1984) ("Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475, fn. 8 (9th Cir. 1991) ("The [FAA] ... reflects the strong Congressional policy favoring arbitration.")[12]

> ### E.   All of Plaintiff's Claims In This Action Fall Within The Scope of The Arbitration Agreement.

The presumption in favor of enforcing arbitration agreements to the full extent possible is particularly applicable where, as here, the Arbitration Agreement employs broad language to render any and all claims or differences subject to arbitration, except for those expressly excluded. (Thompson Decl., Ex. B, at p. 1.); *Moses H. Cone Mem'l Hosp., supra*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation and citation omitted). In such cases, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. Applying this standard and the plain language of the Arbitration Agreement, all of Plaintiff's claims are subject to arbitration under the Arbitration Agreement

---

[12] Plaintiff also alleges that the Arbitration Agreement is "null and void" under California Civil Code section 1668, which prohibits contracts that exempt an individual of responsibility for a violation of law. (Compl. ¶ 102.) Not so. Section 1668 is inapposite because, as addressed above in Sections III(C)-(D), the Arbitration Agreement complies with *Armendariz* and is neither procedurally nor substantively unconscionable. *See Armendariz*, 24 Cal.4th at 100 (setting minimum requirements for arbitration agreements in the employment context, in part, on the policies embodied in section 1668); *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1530 (1997) ("We need not separately address the question whether the restriction on employee remedies is "against the policy of the law" within the meaning of [Section 1668]).

1  (although the fifth claim for rescission will be resolved by this Court by way of this

2  motion).

3        Plaintiff may argue that the sixth cause for rescission–to the extent it seeks to

4  "enjoin all staff employee arbitration agreements imposed by Defendant on its

5  employees and/or faculty" (Compl. ¶ 296)–is not arbitrable because it is a claim for

6  "public injunctive relief." But, the Ninth Circuit has already held that California's

7  rule exempting such claims for public injunctive relief from arbitration is preempted

8  and "displaced by the FAA." *Ferguson. Inc., supra*, 733 F.3d at 934-937 (2013).

9        Moreover, the rule established in *McGill v. Citibank, N.A*, 2 Cal.5th 945

10  (2017) (the "*McGill* Rule") does not apply to Plaintiff's claims because the

11  Arbitration Agreement does not prohibit injunctive relief "in any forum." *McGill,* 2

12  Cal.5th at 961. It only requires the claims be submitted to arbitration. In any event,

13  Plaintiff has not stated a claim for public injunctive relief, as required in *McGill*.

14  "Public injunctive relief 'is for the benefit of the general public rather than the party

15  bringing the action.'" *Kilgore*, 718 F.3d at 1061. "Relief that has the primary

16  purpose or effect of redressing or preventing injury to an individual plaintiff—***or to***

17  ***a group of individuals similarly situated to the plaintiff***—does not constitute public

18  injunctive relief." *McGill,* 2 Cal.5th at 955 (emphasis added); *see also Magana v.*

19  *DoorDash, Inc.,* 343 F.Supp.3d 891, 901 (N.D. Cal. 2018) (holding that injunctive

20  relief sought for misclassification claims alleging violations of the California Labor

21  Code was not a "public" injunction, as the claims had the "primary purpose and

22  effect of redressing and preventing harm to [defendant's] employees" and any

23  benefit to the public would only be derivative and ancillary to that benefit). *Accord*,

24  *Torrecillas v. Fitness Int'l, LLC*, 52 Cal.App.5th 485, 500 (2020) (holding that

25  plaintiffs request for an injunction to stop defendant from failing to pay wages or

26  reimburse for business expenses was "private in nature and therefore arbitrable"

27  because the "beneficiary ... would be [plaintiff] and possibly Fitness's current

28  employees, not the public at large.") Here, Plaintiff seeks a remedy which would not

1   benefit the public at large but rather only Plaintiff and, at most, other non-union

2   USC employees who seek to avoid their respective arbitration agreements.[13]

3       **F.**     **The Court Should Dismiss Or Stay This Litigation Pending**

4                  **Arbitration.**

5       Section 3 of the FAA provides that "upon being satisfied that the issue

6   involved in [a] suit . . . is referable to arbitration . . . , [a court] shall on application

7   of one of the parties stay the trial of the action until such arbitration has been had."

8   9 U.S.C. § 3. The FAA "does not limit the court's authority to grant a dismissal" of

9   a case "when all claims are barred by an arbitration clause." *Sparling v. Hoffman*

10  *Constr. Co., Inc*., 864 F.2d 635, 638 (9th Cir. 1988) (holding that the "district court

11  acted within its discretion when it dismissed" the case, since "the arbitration clause

12  [at issue] was broad enough to" require the plaintiffs "to submit all claims to

13  arbitration"). *See also* Hebei Hengbo New Materials Tech. Co. v. Apple, Inc., 344

14  F.Supp.3d 1111, 1118 (N.D. Cal. 2018) ("If all claims in litigation are subject to a

15  valid arbitration agreement, the court may dismiss or stay the case.")

16      Here, the Arbitration Agreement is valid and all of Plaintiff's claims are

17  subject to arbitration. Accordingly, the Court should dismiss or stay this action.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28  [13] Plaintiff "does not seek an injunction concerning any employee who is employed under a Collective Bargaining Agreement." (Compl. ¶ 296.)

**IV.    <u>CONCLUSION</u>**

Based on the foregoing, USC respectfully requests that the Court issue an order compelling individual arbitration of the claims of Plaintiff "DOE" and dismissing the Complaint with prejudice or, in the alternative, staying proceedings in this action pending the completion of arbitration.

DATED: December 4, 2020          YOUNG & ZINN LLP

By: /s/ Vicky H. Lin
_____
VICKY H. LIN
Attorneys for Defendant
UNIVERSITY OF SOUTHERN
CALIFORNIA

DEFENDANT'S MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION