**BLADY WORKFORCE LAW GROUP LLP**
I. BENJAMIN BLADY — Cal. Bar No. 162470
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 933-1352
Email: bblady@bwlawgroup.com

**LESCHES LAW**
LEVI LESCHES — Cal. Bar No. 305173
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 900-0580
Email: levi@lescheslaw.com

ATTORNEYS FOR
Plaintiff DOE, individually, and for
PEOPLE OF THE STATE OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DOE, individually, and behalf of all others similarly situated;<br><br>                        Plaintiff,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California Not-for-Profit Corporation; DOES 1 through 20.<br><br>                        Defendants. | CASE NO. 2:20-cv-06098 JAK (AGRx)<br>FILED: 07/08/2020<br><br>**OPPOSITION BY PLAINTIFF DOE TO THE MOTION OF DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION**<br><br>Date:      April 26, 2021<br>Time:      8:30 a.m.<br><br>**DOE'S (SECOND) JURY TRIAL DEMAND,**<br>9 USCA § 4 (West) |

iles/BWLG01/002/00034981.DOCX}

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO USC'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ................................................................. 1

II.   SUMMARY OF ADDITIONAL FACTS ......................................................... 5

    A.    USC is a Regulated Nonprofit Serving the Public Interest ..................... 5

    B.    USC Provides No Evidence of an Enforceable Agreement ..................... 6

    C.    USC Fails to Address the Triable Defenses to the AA .......................... 7

    D.    USC's AA is Not Enforceable .............................................................. 7

III.  ARGUMENT ............................................................................................... 9

    A.    LEGAL STANDARDS AND BURDENS OF PROOF ......................... 9

    B.    USC HAS NOT ESTABLISHED FAA PREEMPTION ..................... 11

    C.    USC HAS NOT ESTABLISHED ENFORCABILITY ....................... 13

    D.    THE AA VIOLATES THE FRANKEN AMENDMENT .................... 13

    E.    THE ALLEGED AGREEMENT *EXCLUDES* DOE'S CLAIMS ...................... 16

    F.    THE FAA DOES NOT GOVERN CA'S POLICE POWERS ............. 16

    G.    THE AA DOES NOT COMPLY WITH *ARMENDARIZ* .................... 19

    H.    USC'S FRAUD AND/OR BREACH ARE DEFENSES ..................... 20

    I.    THE AGREEMENT IS HIGHLY UNCONSIONABLE .................... 22

IV.   ENFORCEMENT IS PREJUDICAL TO THE PUBLIC INTEREST ............ 24

V.    CONCLUSION ......................................................................................... 25

OPPOSITION TO USC'S MOTION TO COMPEL ARBITRATION

# I.    **SUMMARY OF THE ARGUMENT**

Defendant University of Southern California's ("USC" or "D") Motion should be denied, as it is filled with misstatements, admissions, and silence on key issues.

*First*, USC misrepresents it is purportedly enforcing a "*stand-alone, bilateral arbitration agreement*" *signed* upon Doe's ("P") *hire*. Motion ("M"), p. 7. On about *February 12, 2018*, USC sent Doe a "*Contingent* Offer" for employment as Senior Investigator in its Office of Conduct, Accountability and Professionalism ("OCAP"), intended for "*moving forward*" a "process."[1] The offer was *not* s*igned* by an authorized representative of USC. *Nor* was the alleged Arbitration Agreement ("Alleged Agreement" or "AA"). USC provides *no* foundation that Doe *signed* the alleged Employee "Agreement to Arbitrate Claims." USC *hired* Doe on *March 19*, 2018, and required Doe to *then* sign a Job Description and Confidentiality Statement.

*Second*, Doe's claims are nonarbitrable under the Franken Amendment. After Doe engaged in multiple acts of protected conduct that were inextricably intertwined, related to, or arising from, "sexual assault *or* harassment,"[2] Doe's supervisor Gretchen Dahlinger Means ("Means") solicited, (or influenced, or conspired with), others to harass, discriminate, and retaliate against Doe, in violation of Title VII, Title IX, FEHA, among *other* torts.[3] Means' campaign escalated on or after June 11, 2018, when the OCR publicly announced a systemic investigation of USC's "handling of sexual harassment claims" under Means' direction.[4] Unbeknownst to Doe, OCR made on-campus visits from June 19 through October 11, 2018. Doe ¶ .[5] Means, Thompson (and others) unlawfully interfered with OCR's investigation by, in part, placing Doe on

---

[1] H. Thomp. Dec., Ex. A, p. 3 [to "*move forward* in this process, please check "Yes"].
[2] *See* 48 C.F.R. § 222.7402. Doe contends USC violated the Franken Amendment to the DOD Appropriations bill in 2009 ("Franken"), which required USC's agreement not to enter into *or* enforce such AA. *Comp.* AA ¶ 3(1),(2), *with* 48 C.F.R. § 222.7402.
[3] "Concurrence and knowledge may be inferred from the nature of the acts done, the relation of the parties, the interests . . . and other circumstances." *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 784-785 (1979) (tacit consent will suffice). *See also* CACI 3600 (Conspiracy as standalone civil tort), *id.* 3610 (aiding and abetting tort).
[4] https://www.ed.gov/news/press-releases/office-civil-rights-launches-investigation-university-southern-californias-handling-sexual-harassment-claims
[5] https://change.usc.edu/files/2020/02/USC-Resolution-Letter.pdf (IBB, Ex. , p. 6, ¶ 1.)

administrative leave in violation of USC policy, making Doe inaccessible to the OCR. *See* 18 U.S.C. § 1513(e).  Starting June, USC initially forced Doe off campus, then housed Doe for months in an office distant from OCAP.  USC also cut off Doe's access to investigation files and file-sharing systems.  In mid-October, Doe was returned to Means' direct management.  USC continued to exclude Doe's access to Title IX cases, and other cases, that had been forcibly reassigned away from Doe's initial investigation.  USC had other investigators publish reports under Doe's name. (RFJN, ¶ 34.)[6]  For six months after USC returned Doe to Means' direct management, USC continued to tortiously harass, discriminate and retaliate against P, in violation of Titles VII & IX, FEHA and/or  other common law torts.  Doe's provider placed Doe on medical disability leave in April 2019, "related to work," and lasting one-year.

Such claims are nonarbitrable under the Franken Amendment.  USC's Motion misrepresents the terms in and/or omits terms from the AA, and/or JAMS Rules.  USC fails to address its history of *concealing* the Franken Amendment and other material facts to "potential employees."[7]  Contrary to federal statute and regulation, USC uses limiting and expanding modifiers to contort the Franken Amendment.  *See Cal. Civ. Code* § 1710(3),[8] AA ¶ 3(1) and (2); 48 C.F.R. § 222.7402.)  USC also fails to acknowledge ¶3's *express* primacy, ("Notwithstanding the foregoing"), over ¶ 2. *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 503 (2005).

*Third*, USC fails to establish the FAA applies under the plain language of 9 U.S.C. § 2[9]  *and/or* § 1.[10]  Even if the FAA applies pursuant to *California law* governing arbitration Choice-of-Law clauses, USC has not established that the FAA

---

[6] Cf., *Whittier v. The University of California*, 2:20-cv-09539DSF-RAO, Comp., p. 7, ¶ 34, "The SAR was signed by Investigator Doe."
[7] *Los Defensores, Inc. v. Gomez*, 223 Cal. App. 4th 377, 396 (2014) (duty between "employer and prospective employee.")
[8] "The suppression of a fact, by one who . . . gives information of other facts which  are likely to mislead for want of communication of that fact." Cf., *Los Angeles Memorial Coliseuam Com. V. Insomniac, Inc.*, 233 Cal. App. 4th 803, 831 (2015) (D "makes partial representations but also suppresses some material facts.")
[9] "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . ."
[10] "***but** nothing herein []shall apply to* [contracts of employment of seamen, railroad employees,] **or** [*any other class of workers* engaged in . . . interstate commerce."]

has *any* preemptive effect here.  USC disregards manifest Congressional intent in the Franken amendment, and that USC is bound by *Parklane* preclusion.  D also disregards California's dual sovereignty to enact *police power* statutes protecting employees.[11] Even assuming the FAA somehow applies, USC mispresents Doe cannot demand a jury trial.  9 U.S.C. § 4; AA ¶ 8.  USC even asserts, Mot., p. 11, (citing HT, Ex B), *non-existent* language ("[parties are giving up their respective rights to a jury trial").

