JULIE ARIAS YOUNG (State Bar No. 168664)
jyoung@yzllp.com
VICKY H. LIN (State Bar No. 253767)
vlin@yzllp.com
PUNEET K. SANDHU (State Bar No. 254726)
psandhu@yzllp.com
YOUNG & ZINN LLP
1150 South Olive Street, Suite 1800
Los Angeles, California 90015
Telephone: (213) 362-1860
Facsimile:  (213) 362-1861

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DOE;<br><br>    Plaintiff,<br><br> v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California Not-for-Profit Corporation; DOES 1 through 20.<br><br>    Defendants. | Case No. 2:20-cv-06098 JAK (AGRx)<br><br>**DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO DISMISS OR STAY ACTION**<br><br>Date:  October 4, 2021<br>Time: 8:30 a.m. |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................7

II.   STATEMENT OF FACTS...............................................................9

      A.   USC Is A World-Renowned University That Conducts Business
           Throughout The Country And The World. .......................................9

      B.   Doe Electronically Accepted The Agreement. .................................9

      C.   The Agreement Is Bilateral And Requires The Parties To
           Submit Claims To Arbitration. .................................................11

      D.   Despite Acknowledging That She "Accepted" The Agreement, Doe
           Filed Her Claims In Court..........................................................12

III.  LEGAL ARGUMENT ..................................................................12

      A.   The FAA Governs The Agreement..............................................12

      B.   The Agreement Is Presumed Valid and Enforceable.......................14

           1.   Doe Acknowledged Accepting The Agreement And
                Is Bound.......................................................................14

           2.   Doe's Claims Fall Within The Scope of The Agreement. .....16

      C.   There is No Basis For Revocation Under the FAA Because
           The Agreement Complies With *Armendariz*. ...............................17

      D.   Doe's Claim For Rescission Of The Agreement Is Meritless. .........19

           1.   There Is No Unconscionability.............................................19

                a.   There Is No Procedural Unconscionability. .................20

                b.   There Is No Substantive Unconscionability.................22

                     (1)   There Is Adequate Discovery............................22

                     (2)   JAMS Is A Neutral Arbitral Forum. ..................23

                     (3)   The Franken Amendment Is Not A Defense
                           To Arbitration. ................................................25

                     (4)   Class and Collective Action Waivers Are
                           Permissible. ....................................................27

           2.   Doe Cannot Show That Her Consent Was Obtained By
                Fraud. .........................................................................27

           3.   Doe Cannot Show That Enforcing The Agreement Would
                Be Prejudicial To The Public Interest....................................29

      E.   This Action Should Be Dismissed Or Stayed Pending
           Arbitration. .......................................................................31

IV.   CONCLUSION ...........................................................................31

1
2

# <u>TABLE OF AUTHORITIES</u>

<b>Page(s)</b>

3

## <u>Federal Cases</u>

4
5
*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995) ................................................................14

6
*Asfaw v. Lowe's HIW, Inc.*,
  2014 WL 1928612 (C.D. Cal. May 13, 2014) ................................27

7
8
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................22

9
*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................27

10
11
*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ................................................................16

12
13
*Baker v. Acad. of Art Univ. Found.*,
  2017 WL 4418973 (N.D. Cal. Oct. 5, 2017) ..................................15

14
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................22

15
16
*Biller v. Toyota Motor Corp.*,
  668 F.3d 655 (9th Cir. 2012) ....................................................13

17
*Circuit City Stores, Inc. v. Adams*,
  279 F.3d 889 (9th Cir. 2002) ....................................................14

18
19
*Daghlian v. DeVry Univ., Inc.*,
  582 F.Supp.2d 1231 (C.D. Cal. 2007) .........................................13

20
21
*Davis v. Nordstrom, Inc.*,
  755 F.3d 1089 (9th Cir. 2014) .............................................14, 16

22
*Desai v. General Growth Props., Inc.*,
  654 F.Supp.2d 836 (N.D. Ill. 2009) ............................................29

23
24
*Epic Systems Corp. v. Lewis*,
  138 S.Ct. 1612 (2018) ...........................................................8, 27

25
*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (2013) ..................................................................8

26
27
*Ferguson v. Countrywide Credit Indus., Inc.*,
  298 F.3d 778 (9th Cir. 2002) ....................................................20

28

*Federal Cases, cont.*

*Gelow v. Cent. Pac. Mortg. Corp.,*
    560 F.Supp.2d 972 (E.D. Cal. 2008) .............................................................. 13

*Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.,*
    344 F.Supp.3d 1111 (N.D. Cal. 2018) ........................................................... 31

*In re VeriSign, Inc., Derivative Litig.,*
    531 F.Supp.2d 1173 (N.D. Cal. 2007) ........................................................... 13

*Jeffrey v. Auto. Club of S. California,*
    2014 WL 2979775 (Cal. Ct. App. July 3, 2014) ............................................ 15

*Kilgore v. KeyBank, Nat. Ass'n,*
    718 F.3d 1052 (2013) ..................................................................................... 30

*Klein v. Delbert Servs. Corp.,*
    2015 WL 1503427 (N.D. Cal. Apr. 1, 2015) ................................................. 15

*Magana v. DoorDash, Inc.,*
    343 F.Supp.3d 891 (N.D. Cal. 2018) ............................................................ 30

*Mohamed v. Uber Techs., Inc.,*
    109 F.Supp.3d 1185 (N.D. Cal. 2015) ........................................................... 15

*Mohamed v. Uber Techs., Inc.,*
    848 F.3d 1201 (9th Cir. 2016) ....................................................................... 15

*Monster Energy Company v. City Beverages, LLC,*
    940 F.3d 1130 (9th Cir. 2019) ....................................................................... 24

*Monster Energy Company v. City Beverages, LLC,*
    2021 WL 650275 (C.D. Cal. February 17, 2021) .......................................... 24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) .................................................................................... 14, 16

*Nanavati v. Adecco USA, Inc.,*
    99 F.Supp.3d 1072 (N.D. Cal. 2015) ............................................................ 15

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017) .................................................................. 14, 23

*Republic of Nicaragua v. Standard Fruit Co.,*
    937 F.2d 469 (9th Cir. 1991) ......................................................................... 29

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.,*
    845 F.3d 1268 (9th Cir. 2017) ....................................................................... 29

*Reynolds v. NRC Env't Servs. Inc.,*
    2020 WL 6083112 (C.D. Cal. Aug. 24, 2020) .............................................. 15

DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

*Federal Cases, cont.*

*Shroyer v. New Cingular Wireless Servs.,*
498 F.3d 976 (9th Cir. 2007).........................................................20

*Southland Corp. v. Keating,*
465 U.S. 1 (1984) .........................................................................29

*Sparling v. Hoffman Constr. Co., Inc.,*
864 F.2d 635 (9th Cir. 1988)........................................................31

*Tanis v. Sw. Airlines, Co.,*
2019 WL 1111240 (S.D. Cal. Mar. 11, 2019)...............................15

**California Cases**

*Armendariz v. Foundation Health Psychcare Services,*
24 Cal.4th 83 (2000)..........................................7, 17, 19, 20, 21, 22, 310

*Blankenheim v. E. F. Hutton, Co., Inc.,*
217 Cal.App.3d 1463 (1990).........................................................28

*Craig v. Brown & Root, Inc.,*
84 Cal.App.4th 416 (2000)...........................................................16

*Dotson v. Amgen,*
181 Cal.App.4th 975 (2010).....................................................20, 22

*Engalla v. Permanente Med. Grp., Inc.,*
15 Cal.4th 951 (1997)...................................................................27

*Graham v. Scissor-Tail, Inc.,*
28 Cal.3d 807 (1981)....................................................................21