     *Fourth*, the AA does *not* come close to passing muster under *Armendariz* or *Gilmer*.[12]  USC does not address *Armendariz's* analysis recognizing that FEHA claims are **under** Title VII.[13]  Federal public policy in the Franken Amendment is congruent with *Armendariz*.  Similarly, *Armendariz* did *not* consider California police power statutes protecting employees from entering into involuntary agreements, nor the standards for voluntary waiver of Constitutional rights.[14]  Next, if USC's Motion overcame these hurdles, *careful* inspection demonstrate that USC's *superficially-appropriate* AA fails to comply with *Armendariz's* minimum protections.  USC's AA:

     (1) is **not** bilateral in effect (*e.g.*, there was *no* adequate consideration at alleged formation; it is *not* bilateral in effect; contains *multiple* unilateral one-way waivers);[15]

     (2) *expressly* limits arbitrator discretion on discovery, supplanting JAMS Rule 17(b)'s three-prong factor analysis, while *expressly* requiring ("shall") the arbitrator to impose the formalism of F.R.C.P. 12(b)(6), *Iqbal*, F.R.C.P. 56, and *Celotex*;[16]

---

[11] When Congress has legislated in a field the states have traditionally occupied, we " 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic, Inc. v. Lohr* 518 U.S. 470, 485 (1996).  This "presumption against preemption" does not apply when the state regulates an area in which there has been "'a history of significant federal presence,'" such as **rail transportation**. *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 160, fn. 12, (4th Cir.2010).
[12] *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000); *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 111 S. Ct. 1647 (1991).
[13] *Id.* at 93–96.
[14] *New York v. U.S.*, 505 US 144, 181, 112 S.Ct. 2408 (1992) ("the Constitution divides authority between federal and state governments" to protect "individuals.")
[15] See, ¶ 5, lns. 10-12; ¶7, and Cf., Mot., at 10-11, fn., factually contending that ¶ 2 narrows ¶ 3(1) & 2, and thus one-way waivers federal public policy in *Franken*.
[16] *Gilmer*, 111 S.Ct., at 1654 ("an important **counterweight** to the reduced discovery in NYSE arbitration is that arbitrators are **not** bound by the rules of evidence.")

OPPOSITION TO USC'S MOTION TO COMPEL ARBITRATION

(4) expressly, and pervasively, limits employee relief to "legal relief" only, and "only" individual relief, consistent with JAMS Rule 24(c)'s carve-out;

(5) *expressly* references Employee responsibility for a portion of the Arbitrator fees absent "a showing of hardship"; and

(6) *expressly* exposes Employee to cost-shifting for petitioning this court.[17]

*Fifth*, USC seeks *specific enforcement* under the FAA, Mot. at 8, but the FAA requires a valid state-law contractual remedy. 9 U.S.C. §§ 2, 4. USC fails to establish a *prima case* under appliable California statutes governing validity and enforcement for "any contract," and standards governing specific enforcement. *Cal. Civ. Code* §§ 3384, *et. seq*. ("*specific enforcement* of obligations"). Further, P has multiple valid defenses, raising at least triable issues, *including*, but not limited to: (1) illegality, (2) federal statue and public policy, (3) misrepresentation [or concealment], (4) breach, and/or (5) unconscionability. USC's contentions regarding Doe's "sophistication" as a lawyer in another state is immaterial, because, amongst other reasons, unconscionability involves "oppression" *or* "surprise."[18] *Cf*., Mot., p. 18, ln. 9-10. Additionally, USC engaged in repeated misrepresentation to courts.[19] (RFJN.)

*Seventh*, the AA is *not* silent on waivers of equitable, class, or collective remedies. There is a difference between "procedure" and statutory enactments for specific enforcement of contracts. Cf. Code Civ. Proc. § 382, Civil Code § 3384, et. seq. The *one-way* waiver in ¶ 7 is also *not* limited to class actions. Also, "To the

---

[17] Implied coventants cannot overcome USC's express terms. (E.g., AA, ¶ 5.) In *Armendariz*, at 106, the Court held: "We further infer that when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim." *However*, this principle does not control where an "express provisions of the contract, grant the right to engage in the very acts and conduct", then they are not "forbidden by an implied covenant of good faith and fair dealing." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 374, 826 P.2d 710 (1992).

[18] While sophistication may go to "surprise," this is different from "oppression" which is a lack of meaningful choice. *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581–583, & 595–596, 61 Cal. Rptr. 3d 344 (2007).

[19] Such a fraud on courts involves an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir.1995).

1    fullest extent permitted by law" discloses nothing to employees. [20]

2    *Seventh*, USC has begun litigating in the court of public opinion, making media

3    statements regarding Doe's claims. [21]  Such actions are inconsistent with arbitration.

4    *Last*, USC misrepresents Doe's claim for public injunctive relief.  *See* Comp.,

5    ¶¶ 300, 304–305, 309, 314.  P does not contend that the AA is *per se* unlawful, under

6    a former *judicial* rule mandating a judicial forum. *Cf.*, Mot., at 8.  Doe is asserting the

7    AA limits equitable relief.  AA at ¶ 7, lns. 1 & 2; *see also* JAMS, Rule 24(c) ("In the

8    absence of such agreement").[22] Thus, P's 6th claim does not seek to protect a monetary

9    interest (but important public interests).  Doe further notes that *opt-out* notice under

10   Fed. Rule 23 is consistent with *Epic Systems*.  *Chen-Oster v. Goldman, Sachs & Co.*,

     449 F. Supp. 3d 216 (SDNY 2020).[23]

11   In short, D's Motion lacks merit for enough reasons to make one's head spin.

12   Alternatively, P *demands* a jury trial. 9 U.S.C. § 4, and AA § 8.

13   ## II.   **SUMMARY OF ADDITIONAL FACTS**

14   ### A.   **USC is a Regulated Nonprofit Serving the Public Interest**

15   D's Mission Statement, IBB Exs, proclaims that D's Mission is the development

16   of "society as a *whole . . . .*"  *Id.* ¶ 1.  "USC . . . *serves the public interest* by being the

17

18   _____

19   [20] *Edwards v. Arthur Anderson*, 44 Cal. 4th 937, 955 (2008).
     [21] "In a media statement, USC asserted: "The allegations in the lawsuit are baseless."
20   https://www.kcet.org/shows/socal-connected/lawsuit-alleges-usc-deleted-evidence-
     maintained-negative-files-against.
21   [22] Doe further refers the Court to Footnotes, 4, 10, and 11, supra.
     [23] Under *Epic Systems*, union-employees could be included for injunctive relief.  Doe
22   did not include "union employees" in the Complaint, because seeking injunctive relief
     for union employees could arguably raise preemption or standing issues.  *See also*
23   https://policy.usc.edu/arbitration/ ("This policy may be waived by the Associate
     Senior Vice President, Human Resources, for employees *in bargaining units*.")
24   ***However***, it may be proper for Doe to seek injunctive relief for union employees.
     Justice Gorsuch's opinion in *Epic Systems*, 138 S.Ct. at 1620, 1628, cited to *NLRB*
25   *General Counsel Memorandum*, GC 10-06 (6/16/2010), 2010 WL 11703246
     (N.L.R.B.G.C.), as a basis for construing the FAA and the NLRA together. Justice
26   Gorsuch's reasoning, and citation to GC 10-06, is a clue that the majority woud find
     extracting an Arbitration Agreement contrary to GC 10-06 unconscionable. *Epic*, at
27   1622. Indeed, given Justice Gorsuch's discussion in *Epic Systems*, perhaps all of
     USC's Arbitration Ageements containing a ¶ 7 fall. See, GC 10-06, Analysis § 2, p. *3,
28   § 3, p. * 4 [end of ¶ 1], and * 6 [point 2].

largest private employer in . . . Los Angeles . . . ." *Id.* ¶ 6.[24]  D also warrants that it "is a covered federal contractor/subcontractor and must comply with certain affirmative action efforts."[25]  USC is a federal Department of Defense contractor.[26]  The Thompson declaration admits that USC's Code of Ethics is policy.[27]  USC does not disclose its "Compliance and *Ethics* Program" references the "Federal Sentencing Guidelines for Organizations," and governmental regulations.  USC does not disclose its "*ethical* standards, policies and procedures [are] to prevent and detect violations of law."  One surmises the government requires ethics standards from USC.[28]

### B.   USC Provides No Evidence of an Enforceable Agreement

USC policy requires an AA of "[a]ll *newly* **hired** or rehired staff employees . . . ."[29]  On March 19, 2018, USC *hired* Doe as a "Senior Investigator" in USC's Office of Conduct, Accountability and Professionalism ("OCAP").  Yet, USC's Motion improperly asserts Doe was hired *February* 12, 2018. Cf*., Mot*., at 7, JY Dec., Ex. E.  USC also asserts without foundation that Doe electronically *signed* the "Employee" AA, with *both* sides intending an Agreement.  Yet, USC's provides *no* evidence of any electronic signatures.  *See* HT Decl., ¶ 3, Ex. B.  The contention "Plaintiff signed electronically," *id*., facially fails to comply with FRE 803(6).