*Guido v. Koopman,*
1 Cal.App.4th 837 (1991)..............................................................28

*Kinney v. United HealthCare Servs., Inc.,*
70 Cal.App.4th 1322 (1999)..........................................................22

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP,*
74 Cal.App.4th 1105 (2000)..........................................................21

*Larian v. Larian,*
123 Cal.App.4th 751 (2004)..........................................................28

*McGill v. Citibank, N.A,*
2 Cal.5th 945 (2017)..................................................................8, 30

*Page v. Superior Court,*
31 Cal.App.4th 1206 (1995)..........................................................26

5

1

*California Cases, cont.*

*Roman v. Superior Court,*
    172 Cal.App.4th 1462 (2009)........................................................................20

*Romano v. Rockwell Int'l, Inc.,*
    14 Cal.4th 479 (1996)................................................................................26

*Sanchez v. Valencia Holding Co.,*
    61 Cal.4th 899 (2015)................................................................................20

*Sandquist v. Lebo Auto., Inc.,*
    1 Cal.5th 233 (2016)..................................................................................24

*Sonic-Calabasas A, Inc. v. Moreno,*
    57 Cal.4th 1109 (2013)..............................................................................20

*Stirlen v. Supercuts, Inc.,*
    51 Cal.App.4th 1519 (1997)........................................................................30

*Torrecillas v. Fitness Int'l, LLC,*
    52 Cal.App.5th 485 (2020)..........................................................................30

*Victrola 89, LLC v. Jaman Properties 8 LLC,*
    46 Cal.App.5th 337 (2020)..........................................................................12

**Federal Statutes**

9 U.S.C. § 2.......................................................................................14, 17

9 U.S.C. § 3........................................................................................8, 31

9 U.S.C. § 4...........................................................................................8

**California Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................................12, 30

Cal. Civ. Code § 1643.............................................................................26

Cal. Civ. Code § 1668.............................................................................30

Cal. Civ. Proc. Code § 170.5 ................................................................24, 25

Cal. Civ. Proc. Code § 1281 .....................................................................14

Cal. Civ. Proc. Code § 1281.92 .............................................................24, 25

Cal. Civ. Proc. Code § 1689 .....................................................................29

**Regulations**

48 C.F.R. §§ 222.7402, 222.7403...............................................................25

DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

# I.    **INTRODUCTION**

In response to Plaintiff Doe's ("Doe")[1] belated filing of a First Amended Complaint ("FAC") while Defendant University of Southern California's ("USC") motion to compel arbitration of this matter was already fully briefed and under submission for the Court's decision, USC brings this renewed motion to compel arbitration.  As before, USC's motion seeks to enforce the stand-alone, bilateral arbitration agreement that Doe (a "licensed attorney" with experience in alternative dispute resolution and employment law) agreed to on February 13, 2018.

Rather than submit to arbitration as required by her Agreement to Arbitrate Claims ("Agreement"), Doe filed in court in July 2020.  Now, nearly a year later, Doe has filed the 370-paragraph FAC (with amendments that are legally barred, non-cognizable, and/or unnecessary) in an attempt to delay the Court's decision on USC's long-pending motion to compel arbitration of Doe's original complaint.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to the Agreement and requires its enforcement. The Agreement covers all of the claims alleged in the FAC. It is fully bilateral and provides the safeguards required in *Armendariz v. Foundation Health Psychcare Services*, 24 Cal.4th 83, 97 (2000), including a neutral arbitrator, adequate discovery, all relief otherwise available in court, and limits Doe's share of arbitration fees to the current court filing fee.

Doe's allegations that the Agreement is unconscionable or otherwise unenforceable are meritless. First, pre-employment arbitration agreements that are required as a condition of employment are valid and fully enforceable. Second, contrary to Doe's belief that she is entitled to the "full panoply of discovery," it is well-established that discovery limits are permitted as long as the parties are entitled to adequate discovery, which the Agreement provides. Third, JAMS is a neutral arbitral forum. Doe's allegations otherwise lack support and/or are nothing more

---

[1] For brevity's sake, all references to Doe will adopt the feminine pronoun.

DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

1    than a repackaging of the "repeat player" argument that courts have rejected. <u>Fourth</u>,
2    Doe's reliance on the Franken Amendment is unavailing because this regulation
3    does not create a defense to arbitration by private civil litigants. <u>Fifth</u>, the U.S.
4    Supreme Court has deemed class and collective action waivers valid and
5    enforceable.  <u>Sixth</u>, the allegation that Doe's consent to the Agreement was induced
6    by fraud fails as a matter of law because there is no evidence that USC made any
7    false representations concerning the Agreement or arbitral proceedings. *Epic*
8    *Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1623 (2018). <u>Seventh</u>, that Doe seeks
9    injunctive relief to enjoin enforcement of the Agreement against *her* does not
10   prevent compelling this matter to arbitration. *Ferguson v. Corinthian Colleges, Inc.*,
11   733 F.3d 928, 934-937 (2013). The Agreement does not bar Doe from seeking
12   injunctive relief "in any forum," so this is not a basis to deny its enforcement.  In
13   any event, Doe has not stated a claim for *public* injunctive relief, *i.e.*, "relief that has
14   'the primary purpose and effect of' prohibiting unlawful acts that threaten future
15   injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 951–952
16   (2017). There is nothing "public" about Doe's injunctive relief because it concerns
17   only herself—as demonstrated by the FAC's deletion of the putative class claim Doe
18   originally pleaded, seeking to represent a class of employees who, like Doe, "signed
19   a written arbitration agreement in conjunction with and as a condition of
20   commencing employment." (*See* ECF 50-1, Exhibit A, 2:11-16, 2:21-22, 65:1-68:24
21   [redline deleting class claim on behalf of USC employees who "signed an
22   'Agreement to Arbitrate Claims'"].)
23        In short, Doe's claims are subject to a valid arbitration agreement, which the
24   FAA, 9 U.S.C. § 4, requires be enforced according to its terms. USC thus
25   respectfully requests that the Court grant its motion and order Doe to arbitrate all
26   claims and dismiss the FAC or, in the alternative, stay these proceedings until the
27   arbitration is completed.  9 U.S.C. § 3.
28

DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

II.   **STATEMENT OF FACTS**

   A.   **USC Is A World-Renowned University That Conducts Business Throughout The Country And The World.**

USC is a world-renowned private research university that serves a student body of more than 48,000 undergraduate and graduate students from all over the United States and the world.[2] (Decl. of Kedra Ishop ("Ishop Decl.") ¶ 2.) In addition to its two campuses in Los Angeles, USC maintains an educational program in Washington, D.C. and fellowship opportunities throughout the United States. (*Id.* ¶ 3.) USC also offers a wide variety of online courses for students throughout the United States. (*Id.* ¶ 4.) Over 7,000 graduate students take at least some portion of their courses online, with most of those students pursuing degrees exclusively through distance education. (*Id.*)

   B.   **Doe Electronically Accepted The Agreement.**

The following events in February 2018 demonstrate that Doe electronically agreed to the Agreement via Workday, USC's human resources management electronic database:

   **February 9, 2018**: USC recruiter Yanara Portero sent an email to Doe stating in relevant part: "I am working on your contingent offer now, and you should have it by Monday afternoon [February 12, 2018] at the latest." (Declaration of Yanara Portero ("Portero Decl.") ¶ 2, Ex L, pp. 4-5.)

   **February 12, 2018**: Portero caused Workday to generate and send to Doe an offer letter, At-Will Agreement, and Agreement (collectively "Offer Documents"). (Portero Decl. ¶ 2; Declaration of Peter Fennema ("Fennema Decl.") ¶¶ 3-6, Ex G.) Portero then sent Doe an email stating, in part: "***I have sent your formal offer documents via Workday, our HCM system …. Once you review and accept all 3***

---

[2] Of the 3,460 students in the 2020 entering first-year class, 57% of the students reside outside of California, and 12% of the students reside outside the United States. (Ishop Decl. ¶ 2.)

DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

1 *documents (Offer, At-Will Agreement, Agreement to Arbitrate Claims), please*
2 *resubmit them to me via the system*." (Portero Decl. ¶ 2, Ex H, p. 2 [emphasis
3 added].)

4     To access the Offer Documents, Doe had to log into her Workday candidate
5 account ("Workday Candidate Account") by entering her unique username and
6 password. (Fennema Decl. ¶¶ 2-3.) Doe admits USC sent her "a conditional offer
7 letter" on February 12, 2018. (ECF 15-43, ¶ 8.) The offer letter states it was
8 "contingent" on "[a]cceptance of the university's Agreement to Arbitrate Claims"
9 which was "forwarded to [Doe] with th[e] offer." (Thompson Decl., Ex. B.)

10     *Doe admits she received and read the Agreement on February 12, 2018.*
11 (ECF 15-43, ¶ 9.) When reviewing the Agreement, Doe would have seen in bold
12 font "**Review Document**." Directly below this text was a hyperlink that Doe could
13 click on to review and print the Agreement. Below the hyperlink was the statement:
14 "Employee understands and agrees that by checking this box, he/she and the
15 university are giving up their respective rights to a jury trial." Below this statement
16 were the words "**I Agree**" in bold and a box that Doe could check. Once Doe
17 checked the "**I Agree**" box, an "OK" command button at the bottom of the Workday
18 page became active. Workday logged the date and time that Doe clicked the "OK"
19 command button after checking the "**I Agree**" box. (Fennema Decl. ¶¶ 3-5, Ex E.)

20     **February 13, 2018**: At 12:35 pm Pacific Time, Doe clicked "OK" after
21 checking "**I Agree**" to the Agreement. (Fennema Decl. ¶¶ 5-9; Ex F and G.) At
22 12:40 pm Pacific Time, Doe emailed Portero confirming her acceptance of the
23 Agreement: "***I've accepted the documents in Workday***." (Portero Decl. ¶ 2, Ex H,
24 p. 1 [emphasis added].) Thereafter, USC hired Doe in March 2018.  (FAC ¶ 6.)

25     Doe presumably understood the effect of her words and actions as she was a
26 licensed attorney who claims to have "15 years of alternative dispute resolution
27 experience," and "13 years of Senior Management Experience" that included
28 working as a "senior partner" representing clients in a variety of issues including

1  "Labor and Employment." (FAC ¶ 6; Thompson Decl. Ex. C. [emphasis added].)[3]

2      **C.**     **The Agreement Is Bilateral And Requires The Parties To**

3           **Submit Claims To Arbitration.**

4      The two-page, stand-alone Agreement bears the title "**AGREEMENT TO**

5  **ARBITRATE CLAIMS**" in bold capital letters and states in part:

6      [T]he University and the faculty or staff member named below

7      ("Employee") agree to the resolution by arbitration of all claims,

8      whether or not arising out of Employee's University employment,

9      remuneration or termination, that Employee may have against the

10      University or any of its related entities, including but not limited to

11      faculty practice plans, or its or their officers, trustees, administrators,

12      employees or agents, in their capacity as such or otherwise; and all

13      claims that the University may have against Employee.

14  (Thompson Decl., Ex. B, at ¶ 1.)

15      The Agreement explains that "[a]ny claim that otherwise would have been

16  decidable in a court of law — whether under local, state or federal law — will

17  instead be decided by arbitration, except as specifically excluded by this

18  Agreement." (Id., at ¶ 2.) It lists examples of covered claims including, without

19  limitation and in part: "…claims for personal, physical, or emotional injury, or for

20  any tort; claims for discrimination or harassment (including, but not limited to, race,

21  sex, religion, national origin, age, marital status, sexual orientation, gender identity

22  or expression, military and veteran status, or medical condition or disability); claims

23  for 'whistleblowing' or retaliation; and claims for violation of any federal, state or

24  other governmental law, statute, regulation, or ordinance." (Id.)

25

26  [3] Because Plaintiff filed this lawsuit using the pseudonym "Doe" instead of her real name, USC has redacted Plaintiff's name and other personally identifying

27  information from the exhibits to the concurrently-filed declarations. Counsel for

28  USC will provide unredacted copies of these exhibits upon request. See L.R. 5.2-1.

1    Pursuant to the Agreement, "[t]he parties agree that **_final and binding_**

2  **_arbitration_** shall be the **_sole exclusive remedy_** for resolving any claims covered by

3  this Agreement, **_instead of any court action, which is hereby expressly waived_**."

4  (*Id.*, at ¶ 4 [emphasis added].) It also specifies that the arbitration will proceed "in

5  accordance with the JAMS Employment Arbitration Rules & Procedures (and no

6  other rules), except to the extent such rules conflict with the procedures set forth

7  herein." (*Id.*, at ¶ 5.) The Agreement informed Doe that the JAMS Employment

8  Arbitration Rules & Procedures are available at http://www.jamsadr.com/rules-

9  employment-arbitration and that USC would also provide a printed copy upon

10  request. (*Id.*)

11      **D.**    **Despite Acknowledging That She "Accepted" The**

12          **Agreement, Doe Filed Her Claims In Court.**

13      On July 8, 2020, Doe filed a complaint alleging six causes of action,

14  including one putative class claim for "avoidance of" and/or an injunction against

15  enforcement of USC's arbitration agreements with its employees under the Unfair

16  Competition Law ("UCL"), California Business and Professions Code § 17200. On

17  May 20, 2021, just over a week after the Court took USC's pending motion to

18  compel arbitration under submission, Doe filed the FAC, which: (1) adds a fourth

19  cause of action under Title IX for "Illegal Arbitrations in violation of § 1281.92;"

20  and (2) deletes Doe's putative class claim.

21  **III.**    **LEGAL ARGUMENT**

22      **A.**    **The FAA Governs The Agreement.**

23      The FAA governs here because the Agreement expressly provides that "the

24  [FAA] shall govern the interpretation, enforcement, and all proceedings pursuant to

25  this Agreement." (Thompson Decl., Ex. B, at p. 2.) This is an enforceable choice of

26  law provision. *Victrola 89, LLC v. Jaman Properties 8 LLC*, 46 Cal.App.5th 337,

27  346 (2020) ("when an agreement provides that its 'enforcement' shall be governed

28  by the FAA, the FAA governs a party's motion to compel arbitration"); *Biller v.*

DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

1    *Toyota Motor Corp.*, 668 F.3d 655, 662–663 (9th Cir. 2012) (applying the FAA

2    where the "plain language" of the arbitration agreement stated that the FAA

3    applied); *In re VeriSign, Inc., Derivative Litig.*, 531 F.Supp.2d 1173, 1224 (N.D.

4    Cal. 2007) ("The FAA governs the issue of arbitrability here because the agreement

5    expressly so provides and because the agreement involves interstate commerce.").