Further, as demonstrated by the HT Declaration, Ex. A, USC's contingent *offer* for future employment was *contingent* on Doe executing an "at will" agreement.  Under the plain language, providing that there would be *no* offer absent consent to USC's ability to rescind the offer, there was *no* consideration.  The offer also references "mov[ing] forward with the process" for *at-will* employment.  ECF No. 13-3, p. 7.  USC accordingly offers no *prima facie* evidence of *any* consideration on February 12; there are simply illusory promises.

---

[24] https://about.usc.edu/policies/mission-statement/ (¶ 1).
[25] https://businessservices.usc.edu/for-suppliers/forms/affirmative-action/
[26] https://news.usc.edu/139479/usc-darpa-artificial-intelligence/
[27] USC *admits* USC's Code of Ethics is USC "policy." (H. Thomp, Decl, ¶ 4.)
[28] See, e.g., https://www.jacksonlewis.com/sites/default/files/docs/Compliance-&-Ethics-Requirements-for-Federal-Contractors.pdf
[29] https://policy.usc.edu/arbitration/

On *March 19, 2018*, P was hired.  D extracted a **one-way** Confidentiality Statement, requiring: (1) familiarization with "*all* current university policies," (2) only using "personal and work-related confidential information" in the course of "legitimate and authorized university business," (3) restricting discussion of "personal and work-related information," including "communications" that are "written or conducted via electronic media."[30]  USC **reserved** the rights to take "legal action."  Doe Decl., (violations "may be grounds for **legal** action").

### C.    USC Fails to Address the Triable Defenses to the AA

Doe's allegations are also material to enforceability, whether in law or equity, as Doe avers to facts in the Complaint concerning: (1) falsification of evidence; (2) suppression of evidence; (3) spoliation of evidence; and (4) outright dishonesty.  Such defenses are now presented through Declaration.  *See* Second Doe Declaration.

### D.    USC's AA is Not Enforceable

The *densely* worded, small-type two-page agreement, ***partially*** incorporating JAMS Employment and Arbitration Rules ("JAMS EARAP"), is full of contradictory and confusing prolix.  USC's Motion repeatedly misrepresents or *omits* material language form the AA, in more than **15** ways.  D's USC's **omits** *from:*

- ¶ 1 that the "University" is only USC.
- ¶ 1 that the AA *represents* "internal processes are available for *collegially* resolving differences . . ." and "final and binding *impartial* arbitration is a means of the delay, expense and unpleasantness of a lawsuit."[31]
- ¶ 2 The entire AA is dependent on 1's covenants.  ¶ 2 ("*Therefore*. . . .").
- ¶ 2 the definition of University in ¶ 1, such that there are no bilateral "related-entities." The language would encompass claims against JAMS.
- ¶ 3, the phrase: "*Notwithstanding the foregoing*, the following claims are not covered. . ." **expressly** providing ¶ 3's primacy over ¶ 2.

---

[30] E.g., Labor Code §§ 232(a) and (b), 232.5 (a) and (b) (cf. (c)), and 1197.5(k)(1).
[31] See, <u>N.L.R.B. v. Yeshiva Univ.</u>, 444 U.S. 672, 690, 100 S. Ct. 856, 63 L. Ed. 2d 115 (1980) (explaining collegial processes).

OPPOSITION TO USC'S MOTION TO COMPEL ARBITRATION

- ¶¶ 3(1) and 3(2)'s claims not covered,[32] and the Franken Amendment.
- ¶ 5 *only* has a **partial** incorporation of JAMS EARAP. "*Any* arbitration pursuant to this Agreement *shall* be held under the auspices of JAMS, and conducted in accordance *with JAMS [EARAP] (and **no** other rules), **except** to the extent the rules **conflict*** with the procedures set forth herein." *Id.*, ¶ 5.  USC *conceals* numerous conflicts with the 17 pages of JAMS EARAP and *other* rules such as Minimum Standards.
- ¶ 5's Employee paying a "share of the Arbitrator's fees."
- ¶¶ 5 and 8's cost-shifting for arbitration motion practice.  *See also* JY Dec., Ex. E, ¶ 2 ("we will seek costs. . .").
- ¶ 5's *express* integration clause, giving USC the **one-way** power to "revoke" without *any* notice.[33]
- ¶ 6 *expressly* provides any claim, and/or multiple claims, "*shall*" be made within the "**prescribed**" statute of limitations, *contrary* to *equitable* exceptions such as continuing violations and relation back.
- ¶ 8's multiple express "shalls."  "The arbitrator **shall**" take "*into account their shared desire to have a fast, cost-effective* dispute-resolution mechanism."  This displaces Rule 17(b)'s three-factor standard.
- ¶ 8 contains no method for enforceable third-party subpoenas.
- ¶ 8 supersedes JAMS Rule 18 (arbitrator discretion concerning summary disposition), while *mandating* judicial formalism.  An arbitrator "*shall*" allow motions to dismiss under Fed.R.Civ.P. 12 and *Iqbal* standards.  *Id.*; *also* ¶ 6 ("shall identify and *factually describe* the nature of all claims asserted").  The arbitrator "shall" allow MSJ's and "shall" apply Rule

---

[32] USC will likely make much of ¶ 2's "except as specifically excluded language" (Mot. at p. 10, ln. 24-25), USC *omits* ¶ 3's express "notwithstanding the foregoing" language from its Motion. (Mot., p. 10.) This is the type of unconscionable sandbagging, in which USC engaged. USC here does **not** admit Franken applies!
[33] Doe notes that injunctive relief may secondarily return those impacted to the status quo. Thus, one could forsee an Article III court ordering vacation of every arbitral award under any USC AA with one or more of same dispositive obnoxious terms, or at least notice to those federal judges on whom USC commited fraud on the court.

56's *evidentiary* standards, which includes *Celotex*.

- ¶ 7, contains a *prohibited **one-way*** procedural rule.  The "class action" waiver limits bringing of "claims . . . ***only*** for" an Employee.  Similarly, collective actions cannot be brought by employees, but nothing limits consolidation by USC.

- ¶ 8 "*Except as provided in this [AA]*, the [FAA] shall govern . . . ."

- ¶ 9's catchall that this AA "*shall **not** be interpreted to preclude . . . filing [a] . . . complaint with the [EEOC, DLSE, NLRB], . . . **or** any other* federal,  state or local agency or official."

- Throughout the AA, the AA *expressly* only authorizes *legal* remedies that would be available in court.[34]  *Cf.*, JAMS Rule 24(c) (permitting an arbitrator to award equitable remedies if within the "scope of the parties agreement," while expressly distinguishing the words "equitable **or** legal remedy").

The AA put forth by USC is contrary to judicially noticeable **prior** versions of USC's AA, which formerly provided (1) for "remedies," and *not* "legal remedies;" (2) "sexual assault *or* harassment, *not* "sexual harassment;" [35] and (3) *actually* provided notice the parties were "giving up their respective rights to a jury trial."

## III.   ARGUMENT

### A. LEGAL STANDARDS AND BURDENS OF PROOF

Federal courts have a "virtually unflagging" duty to hear *all* controversies justiciable under Article III.  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014).  Congress cannot infringe on Article III powers.  *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83–84 (1982).  In a different context, but

---

[34] *See* ¶ 2 (claims "decidable in a court of law"); ¶ 5 ("prescribed" statute of limitations); ¶ 7 (infra); ¶ 8 ("remedies" to those which a party is "*legally* entitled").
[35] Of importance throughout this Opposition, the word "Or" means in the alternative. *Hawaiian Airlines Inc. v Norris*, 114 S.Ct. 2239, 2244-45 (1994). Stated differently, "or" is a function word used to "indicate an alternative." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/or.

also citing to arbitration,  the Court held an Article III waiver requires one be "made aware of the need for consent and the ***right to refuse*** it, and still voluntarily" waive it. *Wellness International Network Ltd. v. Shariff*, 135 S.Ct. 1932S (2015). [36]

Because, as stated, arbitration limits constitutional rights, when determining whether a valid arbitration agreement *exists*, "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).  Motions to compel arbitration are "functional[ly] equivalent" to a Rule 56 motion for summary judgment.  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  Courts generally apply state law to determine validity. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019); *Cox*, 533 F.3d 1114. "Only when there is no genuine issue of fact concerning" formation "should the court decide" the issue "as a matter of law."  *Three Valleys Mun. Wat. Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Further, where factual issues may exist, a court should permit "discovery  . . . before a court entertains *further* briefing on [the] question."  *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 775 (3d Cir. 2013).  The moving party must establish a *prima facie* case for validity and specific performance before requiring P's defenses.[37]  *Asfaw v. Lowes*, 2014 WL 1928612, at 3 (2014) ("(1) parties *capable* of contracting; (2) their consent; (3) a lawful object; and (4) a  sufficient cause or consideration."); *see also Trubowitch v. Riverbank Canning Co.*, 30 Cal. 2d 335, 347, 182 P.2d 182 (1947) ("adequate" consideration); *Morrill v. Everson*, 77 Cal. 114, 19 P. 190 (1888) ("adequacy" is at

---

[36] Cf., J. Alito, *Wellness*, concur. at 1950: "No one believes that an arbitrator exercises "[t]he judicial Power of" Art. III, § 1, in an *ordinary, run-of-the mill* arbitration." Yet, that is *not* the issue. The issue is "waiver" and this is *no* run-of-the mill case.