6          The FAA also governs because USC affects and is engaged in interstate

7    commerce.[4]  Indeed, Plaintiff admits that "USC employees are 'engaged in interstate

8    commerce'" and investigators (such as Plaintiff) interview "geographically

9    dispersed faculty … via videoconference." (*See* ECF 15 at 12:16-19.)  Moreover,

10   USC maintains educational programs in states outside of California. The USC

11   community (including employees and students) transacts business and/or

12   communicates with applicants, students, parents, and third parties throughout the

13   country and internationally by telephone, U.S. Mail, the Internet, courier service,

14   and other forms of interstate communications. (Ishop Decl. ¶ 5.) Students pay their

15   courses using checks, electronic payments, or loans made by institutions – all

16   transacted through mail, telephone, electronically, courier service, or other means

17   involving interstate commerce. (*Id.*)

18

19   ─────────────────────

20   [4] The FAA's required nexus to interstate commerce is low; any contract that in any
     way affects interstate commerce satisfies this requirement. *See Allied-Bruce
21   Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) (applying the FAA to a
     termite-extermination contract applicable to one single family home because the
22   defendant was a multistate firm and shipped treatment and repair material from out
     of state); *Daghlian v. DeVry Univ., Inc.*, 582 F.Supp.2d 1231, 1241, fn.21 (C.D. Cal.
23   2007) (approving of prior rulings that a school's post-secondary educational services
     constituted "interstate commerce" because its operation necessarily involved
24   communication between states: information regarding registration, financial aid,
     curriculum, testing and measurement, and students, faculty, administrators, and
25   money moved back and forth between states.); *Gelow v. Cent. Pac. Mortg. Corp.*,
26   560 F.Supp.2d 972, 978 (E.D. Cal. 2008) (holding that the FAA applied to the
     arbitration agreement because defendant's business was involved in interstate
27   commerce as it had operations in several states.)

28

─────────────────────
DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

**B.      The Agreement Is Presumed Valid and Enforceable.**

In adjudicating a motion to compel arbitration, "the role of the district court is to determine if a valid arbitration agreement exists, and if so, whether the agreement encompasses the disputes at issue." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014) . Agreements are presumed to be valid and the party seeking to avoid arbitration bears the burden of demonstrating otherwise. 9 U.S.C. § 2 (arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity"); Cal. Civ. Proc. Code § 1281 ("A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) ("the party opposing arbitration bears the burden of proving any defense, such as unconscionability") (quotation and citation omitted). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (citation omitted).

**1.      Doe Acknowledged Accepting The Agreement And Is Bound.**

Doe's actions establish that she agreed to, understood she agreed to, and is legally bound by the Agreement. In February 2018, Doe expressly acknowledged in writing that she "accepted" the Agreement.  On February 13, 2018 at 12:35 pm, Doe clicked the "OK" command button after checking the "I Agree" box on the Workday page for the Agreement. Five minutes later, at 12:40 pm, Doe sent an email to Portero to confirm that, "*I've accepted the documents in Workday*." (Portero Decl. ¶ 2, Ex. H [emphasis added]; Fennema Decl. ¶¶ 4-9, Exs F-G;

14

1    Thompson Decl. ¶¶ 4, Ex B.) Doe cannot now avoid the Agreement by claiming that

2    she cannot recall her actions in February 2018. (*See* ECF 37-1, ¶ 5); *see also Jeffrey*

3    *v. Auto. Club of S. California*, 2014 WL 2979775, at *4 (Cal. Ct. App. July 3, 2014)

4    (court enforced arbitration agreement despite Plaintiff claiming she did not recall

5    signing it because the evidence established that she signed the agreement).

6         Doe's clicking "I Agree" and "OK" sufficiently establishes that she accepted

7    and is bound by the Agreement.  Where "Plaintiff has submitted no declaration of

8    his own refuting the facts" concerning the execution, a declaration setting forth

9    Plaintiff's actions "easily satisfies Defendant's low burden to authenticate Plaintiff's

10   electronic signature and establish the existence of a valid arbitration agreement."

11   *Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d 1072, 1076 (N.D. Cal. 2015). *See also*

12   *Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 1195-1997 (N.D. Cal. 2015)

13   (enforcing arbitration agreement where plaintiff could review it via hyperlink and

14   was required to click through to continue using the application and also click "Yes, I

15   Agree") (*reversed on other grounds in Mohamed v. Uber Techs., Inc.*, 848 F.3d

16   1201, 1211 (9th Cir. 2016); *Baker v. Acad. of Art Univ. Found.*, No. 17-CV-03444-

17   JSC, 2017 WL 4418973, at *1 (N.D. Cal. Oct. 5, 2017) (court enforced arbitration

18   agreement, which student accessed, reviewed, and clicked "I Agree" via his online

19   student account accessible through a secure log-in and password); *Tanis v. Sw.*

20   *Airlines, Co.*, No. 18-CV-2333-BAS-BGS, 2019 WL 1111240, at *5 (S.D. Cal. Mar.

21   11, 2019) ("Courts have long upheld agreements where a contract was formed when

22   a plaintiff clicked on a button to assent to an agreement in which the terms

23   themselves are accessed by a hyperlink."); *Klein v. Delbert Servs. Corp.*, No. 15-

24   CV-00432-MEJ, 2015 WL 1503427, at *5 (N.D. Cal. Apr. 1, 2015) (court

25   compelled arbitration where plaintiff reviewed a promissory note and arbitration

26   provision online and electronically checked boxes to confirm agreement to both

27   provisions); *Reynolds v. NRC Env't Servs. Inc.*, No. CV 20-5262 MWF (PDX), 2020

28   WL 6083112, at *4–5 (C.D. Cal. Aug. 24, 2020) (court granted motion to compel

1    arbitration and held that evidence of a checkmark was sufficient).

2         Moreover, Doe accepted and is bound by the Agreement because she: (1)

3    accepted USC's offer of employment, which was expressly contingent on

4    acceptance of the Agreement. (Thompson Decl., Ex. B); and (2) continues to be an

5    employee of USC. *Davis*, 755 F.3d at 1093 (an employee accepted arbitration

6    provision that were part of the terms of employment if employee continues

7    employment after being given notice of the terms); *Craig v. Brown & Root, Inc.*, 84

8    Cal.App.4th 416, 420 (2000) ("the employee's continued employment constitutes

9    her acceptance of an [arbitration] agreement proposed by her employer") (approved

10   in *Davis*, 775 F.3d at 1093).

11        **2.    Doe's Claims Fall Within The Scope of The Agreement.**

12        The public policy favoring enforcement of arbitration agreements to the full

13   extent possible is particularly applicable where, as here, the Agreement has broad

14   language to render any and all claims or differences subject to arbitration, except for

15   those expressly excluded. (Thompson Decl., Ex. B, at ¶ 2.); *Moses H. Cone Mem'l*

16   *Hosp.*, *supra*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable

17   issues should be resolved in favor of arbitration"). A motion to compel arbitration

18   "should not be denied unless it may be said with positive assurance that the

19   arbitration clause is not susceptible of an interpretation that covers the asserted

20   dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)

21   (quotation and citation omitted). Even then, "only the most forceful evidence of a

22   purpose to exclude the claim from arbitration can prevail." *Id*.

23        Here, the Agreement covers "all claims, whether or not arising out of

24   Employee's University employment" except those expressly excluded.  The only

25   claims excluded from the Agreement are claims under Title VII of the Civil Rights

26   Act of 1964, tort claims related to sexual assault or harassment, claims for workers'

27   compensation or unemployment benefits, faculty claims subject to writ of

28   administrative mandamus, administrative charges with a fair employment practices

16

agency or the NLRB, and claims arising under certain specific statutes. (Thompson Decl., Ex. B, at ¶ 3.)  Doe's claims in the FAC do not fall within the limited list of claims excluded from the Agreement and, thus, are all subject to arbitration (though the sixth claim for rescission will be resolved by this motion).

### C.     There is No Basis For Revocation Under the FAA Because The Agreement Complies With *Armendariz.*

The FAA states that arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Agreement is not revocable because it complies with the requirements of *Armendariz*.  In *Armendariz*, the California Supreme Court reviewed key features of an arbitration agreement that required the mandatory arbitration of an employee's claims. As the *Armendariz* Court explained, "[s]uch an arbitration agreement is lawful if it: (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Armendariz*, 24 Cal.4th at 102 (citations omitted).