[37] Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc., 334 F. Supp. 1013 (S.D.N.Y. 1971) (An FAA § 4 petition is "simply a request for an order compelling specific performance of part of a contract."); Also see, e.g. Spear v. California State Auto. Assn., 2 Cal. 4th 1035, 1040, 831 P.2d 821 (1992); Civil Code § 3391 ("Specific performance cannot be enforced against a party to a contract in any of the following cases:" including (1) "[she] has not received an adequate consideration for the contract;" **or** (2) "If it is not, as to [her], just and reasonable…."); Civil Code § 3392 ("Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent. . . except" for certain failures not applicable here.)

the "time of the formation.")

## B.  USC HAS NOT ESTABLISHED FAA PREEMPTION

USC's conclusory contentions that the FAA applies are unavailing.  Starting with 9 U.S.C. § 2,[38] USC's Motion fails to establish that Doe's employment meets the test in *Allied-Bruce and Bernhardt*,[39] because USC furnishes *no* evidence of Doe's work.  *Allied-Bruce Terminix Companies, Inc.*, 513 US 265.  USC's cases on commerce powers, Mot., n.6, are *all* inapposite.[40]  D's citations to *California's* Choice-of-Law arbitration doctrines, Mot., 13:6–9, do not establish FAA preemption.  For instance, *Victrola 89* and *Biller* are irrelevant to whether *California* would enforce an AA for a continuing at-will employee waiving AB 51, disregarding the Franken Amendment, and failing to contain a valid voluntary waiver of a the right to a jury trial.  USC also *omits* ¶ 8's prefatory FAA limitation.

Next, the Ishop's Declaration triggers § 1's exemption for employment contracts.  D *assumes* that because P was not employed to drive a vehicle with wheels, or a seaman, P falls outside any other "class of  workers engaged in . . . interstate commerce."  Not so.  The word "transportation" (although understandable short-hand

---

[38] "A written provision in *any* . . . *contract* evidencing a **transaction involving commerce** to settle by arbitration a controversy *thereafter arising* **out of** such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds *as exist* at law or in equity for the revocation of *any* contract."

[39] See, Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 276, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995), citing Bernhardt v. Polygraphic Co. of Am., 350 U.S. 198, 200, 76 S. Ct. 273, 100 L. Ed. 199 (1956) ("There is **no** showing that petitioner while performing his duties under the employment contract was working 'in' commerce, was producing goods for commerce, or was engaging in activity that affected commerce, within the meaning of our decisions.") USC must establish that the Arbitration agreement is a "contract evidencing a transaction interstate commerce," i.e., that it had a "substantial relationship to interstate commerce." See, Carbajal v. CWPSC, Inc., 245 Cal. App. 4th 227, 240, 199 Cal. Rptr. 3d 332 (2016); Cf., Perry v. Thomas, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).

[40] Daghlian v. DeVry Univ., Inc., 582 F. Supp. 2d 1231 (C.D. Cal. 2007) (determining that *state regulation* of private post-secondary schools requiring WASC accreditation violated dormant commerce clause by discriminating against interstate commerce); Gelow v. Cent. Pac. Mortg. Corp., 560 F. Supp. 2d 972 (E.D. Cal. 2008) (in a case allegeing a RICO conspiracy by multi-state mortgage loan companies, court conclusory held that *branch manager* employment contracts containing arbitration clauses, concerned "interstate commerce.")

in *Circuit City*), appears nowhere in § 1.  In 2001, the Supreme Court, reviewing a case filed in 1995, *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 120–121 (2001), held that an in-store "sales counselor," *id.* at 111, was not "engaged . . . in interstate commerce," in response to a contention that § 1 covered *all* employees. Invoking a textualist approach, *id.* at 116–118, and *expressly eschewing any* Congressional-intent analysis as relevant to that case, *id.* at 118–120, *Circuit City* held that "engaged in commerce" "appears to denote only persons or activities within the *flow* of interstate commerce." *Citing Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195 (1974).  *Precisely* the exact reasoning as to why *Circuit City* in 2001 excluded a "sales clerk" at a private retailer explains why USC cannot invoke the FAA. *Circuit City* declined to read § 1 through the lens of *Lochner* era restrictions on commerce powers because doing so would "bring instability to *statutory interpretation*." *Id.* at 117, 119.  Similarly, reading "engaged in interstate commerce" as limited to archaic lines of employment is impossible.  It is undisputed, for instance, that § 1 covers truck drivers.  Modernizing § 1's meaning through reference to strictly trucks and planes "bring[s] instability to statutory interpretation."

As the Ishop Declaration forcefully illustrates, ¶ 2-4, USC is a regulated industry, and USC's employees are "engaged in interstate commerce."  *See also* IBB, Ex. G USC's Senate Minutes, lns. 272-273 ("For geographically dispersed faculty, [investigators] . . . interviews are conducted via video conference.")

There is also another problem with D's textual misadventure.  USC's employees transact business over fiber optic, use phones, and video conferencing, similar to the telegraph.[41]  There is *no basis* to rewrite § 1 with "transportation" nomenclature that appears *nowhere* therein.  In 1925, "seaman" and "railroad employees" were like other classes of employees engaged, or closely connected to, federally regulated activities.

---

[41] See, e.g., Int'l Text-Book Co. v. Pigg, 217 U.S. 91, 112, 30 S. Ct. 481, 487, 54 L. Ed. 678 (1910) ("If intercourse between persons in different states by means of telegraphic messages conveying intelligence or information is commerce among the states, . . . we cannot doubt that intercourse or communication between persons in different states, by means of correspondence through the mails, is commerce among the states within the meaning of the Constitution . . . .")

OPPOSITION TO USC'S MOTION TO COMPEL ARBITRATION

Similarly, USC's employees are subject to heavy federal regulation. Indeed, alleged work included, for example, investigations of violations of Title IX and other federal regulations.  Further, as Means explained to USC's Academic Senate, USC's investigators use advanced technology for broad geographic reach.[42]  Thus, USC must lose its FAA Motion, under §§ 1 and 2.

## C.  USC HAS NOT ESTABLISHED ENFORCABILITY

Assuming, *arguendo*, that the FAA applies, *but see supra,* (re: Franken Amendment and unconstitutional preemption), USC's *prima facie* case, as well as Doe's defenses, are triable under § 4,[43] which confirms that *no pro*-employer presumption exists.  § 4 ("*If* the jury *find* that an agreement for arbitration was made in writing. . . ."); *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141.  USC's *own* authority requires *USC* to prove: (1) a lawful contract;[44]  (2) with binding terms;[45] and (3) not contrary to the Labor Code.[46]  Further, courts are "particularly attuned"[47] to ensuring that such agreements are bilateral *in effect*.[48]  As argued below, the Franken Amendment and state dual-sovereignty police-power "waiver" statutes are at issue.

## D.  THE AA VIOLATES THE FRANKEN AMENDMENT

Contracts with an unlawful object are void.  *Cal. Civ. Code* § 1667.[49]  A "violation of federal law is a violation of law for purposes of" § 1667.  *Kashani v.*

---

[42] Cf., New Prime Inc. v. Oliveira, 139 S. Ct. 532, 539, 202 L. Ed. 2d 536 (2019), Justice Gorsuch explained "happily" there was no dispute as to whether the employee was "engaged in interstate commerce." Here, there are factual disputes.
[43] "If the making of the arbitration agreement or the failure, neglect, or refusal to perform … be in issue ..." Doe "may . . . demand a jury trial of such issue."
[44] Illegality is a generally applicable contract defense. Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77, 102 S. Ct. 851, 70 L. Ed. 2d 833 (1982).
[45] Gelow, 560 F. Supp. 2d 972.
[46] Davis v. Nordstrom, Inc., 755 F.3d 1089, 1093 (9th Cir. 2014), and 1095, fn. 10 (2014) (noting arbitration contract cannot "run afoul of the Labor Code", and refusing to address "whether a mandatory arbitration program" would violate the NLRA).
[47] Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1261 (9th Cir. 2017).
[48] Circuit City Stores, Inc. v. Adams, 279 F.3d 889 (9th Cir. 2002).
[49] Cal. Civ. Code § 1667(That is not lawful which is: "Contrary to an express provision of law;" "Contrary to the policy of express law, though not expressly prohibited;" or "Otherwise contrary to *good morals*."); Thom v. Stewart, 162 Cal. 413, 415, 122 P. 1069 (1912) (Any agreement "the consideration of which is immoral or unlawful is void," and "incapable of enforcement"); Allen v. Jordanos' Inc., 52 Cal. App. 3d 160, 166, 125 Cal. Rptr. 31 (1975) (consideration "void for illegality is no consideration.").

*Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004).  The Franken Amendment broadly provides that, as a condition of USC's federal defense contracting, which contracting is judicially noticeable, USC must "***agree[] not to***" enter into, ***or enforce***, any agreements for the arbitration of "any claim under Title VII." 48 C.F.R. § 222.7402 (a)(1) or (2).  USC, however, drafted the AA at ¶¶(3)(1) to circumvent Congress and Article III.  *First*, the AA *excises* the word "any"; but the word "any" is in the statute, and "any" has "expansive meaning."  *U.S. v. Gonzales,* 520 U.S. 1, 5 (1997).  Next, USC's AA excludes claims "*brought* under" Title VII, but "brought" is *not* in the statute or regulation.[50]  USC's own argument that California may enact more protective statutes under Title VII demonstrates the point. *See* Mot., at p. 23:14–23 (concerning FEHA being more protective).  USC's contention that FEHA claims must be arbitrated seeks to arbitrate claims "under" Title VII, as ***Title VII*** authorizes more protective state rights.[51]  As *Armendariz* explained, "[p]arallel state anti-discrimination laws are explicitly *made part of* Title VII's enforcement scheme."[52]  24 Cal. 4th at 95; *cf.* 29 C.F.R. § 1601.70, 74.  USC, by introducing modifiers, makes itself the "arbiter" of statutory interpretation, violating *Nichols v. U.S.,* 578 U. S. —— (2016).[53]

The same is true at Mot., p. 12 and 28, arguing the Franken Amendment would

---

[50] "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" Rotkiske v. Klemm, 140 S. Ct. 355, 361, 205 L. Ed. 2d 291 (2019). By introducing limitations, USC would have to ask the court to alter, rather than to interpret. Nichols v. U.S., 578 U. S. —— (2016).
[51] 42 U.S.C. § 2007e-7 ("Nothing in thissubchapter shall be deemed to exempt or relieve any person from liability, duty, penalty or punishment provided by any present or future law of any State . . . other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter"); *see also*, 42 U.S.C.A. § 2000e-7 (West) (authorizing worksharing agreements between the EEOC and state agencies like California's DFEH); 42 U.S.C.A. § 2000e-8(b) (West) (providing for executive- branch coordination with state agencies for furthering equal opportunity); 42 U.S.C.A. § 2000e-5(c),(d) (West) (EEOC defers to state agencies in parallel enforcement actions).  Similarly, under Title VII. the EEOC is authorized to enter into work to enter into workshare agreements with more protective states like California.  https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2019/01/WorksharingAgreementFY2019WSA.pdf
[52] Also see, Prudential Ins. Co. of Am. v. Lai, 42 F.3d 1299, 1303 (9th Cir. 1994), n. 1, citing Kremer v. Chem. Const. Corp., 456 U.S. 461, 477, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); Salgado v. Atl. Richfield Co., 823 F.2d 1322, 1326 (9th Cir. 1987).
[53] It is fundamental that "absent provision[s] cannot be supplied by the courts," Rotkiske, 140 S. Ct. at 361, let alone by USC, which is not even an Article III court.

not extend to Title IX employee claims.  "Under," as that term appears in the statute, is a broad word meaning "subject to the authority, control, guidance, or instruction of."[54] Statues and regulations under Title VII and Title IX recognize a need to maintain consistency with Title VII.[55] Moreover, Doe's plain language interpretation is consistent with the Congressional record.[56]  Thus, for these reasons alone, Doe's claims are "*under* Title VII of the Civil Rights Act."  Cf., Comp. ¶ 2, ¶ 36, 64-82, and 221.

Similarly, the AA at ¶3(2) violates Franken, and Supreme Court precedent, by modifying "*any* tort" and using "tort *claims*," again leaving out the broad modifier "any" and adding the limiting modifier "claims."  The AA seeks to compress the Franken Amendment to limit USC's liability.  Reducing "torts" to "tort claims" seems calculated to compel arbitration over retaliation-predicated liability theories. The Franken Amendment, clearly broad enough to compel an open trial over an employer's unlawful attempts to intimidate or retaliate against reporting/assisting parties, is deceptively narrowed by USC.  Indeed, the proof is in the pudding, because USC's *motion* itself makes the argument that FEHA retaliation against assisting parties in a sexual harassment investigation is not a "tort claim."  USC's Motion proves that reducing "torts" to "tort claims" was calculated and intentional.

D also adds the limiting modifier "sexual," instead of Franken's "sexual assault **or** harassment."  Nothing in the Franken Amendment authorizes D to add or delete

---

[54] "Under" Merriam-Webster.com. Merriam-Webster (2020), link at https://www.merriam-webster.com/dictionary/under
[55] Title VII provides for the EEOC's guidance and instruction as the EEOC is shall "coordinate" with other agencies responsible for enforcing and implementing employment equal employment opportunity legislation.  Section 715 of the TitleVII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e-14 (West); cf., 34 C.F.R. § 106.6(f) (clarifies that Title IX cannot be read in derogation of rights under Title VII); 85 FR 300026-1, at 590 (taking guidance from Title VII and providing that the "Department will will construe Title IX and its implementing regulations in a manner to avoid an actual conflict between an employer's obligations under Title VII and Title IX.");  28 CFR 2.610(a) (required to give due weight to EEOC's determination that reasonable cause exists to believe that Title VII was violated.)
[56] DOE's plain interpretation is consistent with the Congressional record. 155 Cong. Rec. 23,403 (2009).  The purpose was "to give the victims . . . of discrimination their day in court."  Id. at 23,559.  The "amendment would make sure all military contractors . . . give victims that basic right."  Id. at 23,560–61.

modifiers.[57]  The Complaint alleges Doe's "common law and statutory [claims] herein *arise*, at least in part from alleged sexual harassment or assault."  Comp. ¶ 47.  Further, as there is no limiting modifier of "claims," the allegations are within the Franken Amendment. *Id* ¶¶ 48-63; *id.* ¶¶ 83-98.

### E.    THE ALLEGED AGREEMENT *EXCLUDES* DOE'S CLAIMS

"Courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *Cal. Civ. Code § 1639*.  The statutory requirement to resolve *reasonable* ambiguities against USC, and other California rules, carries particular force here. *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016). Here, as explained above ¶ 3 in the AAA expressly supersedes ¶ 2, and must be enforced "even if other provisions read in isolation . . . seem to dictate a different result."  *Boghos*, 36 Cal. 4th at 503–504.[58]  Even without the Franken Amendment, Part (2) of ¶ 3 demonstrates that P's claims are "not covered."  The AA does *not* cover "tort *claims* (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment *or negligent hiring, supervision or retention*) if they are *related to or arising out* of sexual assault or sexual harassment."  Doe's 3rd and 4th "tort claims" are "related to or arise out of sexual assault or *sexual* harassment."  Title IX is a tort claim.  *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir. 2006).  As the FEHA is a tort claim.[59] *Bihun v. AT&T Info. Sys., Inc.*, 13 Cal. App. 4th 976, 1002 (1993).[60]  Negligent Hiring is a tort claim and is alleged.  Comp. ¶¶ 83–98.  As note, however, the Franken Amendment is not limited to "tort claims."  Comp. ¶¶ 47, 48, 64–82.[61]

### F.    THE FAA DOES NOT GOVERN CA'S POLICE POWERS

---

[57] Doe *discloses* that there are *conclusory* district court opinions on *Franken*.
[58] Cf., E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, (2002) ("[W]e do not override  . . . the plain text . . .," for a "policy favoring arbitration. . . .")
[59] Doe filed state claims in state court permissible under Colorado River abstention.
[60] As modified on denial of reh'g (Mar. 25, 1993); disapproved on other grounds by Lakin v. Watkins Associated Indus., 6 Cal. 4th 644, 863 P.2d 179 (1993) ("The fact sexual harassment is made actionable by statute Does not make it any less a 'tort' than battery, false imprisonment or negligence").
[61] Doe's claims are also contractually excluded by ¶ 3(1).