Here, the Agreement that fully complies with *Armendariz*. Moreover, the Agreement specifically states that arbitrations "shall" be "conducted in accordance with the JAMS Employment Arbitration Rules & Procedures" ("JAMS Rules"). (Thompson Decl., Ex. B, at ¶ 5.) The JAMS Rules provide additional procedural safeguards, which are entirely consistent with the standards set forth in *Armendariz*.

First, the Agreement provides for "impartial arbitration." (Thompson Decl., Ex. B, at ¶ 1.) The JAMS Rules also ensure neutral arbitration as they explicitly require that arbitration be conducted by "one neutral Arbitrator." (Declaration of Vicky Lin ("Lin Decl."), Ex. I, Rule 7(a).) For example, JAMS Rule 15: (1) sets the process for selection of a neutral arbitrator via the parties' striking potential

arbitrators from a list provided by JAMS, and (2) requires the selected arbitrator to make "[a] ny disclosures regarding the selected Arbitrator … required by law or within ten (10) calendar days from the date of appointment."(*Id.*)[5]

Second, the Agreement and the rules guarantee more than adequate discovery sufficient for Doe to vindicate her claims. The Agreement provides that the Arbitrator "shall afford the parties adequate discovery, including deposition discovery, taking into account their shared desire to have a fast, cost-effective dispute-resolution mechanism." (Thompson Decl., Ex. B, at ¶ 8.) JAMS Rules provide for the exchange of "all non-privileged documents and other information … relevant to the dispute or claim" and the "names of individuals whom they may call as witnesses." (Lin Decl., Ex. I, Rule 17(a).). The exchange of such information is a continuing obligation by the parties. (*Id.*, Rule 17(c).) In addition, under the JAMS Rules, each party is entitled to take a minimum of one deposition and the Arbitrator is empowered to grant additional depositions or other discovery, "based upon the reasonable need for the requested information." (*Id.*, Rule 17(b) and (d).)

Third, the Agreement provides that "the arbitrator shall render an award and a written, reasoned opinion in support thereof." (Thompson Decl., Ex. B, at ¶ 8.) The JAMS Rules similarly require a written award and written reasons for the award. (Lin Decl., Ex. I, Rule 24(h).)

Fourth, under the Agreement, "[t]he arbitrator shall award all the remedies to which the prevailing party is legally entitled, including attorneys' fees and/or litigation costs if recoverable under applicable law." (Thompson Decl., Ex. B, at ¶ 8.) The JAMS Rules contain similar language and allow the arbitrator to grant any remedy or relief that is "within the scope of the Parties' agreement" including any "equitable or legal remedy" and attorneys' fees in accordance with applicable law. (Lin Decl., Ex. I, Rule 24(c) and (g).)

---

[5] This is consistent with Rules 7 and 8 of the California Ethics Standards for Neutral Arbitrators requiring disclosures within 10 days from nomination or appointment.

1    Fifth, the Agreement provides that the "Employee's share of the arbitrator's

2  fee and the JAMS filing fee shall be no more than the then-current filing fee in the

3  California Superior Court...." (Thompson Decl., Ex. B, at ¶ 5.) The JAMS Rules

4  impose further restrictions that, in cases like this, "the only fee that an employee

5  may be required to pay is the initial JAMS Case Management Fee," which cannot be

6  more than $400. (Lin Decl., Ex. I, Rule 31(c); and Ex. J.) This is *less* than the

7  current filing fee of $435 in Los Angeles Superior Court and equivalent to the filing

8  fee in U.S. District Court – Central District of California.

9    Accordingly, on its face, and viewed in conjunction with the incorporated

10  JAMS Rules, the Agreement is enforceable under *Armendariz*.

11    **D.    Doe's Claim For Rescission Of The Agreement Is Meritless.**

12    Doe's claim for rescission alleges that the Agreement is: (1) unconscionable;

13  (2) her consent was obtained through fraud; and (3) its enforcement would be

14  "prejudicial to the public interest."[6] These allegations lack merit and fail to

15  undermine the validity of the Agreement.

16    **1.    There Is No Unconscionability.**

17    In California, "[i]n order to render a contract unenforceable under the doctrine

18  _____

19  [6] Plaintiff incorrectly alleges that the Agreement "reserves to a [] jury to determine
the Arbitration Agreement's enforceability." (FAC ¶ 370). There is no such
20  provision in the Agreement. It is well-established that the court determines the
validity and enforceability of a stand-alone arbitration agreement when it is
21  challenged. *See Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-446
(2006). Nor does the "JAMS Policy on Employment Arbitration Minimum
22  Standards of Procedural Fairness," on which Plaintiff relies, require a jury
determination. It specifically states: "[i]f a party contests the enforceability of a pre-
23  dispute arbitration agreement that was required as a condition of employment, and if
compliance with the Minimum Standards is in question, JAMS will, if given notice
24  of the dispute, defer administering the arbitration for a reasonable period of time to
allow the contesting party to seek a ***judicial ruling*** on the issue" and that "JAMS
25  will comply with that ***judicial determination***." (Lin Decl., Ex. K, emphasis added.)
26  This Court's ruling on this motion would constitute such a judicial ruling and
determination.
27

28

of unconsciousability, there must be both a procedural and substantive element of unconscionability." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (citing *Armendariz*, 24 Cal. 4th at 114). The former focuses on "oppression" or "surprise" due to unequal bargaining power. *Id*. Substantive unconscionability, on the other hand, is present if the contract terms are "overly harsh" or "one-sided." *Id*. These two elements, however, need not both be present in the same degree. *See Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981 (9th Cir. 2007). The more substantively oppressive the terms are, the less evidence of procedural unconscionability is required to find that the contract is unenforceable, and vice versa. *Id*. Importantly, the "unconscionability inquiry is not a license for courts to impose their renditions of an ideal arbitral scheme." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1148 (2013). "A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain." *Sanchez v. Valencia Holding Co.*, 61 Cal.4th 899, 911 (2015).

          a.          There Is No Procedural Unconscionability.

          Procedural unconscionability stems from the elements of oppression and unfair surprise. *Dotson v. Amgen*, 181 Cal.App.4th 975, 980 (2010). Oppression in the context of employment contracts arises in situations where there is unequal bargaining power and little meaningful choice. *Id.*, at 980-81. Surprise involves scenarios where the terms of the bargain are hidden in a long document by a party in a superior bargaining position. *See Roman v. Superior Court*, 172 Cal.App.4th 1462, 1470-71 (2009) (holding that whatever "unfairness is inherent" in the employer-employee relationship was "limited" since "the arbitration provision was not buried in a lengthy employment agreement[]" and was clearly labeled).

          Here, there is no evidence of procedural unconscionability. Doe touted her "13 years of Senior Management Experience" (including 11 years as an attorney advising clients on employment law) and "15 years of alternative dispute resolution experience." Doe can hardly claim surprise about the existence or the enforceability

1  of the Agreement — a simple, stand-alone two-page document that is written in

2  plain English and bears the title: "**AGREEMENT TO ARBITRATE CLAIMS**"

3  (Thompson Decl., Ex. B, at p. 1, emphasis in original.) The Agreement clearly states

4  that the parties are agreeing to arbitrate claims, that "final and binding arbitration

5  shall be the sole and exclusive remedy for resolving any claims covered by this

6  Agreement," and that "any court action" is "hereby expressly waived." (*Id.* at ¶ 4.)

7       Doe alleges that the Agreement is unconscionable because it was "imposed as

8  a condition of employment" and therefore, "lacks contractual effect because consent

9  must be free and mutual." (FAC ¶ 152.) It is well established, however, that "a

10  compulsory predispute arbitration agreement is not rendered unenforceable just

11  because it is required as a condition of employment or offered on a 'take it or leave

12  it' basis." *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal.App.4th

13  1105, 1127 (2000). "To describe a contract as adhesive" is "the beginning and not

14  the end of the analysis insofar as enforceability of its terms is concerned." *Graham*

15  *v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 819 (1981). "[A] contract of adhesion is fully

16  enforceable according to its terms unless certain other factors are present which,

17  under established legal rules—legislative or judicial—operate to render it

18  otherwise." *Id.*, at 819-20 (citations omitted); *Armendariz*, 24 Cal.4th at 114. A

19  different rule would mean that pre-employment arbitration agreements are never

20  enforceable, a proposition no California state or federal court has held.