In considering USC's Motion, federal courts are "subject to the *restrictions and limitations* of the public policy of the United States.'" *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1286 (9th Cir. 1982). Courts "refer to basic principles of federalism" and insist on a clear indication of Congressional intent "before interpreting the statute's expansive language in a way that intrudes on the police power of the States."[62]   In *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937), the Supreme Court upheld the expansive rights of state legislatures under police powers.[63]   The FAA exhibits no manifest intent to preempt such dual sovereign legislative police powers."[64]   The Congressional Record of the FAA is again consistent.[65]   California's *legislature* has exercised *police power*[66] to protect employees. See, Comp., ¶ 116-122.  Examples include:

- Labor Code § 923 (1937) safeguards employees "from entering into"

[62] Bond v. U.S., 572 U.S. 844, 134 S. Ct. 2077, 2090, 189 L. Ed. 2d 1 (2014); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 87 L. Ed. 2d 444, 105 S. Ct. 3346, 473 U.S. 614, 628, 53 USLW 5069, 1985-2 Trade Cases P 66669 (1985). The Supreme Court has "never assumed lightly that Congress has derogated *state regulation*, but instead [has] addressed claims of pre-emption with the starting presumption that Congress Does not intend to supplant state law." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654–55, 115, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995) (citations omitted).  Also see, Hillsborough Cty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 715, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985); Californians For Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1186 (9th Cir. 1998).

[63] "In dealing with the relation of employer and employed, the [state] has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression.. . .where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself."

[64] In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967), the court commented that the FAA excludes from its reach an employer requiring the "employee's agreement to an arbitration clause in a contract obtained by *superior* bargaining power.")

[65] See, e.g., 65 Cong. Rec. 1931 (remarks of Rep. Graham) (the FAA provides an "opportunity to enforce ... an agreement to arbitrate, when voluntarily placed in the document by the parties to it"). Congress never endorsed a policy favoring arbitration where one party sets the terms while the other is left to "take it or leave it." Hearing 9 (remarks of Sen. Walsh) (internal quotation marks omitted).

[66] California's FEHA and Labor Code exercise legislative police powers. (Gov. Code § 12920 (FEHA is an exercise of California's police power for "the protection of the welfare, health and peace of the people of the state."); Sonic-Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 311 P.3d 184 (2013) (same for Labor Code.)

agreements "that are not *voluntary*. . . ." <u>Nutter v. City of Santa Monica</u>, 74 Cal. App. 2d 292, 168 P.2d 741 (1946) (voluntary means "negotiated.")

- Labor Code § 432.5 (1963) (prohibits employers from "requiring" employees to agree in writing to any "*condition*" known to be "prohibited by law.")

- Government Code § 12964.5 (2019) declares it an "unlawful employment practice for an employer . . . as a *condition* of employment" to require release (i.e., waiver) of rights in the FEHA, including "the right to file and pursue a civil action or complaint with . . . *any court **or** other governmental agency*."

- Labor Code § 432.6 (2020) prohibits an employer from making it a "*condition of employment*" for an employee to "waive any right, forum or procedure" for a violation of the FEHA or Labor Code. Also, Gov. Code § 12953.

D's conclusory argument, in Mot., p. 23, fn. 9 that P's citations to Labor Code 432.4-432.6 and Gov. Code § 12953 are misplaced, misses the mark. As already established, California has these statutory police powers. D's evidence concedes the lack of *negotiation*, continuing at-will employment, and unlawful waivers.[67]

There are a couple of other points. Section 432.6 applies to "contracts for employment *entered into, modified or extended* on or after January 1, 2020." P alleges at-will employment within the meaning of Labor Code §2922 (versus a specified term in § 2924). Comp., ¶ 122. Cf., <u>Midwest Motor Supply Co. v. Superior Court of Contra Costa Cty.</u>, 56 Cal. App. 5th 702, 270 Cal. Rptr. 3d 683 (2020) (extended in the context of a specified term agreement).[68] Moreover, in 2020 alone, D has adopted about ten new policies,[69] modifying P's at-will employment. (E.g., Comp. ¶ 76.[70] (Cal. Code Regs. tit. 2, § 11023(b).) Last, D's citation to <u>Chamber of Com. v. Becerra</u>, 438

---

[67] In *Perry*, cited supra at fn. 39, our Supreme Court's ruled on different language in Labor Code § 229. Justice Occoner's precient reasoning in her *Perry* dissent applies to Doe's assertions and the facts at bar. In <u>Perry</u>, 482 U.S. at 494, the majority held that Labor Code § 229 was preempted by the FAA as disregarding the FAA in mandating a judical forum. Justice O'connor in dissent, at 494-495, would have read it as prohibiting a waiver of a judicial forum, and therefore not preempted by the FAA.
[68] As the FAA is merely a procedural enforcement mechanism for private contracts, there is **no** logical prohibition on California's exercise of police power.
[69] https://policy.usc.edu/new-revised-policies/.
[70] https://policy.usc.edu/discrimination/

F. Supp. 3d 1078, 1108 (E.D. Cal. 2020) is inapposite. The issue of state legislative police dual sovereign powers was not raised or analyzed. The *Becerra* court's reasoning was, in part, rejected in Midwest Motor Supply Co., 56 Cal. App. 5th at 702 (but failing to see the issue of continued at-will employment).

### G.     THE AA DOES NOT COMPLY WITH *ARMENDARIZ*

*Armendariz* requires "*neutral forum,*"[71] and an AA must not:

- "limit statutorily imposed remedies" (at 103);

- contain express discovery limitations *contrary* to "procedures necessary to vindicate the claim" (at 106);

- provide for an award that does **not** contain within it the "essential finding and conclusions on which the award is based" (at 107); or

- require [P] to "bear *any* type of expense that the employee would not be required to bear if [P] were free to bring the matter in court" (at 110).

*Here*, the AA fails *Armendariz*. **First**, the AA falsely warrants "impartial arbitration." JAMS is not a neutral forum[72] Courts are to "be even more scrupulous to safeguard the impartiality of arbitrators than judges."[73] (Cf., Comp., ¶¶ 261-265; Ca. Ev. Code § 412;[74] RFJN.) **Second**, the AA's express provisions limit discovery

---

[71] Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465 (D.C. Cir. 1997); also see, Armendariz, 24 Cal. 4th at 101, 126 (citing cases prohibiting "less-than-neutral arbitration forum."); Cf., Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 483, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989) ("There is nothing in the record . . ., nor in the facts of which we can take judicial notice, to indicate that the arbitral system ... would **not** afford the plaintiff the rights to which he is entitled.")
[72] See also, Hunt v. United Bank & Tr. Co., 210 Cal. 108, 291 P. 184 (1930) ("whenever the court can collect from the instrument or engagement on the one side to do or not to do a certain thing, it amounts to a covenant, whether it be contained in the recital or in any other part of the instrument.").
[73] Commonwealth Coatings Corp. v. Cont'l Cas. Co., 21 L. Ed. 2d 301, 89 S. Ct. 337, 393 U.S. 145, 149 (1968) ("we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges . . . .")
[74] Fed. R. Evid. 302 ("In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision."); also see, Ev. Code § 412 ("If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.") There rules are also consistent with federal precedent. "Conduct which forms a basis for inference is evidence. *Silence* is often evidence of the most persuasive character." U.S. ex rel. Bilokumsky v. Tod, 263

and introduce the formalism of Rules 12 and 56, contrary to *Gilmer* and federal public policy in favor of broad discovery.[75] (See, AA ¶ 8; JAMS, Rule 17 (b);[76]; Fed. R. Civ. P. 56(c)(2).) Further, there is **no** mechanism for enforceable third-party discovery.[77] **Third**, the form of Award in ¶ 8, conflicts with *Armendariz*, and/or prohibitions in JAMS Rule 24(h).[78] **Fourth**, the *express* language of AA *limits* equitable remedies, especially when read with JAMS Rule 24(c).[79] **Fifth**, the AA *expressly* violates *Armendariz's* rule that an employee cannot be required to "bear *any* type of expense that the employee would not be required to bear if he or she were free to bring the matter in court." The AA reads: [1] USC will provide a printed copy upon request Employee's share of the arbitrator's fee and [2] the JAMS filing fee shall be no more than the then-current filing fee in court." (AA, ¶ 5). Cf., JAMS Rule 31(c) ("If an Arbitration is based on a clause or agreement that is required as a condition of employment, **the only fee** that an employee may be required to pay is the initial JAMS Case Management Fee.") Similarly, the AA violates <u>Armendariz</u> by expressly providing for cost-shifting on the Motion. <u>Pokorny v. Quixtar, Inc.</u>, 601 F.3d 987, 1104 (9th Cir. 2010). (Cf., AA, ¶ 5 and 8; JY Dec., Exh. E, ¶ 2.) Thus, the AA fails <u>Armendariz</u>.