21       Doe also alleges that the Agreement is procedurally unconscionable because

22  it "imposes more than notice pleading by requiring identification of the nature of all

23  claims asserted." (FAC ¶ 316.) Not so. The Agreement provides that "Employee or

24  the University must give written notice of any claim to the other party within the

25  time prescribed by the state or federal statute of limitations applicable to the claim

26  being made" and that "[t]he written notice shall identify and factually describe the

27  nature of all claims asserted." (Thompson Decl., Ex. B, at ¶ 6.) This is no different

28  from Federal Rule of Civil Procedure 8(a), which requires that a pleading contain "a

1    short and plain statement of the claim showing that the pleader is entitled to relief."

2    *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under this "notice pleading,"

3    the complaint must "give the defendant fair notice of what the claim … is and the

4    grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

5    And, while Rule 8(a) does not require detailed factual allegations, "it demands more

6    than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556

7    U.S. at 678. In any event, the Agreement's notice requirement applies to both parties

8    and, as such, provides no advantage to one party or the other.

9                      b.        There Is No Substantive Unconscionability.

10                     (1)    There Is Adequate Discovery.

11           Substantive unconscionability "focuses on the terms of the agreement and

12    whether those terms are so one-sided as to shock the conscience." *Kinney v. United*

13    *HealthCare Servs., Inc.*, 70 Cal.App.4th 1322, 1330 (1999). Doe alleges that the

14    Agreement is substantively unconscionable because it fails to provide employees

15    with "the full panoply of discovery." (FAC ¶ 269.) However, as noted above, the

16    Agreement provides that the Arbitrator "shall afford the parties adequate discovery,

17    including deposition discovery, taking into account their shared desire to have a fast,

18    cost-effective dispute-resolution mechanism." (Thompson Decl., Ex. B, at ¶ 8.)

19    JAMS Rules provide a comprehensive process for the exchange of information and

20    documents and empowers the Arbitrator to allow such additional discovery as

21    appropriate "based upon the reasonable need for the requested information." (Lin

22    Decl., Ex. I, Rule 17.) California law requires nothing more. As the California

23    Supreme Court has recognized, discovery limitations are an integral part of

24    arbitration and the parties may contractually agree to less than "the full panoply of

25    discovery." *Armendariz*, 24 Cal.4th at 105-06. Parties to arbitration are only entitled

26    to discovery "necessary to vindicate [their] claim[s]." *Id.* at 106; *see also Dotson*,

27    181 Cal.App.4th at 983 ("[A]rbitration is meant to be a streamlined procedure.

28    Limitations on discovery . . . is one of the ways streamlining is achieved.").

1    Doe further alleges that discovery would be inadequate because USC

2    allegedly has a practice of misconduct in its internal workplace investigations,

3    spoliates evidence, and withholds documents in discovery. (FAC ¶¶ 146-150, 193-

4    314.) Not only are these allegations patently false, they are irrelevant to the issue of

5    whether substantive unconscionability exists. The Agreement and JAMS Rules

6    provide for adequate discovery that both parties may need to pursue their claims

7    and/or defenses. To the extent that any party engages in misconduct during the

8    proceeding, the Arbitrator is fully empowered to address such situations by way of

9    sanctions. (Lin Decl. Ex. I, Rule 29) ("The Arbitrator may order appropriate

10   sanctions for failure of a Party to comply with its obligations under any of these

11   Rules or with an order of the Arbitrator. These sanctions may include, but are not

12   limited to assessment of … any other costs occasioned by the actionable conduct,

13   including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse

14   inferences; or, in extreme cases, determining an issue or issues submitted to

15   Arbitration adversely to the Party that has failed to comply.")[7]

16                    (2)    JAMS Is A Neutral Arbitral Forum.

17   Doe alleges that the Agreement fails to provide a neutral forum because USC

18   is a "repeat player" and JAMS and USC had a contract for provision of Title IX

19   hearing officers. (FAC ¶¶ 101, 335.) These assertions are a repackaging of the

20   "repeat player" argument that the California Supreme Court has rejected as

21

22   _____

23   [7] If, however, the Court finds the discovery provisions of the Agreement are
     somehow unconscionable, it has the power to reform the agreement to provide for
     full discovery, as Plaintiff concedes. (FAC ¶ 340) ("…Plaintiff seeks to reform the
24   arbitration agreement to provide for [] full discovery.") The Agreement provides
     that "[i]f any provision [] is determined to be void or otherwise unenforceable, this
25   determination shall not affect the validity of the remainder of the Agreement."
26   When an agreement contains such a severability clause, the Court may sever a term
     it finds unenforceable, as long as the agreement as a whole is not 'permeated' with
27   unconscionability." See Poublon, 846 F.3d at 1274 (severance term "makes clear
     that the parties intended for any invalid portion of the agreement to be restricted").

28

DEFENDANT'S MPA ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S FAC
AND DISMISS OR STAY ACTION

1    "generally uncognizable" because courts "may not presume categorically that

2    arbitrators are ill-equipped to disregard such institutional incentives and rule fairly

3    and equitably." *Sandquist v. Lebo Auto., Inc*., 1 Cal.5th 233, 259 (2016).

4         Doe further alleges that JAMS is not neutral because USC and JAMS have a

5    mutually beneficial relationship in that (1) many of JAMS arbitrators are graduates

6    of USC; (2) JAMS arbitrators share in the profits from USC through arbitration fees;

7    (3) JAMS and USC's law school ("Gould") host educational symposiums; (4) USC

8    changed its dispute resolution provider from AAA to JAMS in 2018; (5) USC

9    alumnus Richard Chernick pledged a legacy gift to his alma mater, serves on an

10   educational advisory board, is/was a USC lecturer; and (6) at one time, JAMS

11   provided Title IX hearing officers. (FAC ¶¶ 95-101, 322-336.) To argue that these

12   factors should preclude enforcement of the Agreement, Doe cites *Monster Energy*

13   *Company v. City Beverages, LLC*, 940 F.3d 1130, 1136 (9th Cir. 2019), where the

14   Ninth Circuit vacated an arbitration award based on the Arbitrator's failure to

15   disclose facts that "create[d] an impression of bias, and should have been disclosed

16   by him, namely, that he held an equity interest in JAMS itself and that JAMS had

17   administered 97 arbitrations "for" one of the parties over the previous five years,

18   which constituted "an average rate of more than one arbitration per month."

19        The Ninth Circuit's opinion in *Monster Energy* is inapposite.  First, it only

20   addresses the disclosures a potential arbitrator must make prior to and during

21   arbitration. It does ***not*** condone the so-called "repeat player effect" as a basis not to

22   enforce an arbitration agreement. Second, the 13 employment arbitrations JAMS has

23   conducted in which USC was a respondent is orders of magnitude less than the 97

24   arbitrations at issue in *Monster Energy*. Third, on remand, the district court ordered

25   the parties in the *Monster Energy* matter to arbitrate their dispute before JAMS.

26   *Monster Energy Company v. City Beverages, LLC*, No. 5:17-cv-00295-RGK-KK,

27   2021 WL 650275 at *3 (C.D. Cal. February 17, 2021).