## H.   USC'S FRAUD AND/OR BREACH ARE DEFENSES

---

U.S. 149, 153, 154, 44 S. Ct. 54, 68 L. Ed. 221 (1923); <u>Runkle v. Burnham</u>, 153 U.S. 216, 225, 14 S. Ct. 837, 38 L. Ed. 694 (1894) (similar to Evid. Code § 412).
[75] "Under Federal Rules of Civil Procedure and Title VII "discovery scope is extensive." <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397 (5th Cir. 1983). <u>Mitchell v. Nat'l R.R. Passenger Corp.</u>, 208 F.R.D. 455, 459 (D.D.C. 2002); <u>Ri Sau Kuen Chan v. NYU Downtown Hosp.</u>, No. 03 CIV. 3003 (CBM), 2004 WL 1886009, at *4 (S.D.N.Y. 8/23/2004) ("imposition of ***unnecessary*** discovery limitations . . . is to be avoided.").
[76] ("*Absent agreement*, the Arbitrator **shall** determine" discovery "based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and witness.")
[77] <u>Aixtron, Inc. v. Veeco Instruments Inc.</u>, 52 Cal. App. 5th 360, 265 Cal. Rptr. 3d 851 (2020); <u>Gilmer</u>, 500 U.S. at 31 (SEC rule allowed for "subpoenas.")
[78] "The **Award shall** consist of a written statement . . . regarding the disposition of each claim and the relief, if any, as to each claim. The **Award shall** also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based."
[79] ("The Arbitrator may grant any remedy or relief that is just and equitable and ***within the scope of the Parties' agreement***, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.").

D has **not** established that its misrepresentations, or concealment, as articulated

above, are "so obviously unimportant as to make them immaterial as a matter of

law."[80] D's authorities concerning private investors and 10b-5 fraud are inapposite,[81]

contrary to the reasoning of <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 371, 8 P.3d

1089 (2000) [even with at-will], and other well reasoned employment cases.[82] D also

ignores the case law concerning duties to disclose to potential employees.  D further

disregards that breaches are a defense. <u>Brown v. Grimes</u>, 192 Cal. App. 4th 265, 277–

78, 120 Cal. Rptr. 3d 893 (2011); See also, Civil Code § 3391 and 3392. D's

"misrepresentations" concern the (1) available "internal processes" for "collegially

resolving differences," and (2) "impartial arbitration" with JAMS. (Comp., ¶ 21 and

22). The misrepresentations also go the "kind" or "character" of work. Labor Code §

970. D also misrepresents the applicability of the FAA, § 4 jury trial. (AA ¶  8, Mot.,

p. 13.) D also belies matters, at Mot. p. 11, as there is no "giving up . . . a jury trial."

But that is <u>not</u> the worst of it. D's assertion that a "reasonable person" could *not*

---

[80] <u>Engalla v. Permanente Med. Grp., Inc.</u>, 15 Cal. 4th 951, 977– 978, 938 P.2d 903 (1997), <u>as modified</u> (July 30, 1997) (an issue of materiality exists if a misrepresentation, or *concealment*, was "not so obviously unimportant as to make them immaterial as a matter of law", and "materiality is a question of fact."); <u>Larian v. Larian</u>, 123 Cal. App. 4th 751, 765, 19 Cal. Rptr. 3d 916 (2004), <u>as modified</u>  (Nov. 16, 2004) ("Claims that  a party has employed fraud in inducing consent specifically to the arbitration agreement" are "decided by the court [not arbitrator], because they go to the valid making of the arbitration [agreement] itself.")

[81] E.g., <u>Blankenheim v. E. F. Hutton & Co.</u>, 217 Cal. App. 3d 1463, 1474–1475, 266 Cal. Rptr. 593 (1990) (reliance "manifestly unreasonable"); <u>Sears v. Myerson</u>, 106 Cal. App. 220, 289 P. 173 (1930) ("If there is a doubt as to whether or not a representation   was intended and understood as a mere expression of opinion or a statement of fact, **the question is one not of law but of fact for the court or jury**.") P does not rely on a horseback riding instructor's representation that an injury waiver, concerning **no** public policy, was "meaningless."  P is not a private investor claiming securities fraud under 10b-5 on "aspirational" codes of ethics. <u>Guido v. Koopman</u>, 1 Cal. App. 4th 837, 2 Cal. Rptr. 2d 437 (1991); <u>Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.</u>, 845 F.3d 1268 (9th Cir. 2017); <u>Desai v. Gen. Growth Properties, Inc.</u>, 654 F. Supp. 2d 836, 857 (N.D. Ill. 2009).

[82] <u>Guz</u>, 24 Cal. 4th 317("logic suggests that the employer may intend, and employees may understand, such generally promulgated policies as a systematic approach to personnel relations, providing a clear and uniform alternative to haphazard practices, understandings, and arrangements within the company.") See also, <u>Harshbarger v. CSX Transp., Inc.</u>, 478 F. Supp. 2d 890 (S.D.W. Va. 2006) (employee could reasonably rely on on assurances in Code of Ethics); <u>Seiter v. Yokohama Tire Corp.</u>, No. C08-5578 RBL, 2010 WL 455132 (W.D. Wash. Feb. 3, 2010) (same).

OPPOSITION TO USC'S MOTION TO COMPEL ARBITRATION

rely upon is "absurd." As explained above, D has misrepresented and/or concealed the Franken Amendment from federal courts in this district. D has also *hidden* a final court order against D on the FEHA being a tort. D has also misrepresented to courts JAMS  Rules containing an enforceable delegation clause. (RFJN.)

## I.   THE AGREEMENT IS HIGHLY UNCONSIONABLE

Unless the employer demonstrates *that the effect* is bilateral—"courts should **presume** such contracts substantively unconscionable." <u>Circuit City Stores, Inc. v. Mantor</u>, 335 F.3d 1101, 1108 (9th Cir. 2003), citing <u>Ingle</u>, 323 F.3d 1173-1174; c<u>Armendariz</u>, 24 Cal. 4th at 115–117.[83] Courts "examine the **totality** of the [] substantive terms as well as the circumstances of its formation . . . ." <u>Carbajal v. CWPSC</u>, 245 Cal. App. 4th 224, 242 (2016), citing <u>Sonic-Calabasas A, Inc.</u>, 57 Cal. 4th at 1146.  **Here,** procedural unconscionability is clearly met: "An arbitration agreement that is an essential part of a take it or leave it employment condition, without more, is procedurally unconscionable." <u>Martinez v. Master Prot. Corp.</u>, 118 Cal. App. 4th 107, 12 Cal. Rptr. 3d 663 (2004). Sophistication does not undercut "surprise **or** other sharp practices where a party with less bargaining power is **not** told about an *unusual* provision, or otherwise "**lied to**, placed under duress, or *otherwise manipulated* into signing the arbitration agreement." <u>Poublon</u>, 846 F.3d at 1261, *citing* <u>Baltazar v. Forever 21, Inc.</u>, 62 Cal. 4th 1237, 1245, 367 P.3d 6 (2016).  Further, an agreement confusing language is unconscionable. [84] So is a one-sided description of arbitration.[85]  USC also cannot require employees to go elsewhere to figure-out

---

[83] "Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees," courts "must be particularly attuned to claims that employers with *superior bargaining power* have imposed *one-sided*, substantively unconscionable terms as part of an arbitration agreement."

[84] <u>Milliner v. Bock Evans Fin. Counsel, Ltd.</u>, 114 F. Supp. 3d 871 (N.D. Ca. 2015); <u>Lou v. Ma Labs., Inc.</u>, C 12-05409 WHA, 2013 WL 2147459 (N.D. Ca. 5/15/13.)

[85] <u>Quevedo v. Macy's, Inc.</u>, 798 F. Supp. 2d 1122, 1137 (C.D. Cal. 2011) (procedural unconscionability where D "[gave] a one-side view of the benefits of arbitration and [did] not alert employees to the potential drawbacks of foregoing the rights available in federal court to a jury trial, to more extensive discovery, and appeal.")

differences between JAMS Rules and the AA.[86] Here, as demonstrated above, D violates all of the above.[87]  D's decades-old citations are inapposite in this context.[88]

**Substantive unconscionability**, <u>Sonic-Calabasas.</u>, at 1146, is shown by:

> terms that ***impair** the integrity of the bargaining process* or otherwise ***contravene the public interest or public policy***; terms (usually of an adhesion or boilerplate nature) that attempt to ***alter*** in an impermissible manner ***fundamental duties otherwise imposed by the law***, *fine-print terms*, or provisions that seek to ***negate the reasonable expectations*** of the nondrafting party, or ***unreasonably and unexpectedly*** harsh terms having to do with . . . central aspects of the transaction."

Here, as demonstrated above, the AA fails on all these grounds.  Numerous courts have reasoned consistent with the above: (<u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1179 (9th Cir. 2003),[89] as here there is express power to revoke. Also, with express terms contrary to equitable exceptions to the "prescribed" statute of limitations. AA, ¶ 6. <u>Ingle</u>, 328 F.3d 1165.[90] Further, the JAMS Minimum Standards do **not** save D, as

---

[86] <u>Zullo v. Superior Court</u>, 197 Cal. App. 4th 477, 485–486, 127 Cal. Rptr. 3d 461 (2011) (requiring  Account Executive to make an independent inquiry to find the applicable rules in order to understand what she was about to sign was procedurally unconscionable); <u>Lane v. Francis Capital Mgmt. LLC</u>, 224 Cal. App. 4th 676, 168 Cal. Rptr. 3d 800 (2014) (agreement "clearly specified a particular set of [] rules, and it did not modify those rules in any manner.")