28        Finally, the FAC alleges California Code of Civil Procedure §§ 1281.92 and

24

1  170.5 disqualify JAMS because it co-hosts an annual educational symposia with

2  Gould and Chernick sits on Gould's ADR Program Advisory Board. Not so. Section

3  1281.91 only prohibits JAMS from administrating arbitrations if it has a "financial

4  interest" in USC as defined by Section 170.5. However, Section 170.5(b)(2)

5  explicitly states that "[a]n office in an educational, religious, charitable, fraternal, or

6  civic organization is not a 'financial interest' in securities held by the organization."

7  In other words, activities involving educational symposia, the ADR Program

8  Advisory Board, or other educational pursuits are not grounds to disqualify JAMS.

9                    (3)    The Franken Amendment Is Not A Defense To

10                                Arbitration.

11        The FAC alleges that the Agreement is void because it excludes claims

12  "brought under Title VII" but not under state discrimination claims and thus violates

13  the "Franken Amendment" to the Defense Appropriations Act of 2010. (FAC ¶¶

14  154-162, 178-192.) This is a red herring. By its plain language, the Franken

15  Amendment only regulates how the Department of Defense appropriates funds, and

16  does *not* create a defense to arbitration by private civil litigants. 48 C.F.R. §§

17  222.7402, 222.7403 (prohibits the Department of Defense from awarding contracts

18  for over $1 million to any contractor who "requires … that the employee or

19  independent contractor agree to resolve through arbitration any claim under Title

20  VII … or any tort related to or arising out of sexual assault or harassment").

21        Doe alleges that the Agreement is unconscionable because it uses the phrase

22  "tort claims" instead of the phrase "any tort," and "claims" is a "limiting modifier."

23  (FAC ¶¶ 179-184.) This argument is specious. "Any tort" and "tort claims" is a

24  distinction without a difference. "Claims" is defined as "[t]he assertion of an

25  existing right; ***any right*** to payment or to an equitable remedy, even if contingent or

26  provisional" and, on its face, is not limiting. Black's Law Dictionary (11th ed. 2019)

27  (emphasis added). Moreover, contract interpretation requires that a "contract must

28  receive such an interpretation as will make it lawful, operative, definite, reasonable,

1    and capable of being carried into effect." Cal. Civ. Code § 1643.

2        Doe's contention that the Agreement should explicitly reference the Franken

3    Amendment is equally meritless. (FAC ¶¶ 187-188.) There is no requirement that a

4    contract cite the law that is the basis for its language. Indeed, doing so would

5    convolute the Agreement and risk confusing unsophisticated employees.

6        In any event, the Agreement is consistent with the Franken Amendment as it

7    specifically excludes from arbitration "claims brought under Title VII of the Civil

8    Rights Act of 1964," as well as "tort claims (*e.g.*, assault and battery, intentional

9    infliction of emotional distress, false imprisonment or negligent hiring, supervision

10   or retention) if they are related to or arising out of sexual assault or sexual

11   harassment." (Thompson Decl., Ex. B, at ¶ 3.)

12       Further, contrary to Doe's suggestion that FEHA is but an extension of Title

13   VII, it is well recognized that they are separate statutory schemes. While California

14   courts look to federal decisions under Title VII for assistance in interpreting

15   analogous provisions of FEHA, they depart from federal precedent where they

16   believe federal decisions to be in error, or the two statutes differ. *See, e.g., Romano*

17   *v. Rockwell Int'l, Inc.,* 14 Cal.4th 479, 496-500 (1996) (rejecting federal case law

18   regarding when statute of limitations begins to run "because they interpret a federal

19   statutory scheme [Title VII] not at issue here"); *see also Page v. Superior Court,* 31

20   Cal.App.4th 1206, 1215-17 (1995) ("[I]t is not appropriate to follow federal

21   decisions where the distinct language of FEHA evidences a legislative intent

22   different from that of Congress.")[8]

23   
_____

24   [8] Plaintiff cites California Labor Code sections 432.4 through 432.6 and California
     Government Code section 12953, which codified AB 51 and were enacted by the

25   California legislature to bar pre-employment arbitration agreements. (FAC ¶¶ 162,
     165-167.) Plaintiff's reliance is misplaced for several reasons. First, this statutory

26   scheme only applies to "contracts for employment ***entered into, modified, or***

27   ***extended on or after January 1, 2020***." Cal. Lab. Code § 432.6 (h) (emphasis
     added). USC and Plaintiff entered into this Agreement in February 2018. Second,

28

(4)    Class and Collective Action Waivers Are Permissible.

Doe alleges that the Agreement is substantively unconscionable because it waives an employee's right to bring a class or collective action in court or in arbitration. (FAC ¶ 319.) This is immaterial as Doe has dismissed her class claim. In any event, it is well established that state rules that prohibit class or collective action waivers are preempted by the FAA and are permissible. *Epic Systems Corp.,* 138 S.Ct. at 1623 (the U.S. Supreme Court held that arbitration agreements containing class and collective action waivers are enforceable); *Asfaw v. Lowe's HIW, Inc.*, No. LA CV14-00697 JAK, 2014 WL 1928612, at *9 (C.D. Cal. May 13, 2014) (Kronstadt, J.), citing *AT&T Mobility LLC,* 563 U.S. 333 at 352.)[9]

**2.    Doe Cannot Show That Her Consent Was Obtained By Fraud.**

The FAC cites various California statutes for the proposition that the Agreement is "subject to rescission" based on fraud. (FAC ¶¶ 124.) Doe's argument lacks any support and, in any event, is meritless. "In order to defeat a petition to compel arbitration [based on a claim of fraud], the parties opposing a petition to compel must show that the asserted fraud claim goes specifically 'to the "making" of the agreement to arbitrate[.]'" *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 973 (1997) (holding that the plaintiff established fraud where the purported misrepresentation is "material" such that "a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action *in*

_____

these codes are not "intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act." *See* Cal. Lab. Code § 432.6(f). Finally, enforcement of AB 51 has been enjoined by the federal courts on the basis of federal preemption. *See Chamber of Commerce of United States v. Becerra*, 438 F.Supp.3d 1078, 1097 (E.D. Cal. 2020) ("[T]he rule runs afoul of the federal law by contravening the equal footing principle.").

[9] Plaintiff also alleges that the Agreement is unconscionable because "it appears to impose a class waiver even as to claims that [it] excludes from arbitration." (Compl. ¶ 259.) This is not true. The Agreement specifies that the class waiver only applies "[t]o the maximum extent permitted by law." (Thompson Decl. Ex. B, at pp. 1-2.)

1   *the transaction in question*") (emphasis added).

2       This is not what Doe has alleged. The crux of Doe's allegations is that USC's

3   Code of Ethics secured USC "a reputation as an ethical and reputable institute of

4   higher learning" and Doe "would not have sought to work for Defendant" but for

5   this reputation. (FAC ¶¶ 172-177.) In short, the fraud argument fails because there is

6   "no evidence of any false representations concerning any contemplated arbitral

7   proceedings that w[ould] result from the arbitration [agreement]." *See Larian v.*

8   *Larian*, 123 Cal.App.4th 751, 765 (2004) (reversing trial court's denial of motion to

9   compel arbitration and holding that the Plaintiff's allegations of misrepresentations

10   were to be "resolved in the arbitral forum" because there was "no evidence of fraud

11   in the inception or execution of the agreement *as it relates to the arbitration*

12   *clause*") (emphasis added). The Agreement is a two-page, stand-alone contract that

13   expressly states that it "supersedes any prior or contemporaneous agreement." It

14   makes no reference to the Code of Ethics. It appears that the Doe found the Code of

15   Ethics—most recently revised in 2014 (more than 4 years before Doe's offer of

16   employment)—on her own online at https://policy.usc.edu/ethics/. (Thompson Decl.