[87] (E.g.'s, ¶ 2 [excluding the Universities related entities from the obligation to arbitrate claims against P]; ¶ 6 [requiring an employee to "factually describe the nature of all claims asserted" subject to a motion to dismiss without the promised "collegial process" and while the University sits on the stronger evidence.]  USC also hides within vague prolix other terms imposing an "inferior forum." (E.g., ¶ 5 [superseding conflicting JAMS rules], ¶ 6 [statute of limitations language directly *contradicting* JAMS *unincorporated* Minimum Standards]), ¶ 7 [using vague "to the maximum extent permitted by law" language to insert a *one-way* waiver").

[88] In <u>Lagatree v. Luce, Forward, Hamilton & Scripps</u>, 74 Cal. App. 4th 1105, 88 Cal. Rptr. 2d 664 (1999), the Court held conditional agreements were not per-se unlawful to support a wrongful termination in violation of public policy. Further, *Armendariz* found that such a conditional agreement, even without superior bargaining power, *procedurally* unconcsionable. (Mot., p.19, ln. 10-15.)

[89] Cf., <u>24 Hour Fitness, Inc. v. Superior Court</u>, 66 Cal. App. 4th 1199, 1214–1215, 78 Cal. Rptr. 2d 533 (1998) (where handbook provided for notice of changes to employee, unilateral right to *modify* the agreement was not "illusory" because it must be exercised in accordance with the implied covenant of good faith  and fair dealing). However, when an "express provisions of the contract, grant the right to engage in the very acts and conduct" they are not "forbidden by an implied covenant of good faith and fair dealing." <u>Carma Developers (Cal.), Inc.</u>, 2 Cal. 4th at 374.

[90] <u>Addison v. State of California</u>, 21 Cal. 3d 313, 318–319, 578 P.2d 941 (1978) ("Equitable tolling is a judge-made doctrine "which operates independently of the literal wording of the Code of Civil Procedure" to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."); <u>Barrington</u>

neither they or the JAMS EARAP are fully incporporated, and instead ¶ 5 supersedes conflicting JAMS Rules. So are one-way waivers. <u>Ingle</u>, 328 F.3d 1165. Even ¶8's hurdles on discovery negate expectations, especially when combined with the formalism of the Fed.R.Civ. P. 12 and 56. Yet, the AA restrictions are permitted by JAMS Rule 17(b), and a court cannot imply contrary provisions. Moreover, JAMS Rule 26, and the Confidentiality Statement, negate expectations. <u>Ting v. AT&T</u>, 319 F.3d 1126 (9th Cir. 2003); <u>Grabowski v. Robinson</u>, 817 F. Supp. 2d 1159, 1176 (S.D. Cal. 2011) (confidentiality provision handicaps employees.). Last, Neither *Concepcion* nor *Epic Systems*, condone an express one-sided waiver. D's authority is inapposite. [91]

## IV.   ENFORCEMENT IS PREJUDICAL TO THE PUBLIC INTEREST

Civil Code § 1689's public interest "may be based on the policy expressed in a statute or the rules of a voluntary regulatory entity, or may be implied from the language of such statute  or rule." <u>Cariveau v. Halferty</u>, 83 Cal. App. 4th 126, 131, 99 Cal. Rptr. 2d 417 (2000); <u>Tatterson v. Kehrlein</u>, 88 Cal. App. 34, 263 P. 285 (1927). *First*, JAMS "might reasonably be thought biased against one litigant and favorable to another." <u>Commonwealth Coatings Corp. v. Cont'l Cas. Co.</u>, 21 L. Ed. 2d 301, 89 S. Ct. 337, 393 U.S. 145, 149 (1968). Second, D's assert an AA contrary to federal statute and Constitutional dual sovereignty. Cf., <u>Fed. Sav. & Loan Ins. Corp. v. Angell</u>,

---

v. A. H. Robins Co., 39 Cal. 3d 146, 151, 702 P.2d 563 (1985); <u>Elkins v. Derby</u>, 12 Cal. 3d 410, 420, 525 P.2d 81 (1974); <u>Amaral v. Cintas Corp. No. 2</u>, 163 Cal. App. 4th 1157, 1199–1200, 78 Cal. Rptr. 3d 572 (2008) ("An amended complaint relates back to the filing date of the original complaint, and thus *avoids* the statute of limitations bar, so long as the recovery sought in both pleadings is based on the same general set of facts.") Cf., JAMS Minimum Standards ("All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available in the arbitration.")
[91] <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 337, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ("arbitration of all disputes between the parties, but required that claims be brought ***in the parties'*** "individual capacity."); <u>Carter v. Rent-A-Ctr., Inc.</u>, 718 F. App'x 502 (9th Cir. 2017) ("Carter's unconscionability argument is directed at the class action waiver provision only" and waiver was not one-sided); <u>Kilgore v. KeyBank, Nat. Ass'n</u>, 718 F.3d 1052, 1058 (9th Cir. 2013) ("There shall be no authority for any Claims to be arbitrated on a class action basis."); <u>Epic Sys. Corp. v. Lewis</u>, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018) (employees did *not* assert the mutual procedural class waiver was extracted "in some other unconscionable way that would render any contract unenforceable.") In <u>Asfaw v. Lowe's HIW, Inc.</u>, No. LA CV14-00697 JAK, 2014 WL 1928612 (C.D. Cal. May 13, 2014), the waiver applied to "either party."

1   Holmes & Lea, 838 F.2d 395 (9th Cir. 1988). Third, the FAA does not preempt

2   McGill,[92] meets McGill's rule, [93] and Art. III.  Cruz v. PacifiCare Health Sys., Inc., 30

3   Cal. 4th 303, 66 P.3d 1157 (2003). D's cases and authority are inapposite. [94]

4   ## V.     CONCLUSION

5        The court should deny D's Motion. Court's are not at "liberty to revise an

6   agreement under the guise of construing it." Levi Strauss & Co. v. Aetna Cas. & Sur.

7   Co., 184 Cal. App. 3d 1479, 1486 (1986) [court "cannot insert in the contract language

8   which one of the parties now wishes were there."].) More "than one unlawful

9   provision in an arbitration agreement weighs against severance." Fitz v. NCR Corp.,

10   118 Cal. App.  4th 702, 726, 727, 13 Cal. Rptr. 3d 88 (2004).

11   DATED: December 28, 2020          **BLADY WORKFORCE LAW GROUP**

12

13                                     By: /s/ I. Benjamin Blady
                                      Attorneys, for Doe, et al.

14

15

16
_____

17   [92] McGill, 2 Cal. 5th at 961("Because the arbitration provision purported to waive the
     plaintiff's right to seek public injunctive relief in any forum, "the arbitration provision
18   here at issue [was] invalid and unenforceable."); Blair, 928 F.3d at 822(contractual
     agreement that purports to waive a party's right to seek public injunctive relief in any
19   forum is unenforceable under California law.)  See Delisle, 2019 WL 2423090, at *10.
     [93]  McGill v. Citibank, N.A., 2 Cal. 5th 945, 961, 393 P.3d 85 (2017) ("Because the
20   arbitration provision purported to waive the plaintiff's right to seek public injunctive
     relief in anyforum, the Court "conclude[d] that the arbitration provision here at issue
21   [was] invalid and unenforceable."); Blair v. Rent-A-Ctr., Inc., 928 F.3d 819, 822 (9th
     Cir. 2019). (contractual agreement that purports to waive a party's right to seek public
22   injunctive relief in any forum is unenforceable under California law.)  See Delisle v.
     Speedy Cash, No. 3:18-CV-2042-GPC-RBB, 2019 WL 2423090, at *10 (S.D. Cal.
23   June 10, 2019), vacated and remanded, 818 F. App'x 608 (9th Cir. 2020).
     [94] USC cases concenrn (1) the abrogated California *judicial* rule requiring injunctive
24   relief to *only* be brought in Court (Ferguson v. Corinthian Colleges, Inc., 733 F.3d
     928, 934 (9th Cir. 2013), *and* Kilgore, 718 F.3d 1052); (2) injunctions that sought to
25   prohibit enforcement of monetary debt "where class affected by the alleged practices
     is small, and where there is no real prospective benefit to the public at large from the
26   relief sought" (Kilgore); and (3) an injunction concerning misclassification as
     independent contractors of which the primary purpose and effect was "redressing and
27   preventing [monetary] harm to DoorDash's employees."(Magana v. DoorDash, Inc.,
     343 F. Supp. 3d 891, 901 (N.D. Cal. 2018), and Torrecillas v. Fitness Int'l, LLC, 52
28   Cal. App. 5th 485, 500, 266 Cal. Rptr. 3d 181 (2020) (re: failing to pay wages).