17   ¶ 4, Ex. D.) Moreover, the Code of Ethics does not purport to set forth contractual

18   promises or contain any representations that are material to the Agreement.

19       More to the point, no reasonable person—much less a "licensed attorney"

20   such as Doe who spent over 11 years advising clients on employment law and 15

21   years in alternative dispute resolution—would rely on such generalized aspirational

22   statements in deciding whether to enter into a pre-employment arbitration

23   agreement. *See* CACI 1908 – Reasonable Reliance ("reasonableness must take into

24   account the plaintiff's own intelligence, knowledge, education, and experience")

25   (citing *Blankenheim v. E. F. Hutton, Co., Inc*., 217 Cal.App.3d 1463, 1474 (1990));

26   *Guido v. Koopman,* 1 Cal.App.4th 837, 843 (1991) (finding it unreasonable for a

27   "practicing attorney [who] uses releases in her practice" to claim that she relied on

28   false representations by an equestrian instructor concerning a written release).

1   Doe's claim of reliance on general statements in a Code of Ethics in deciding

2   whether she would agree to arbitrate any future claims against USC is absurd given

3   the nature of a Code of Ethics. As the Ninth Circuit explained in *Retail Wholesale &*

4   *Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268,

5   1275 (9th Cir. 2017) (in the context of securities fraud), the contents of a business

6   code of ethics are "aspirational" and thus not material to a stockholder's decision-

7   making. Similarly, in *Desai v. General Growth Props., Inc.*, 654 F.Supp.2d 836, 857

8   (N.D. Ill. 2009), the court determined that a company's publication of a Code of

9   Ethics "is not actionable." Doe's purported reliance on the Code of Ethics in

10   connection with the Agreement is not reasonable as a matter of law.

11   **3.   Doe Cannot Show That Enforcing The Agreement Would Be**

12   **Prejudicial To The Public Interest.**

13   For the rescission claim, Doe alleges, pursuant to California Civil Code

14   section 1689(b)(6), that "the public interest will be prejudiced by permitting the

15   contract to stand." (FAC ¶¶ 315-321.) Doe relies on the same allegations on which

16   she bases the contention that the Agreement is unconscionable. As explained above

17   in Section III(D)(1), these allegations are meritless and fail to satisfy Doe's burden

18   of establishing that the Agreement should not be enforced.

19   Moreover, there is no indication that enforcing the Agreement would harm

20   the public. The Agreement (and its enforcement) only affects Doe. There are no

21   potential health, environmental, financial, or governmental concerns implicated by

22   the Agreement. To the contrary, the greater public interest here is to encourage the

23   efficient dispute resolution through arbitration. Indeed, public policy strongly favors

24   the enforcement of arbitration agreements. *Southland Corp. v. Keating*, 465 U.S. 1,

25   10 (1984) ("Congress declared a national policy favoring arbitration and withdrew

26   the power of the states to require a judicial forum for the resolution of claims which

27   the contracting parties agreed to resolve by arbitration."); *Republic of Nicaragua v.*

28   *Standard Fruit Co.*, 937 F.2d 469, 475, fn. 8 (9th Cir. 1991) ("The [FAA] ... reflects

29

1   the strong Congressional policy favoring arbitration.")[10]

2       As for Doe's sixth cause of action for "rescission and/or avoidance and/or

3   UCL § 17200 Injunction," the Ninth Circuit has already held that California's rule

4   exempting such claims for public injunctive relief from arbitration is preempted and

5   "displaced by the FAA." *Ferguson. Inc.,* 733 F.3d at 934-937 (2013).

6       Moreover, the rule established in *McGill v. Citibank, N.A,* 2 Cal.5th 945

7   (2017) (the "*McGill* Rule") does not apply to Doe's claims because the Agreement

8   does not prohibit injunctive relief "in any forum." *McGill,* 2 Cal.5th at 961. It only

9   requires the claim be submitted to arbitration. In any event, Doe has not stated a

10   claim for public injunctive relief, as required in *McGill.* "Public injunctive relief 'is

11   for the benefit of the general public rather than the party bringing the action.'"

12   *Kilgore v. KeyBank, Nat. Ass'n,* 718 F.3d 1052, 1061 (2013). "Relief that has the

13   primary purpose or effect of redressing or preventing injury to ***an individual***

14   ***plaintiff***—or to a group of individuals similarly situated to the plaintiff—does not

15   constitute public injunctive relief." *McGill,* 2 Cal.5th at 955 (emphasis added); *see*

16   *also Magana v. DoorDash, Inc.,* 343 F.Supp.3d 891, 901 (N.D. Cal. 2018) (holding

17   that injunctive relief sought for misclassification claims alleging violations of the

18   California Labor Code was not a "public" injunction, as the claims had the "primary

19   purpose and effect of redressing and preventing harm to [defendant's] employees"

20   and any benefit to the public would only be derivative and ancillary to that benefit).

21   *Accord, Torrecillas v. Fitness Int'l, LLC,* 52 Cal.App.5th 485, 500 (2020) (holding

22

---

23   [10] Plaintiff alleges that the Agreement is "null and void" under Civil Code section

24   1668, which prohibits contracts that exempt individual responsibility for a violation of law. (FAC ¶ 148.) Not so. Section 1668 is inapplicable because the Agreement

25   complies with *Armendariz* and is not procedurally or substantively unconscionable.
*See Armendariz,* 24 Cal.4th at 100 (setting minimum requirements for arbitration

26   agreements in the employment context, in part, on the policies embodied in section

27   1668); *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1530 (1997) ("We need not separately address the question whether the restriction on employee remedies is

28   'against the policy of the law' within the meaning of [section 1668]").

1   that plaintiff's request for an injunction to stop defendant from failing to pay wages

2   or reimburse for business expenses was "private in nature and therefore arbitrable"

3   because the "beneficiary ... would be [plaintiff] and possibly Fitness's current

4   employees, not the public at large.") Here, Doe seeks a remedy which benefits

5   herself. This is made all the clearer by Doe's dismissal of her class claim.

6        **E.    This Action Should Be Dismissed Or Stayed Pending Arbitration.**

7        Section 3 of the FAA provides that "upon being satisfied that the issue

8   involved in [a] suit . . . is referable to arbitration . . . , [a court] shall on application

9   of one of the parties stay the trial of the action until such arbitration has been had."

10  9 U.S.C. § 3. The FAA "does not limit the court's authority to grant a dismissal" of

11  a case "when all claims are barred by an arbitration clause." *Sparling v. Hoffman*

12  *Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that the "district court

13  acted within its discretion when it dismissed" the case, since "the arbitration clause

14  [at issue] was broad enough to" require the plaintiffs "to submit all claims to

15  arbitration"). *See also Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.*, 344

16  F.Supp.3d 1111, 1118 (N.D. Cal. 2018) ("If all claims in litigation are subject to a

17  valid arbitration agreement, the court may dismiss or stay the case.")

18       Here, the Agreement is valid and all of Doe's claims are subject to arbitration.

19  Accordingly, the Court should dismiss or stay this action.

20  **IV.   CONCLUSION**

21       USC respectfully requests that the Court issue an order compelling arbitration

22  of the claims of Plaintiff "DOE" and dismissing the FAC with prejudice or, in the

23  alternative, staying this action pending the completion of arbitration.

24

25  DATED: June 3, 2021            YOUNG & ZINN LLP
                                   By: /s/ Vicky H. Lin
26                                 _____
                                   VICKY H. LIN
27                                 Attorneys for Defendant UNIVERSITY
                                   OF SOUTHERN CALIFORNIA
28