JOSEPH M. LOVRETOVICH (SBN 73403)
jml@jmllaw.com
JENNIFER A. LIPSKI (SBN 272443)
jennifer@jmllaw.com
JML Law, A Professional Law Corporation
5855 Topanga Canyon Blvd., Ste. 300
Woodland Hills, CA 91367
Tel:  (818) 610-8800
Fax: (818) 610-3030

Attorneys for Plaintiff
DOE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DOE;

            Plaintiff,

      vs.

UNIVERSITY OF SOUTHERN
CALIFORNIA, a California
Not-for-Profit Corporation;
DOES 1 through 20

            Defendants.

Case No. 2:20-cv-06098-JAK (AGRx)

**PLAINTIFF DOE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Filed concurrently with**
- **Request for Judicial Notice;**
- **Declaration of Plaintiff Doe; and**
- **Declaration of Jennifer A. Lipski**

**Hearing:**
**Date:     Monday, July 17, 2021**
**Time:     8:30 a.m.**
**Place:    Courtroom 10B**
**Judge:    Hon. John A. Kronstadt**

Complaint filed:  July 8, 2020

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

1

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 10

I.      INTRODUCTION .................................................................. 10

II.     SUMMARY OF RELEVANT FACTS

    A. USC Is A Regulated Nonprofit Entity Serving The Public Interest ........................................................................ 10

    B. USC Failed To Set Forth Sufficient Evidence Of An Enforceable Arbitration Agreement ......................................... 11

    C. USC Fails To Address The Triable Defenses To The Agreement 14

    D. USC's Arbitration Agreement Is Not Enforceable ....................... 14

    E. Plaintiff Has A *Pending* Discovery Motion Seeking Discovery Pertaining To The Formation And Execution Of The AA ........... 17

III.    LEGAL ARGUMENTS ........................................................... 18

    A. Legal Standard On Motions To Compel Arbitration .................... 18

    B. USC Has Not Established FAA Preemption ................................ 19

    C. USC Has Failed To Establish Enforceability Of The Purported Arbitration Agreement ................................................................ 22

    D. The Arbitration Agreement Violates The Franken Amendment ... 23

    E. The Arbitration Agreement *Excludes* Plaintiff's Claims .............. 25

    F. The Arbitration Agreement Does *Not* Govern California's Police Powers ....................................................................................... 26

    G. The Arbitration Agreement Does *Not* Comply With *Armendariz* . 28

    H. USC's Fraud And/Or Breach Are Defenses To Enforcement ....... 30

    I. The Arbitration Agreement Is Highly Unconscionable ................ 31

    J. The Arbitration Agreement Is Prejudicial To The Public Interest. 34

IV.     CONCLUSION ..................................................................... 34

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

2

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allied-Bruce Terminix Co., Inc. v. Dobson*,
    513 U.S. 265 (1995) ...................................................................19, 20
*Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*,
    682 F.2d 1280 (9th Cir. 1982) ...............................................................26
*Asfaw v. Lowes*,
    2014 WL 1928612 (C.D.Cal., May 13, 2014)....................................19
*Bernhardt v. Polygraphic Co. of Am.*,
    350 U.S. 198 (1956) ...............................................................................19
*Blair v. Rent-A-Ctr., Inc.*,
    928 F.3d 819 (9th Cir. 2019) ................................................................34
*Bond v. U.S.*,
    572 U.S. 844, 134 S. Ct. 2077 (2014) ................................................26
*Chamber of Com. v. Becerra*,
    438 F.Supp.3d 1078 (E.D. Cal. 2020) ................................................28
*Circuit City Stores, Inc. v. Adams*,
    279 F.3d 889 (9th Cir. 2002) ................................................................23
*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ...........................................................................20, 21
*Circuit City Stores, Inc. v. Mantor*,
    335 F.3d 1101 (9th Cir. 2003) .............................................................31
*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) .............................................................18
*Commonwealth Coatings Corp. v. Cont'l Cas. Co.*,
    393 U.S. 145 (1968) ...........................................................................29, 34
*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) .............................................................18
*Daghlian v. DeVry Univ., Inc.*,
    582 F.Supp.2d 1231 (C.D. Cal. 2007).................................................20
*Davis v. Nordstrom, Inc.*,
    755 F.3d 1089................................................................................................23
*E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) .........................................................19, 22
*Fed. Sav. & Loan Ins. Corp. v. Angell, Holmes & Lea*,
    838 F.2d 395 (9th Cir. 1988) ................................................................34

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ....................................................................................25

*Gelow v. Cent. Pac. Mortg. Corp.*,
560 F.Supp.2d 972 (E.D. Cal. 2008) ..........................................................20

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ......................................................................................29

*Grabowski v. Robinson*,
817 F. Supp. 2d 1159 (S.D. Cal. 2011) .......................................................34

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
716 F.3d 764 (3d Cir. 2013) ........................................................................19

*Harshbarger v. CSX Transp., Inc.*,
478 F.Supp.2d 890 (S.D.W. Va. 2006) ........................................................31

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ...............................................................31, 33

*Intl Text-Book Co. v. Pigg*,
217 U.S. 91 (1910) ......................................................................................21

*Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc.*,
334 F.Supp. 1013 (S.D.N.Y. 1971) .............................................................19

*Kremer v. Chem. Const. Corp.*,
456 U.S. 461 (1982) ....................................................................................24

*Milliner v. Bock Evans Fin. Counsel, Ltd.*,
114 F.Supp.3d 871 (N.D. Ca. 2015) ............................................................32

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
105 S.Ct. 3346, 473 U.S. 614 (1985) ..........................................................26

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982) ......................................................................................18

*New Prime Inc. v. Oliveira*,
139 S.Ct. 532 (2019) ...................................................................................22

*Nichols v. U.S.*,
578 U. S. — (2016) .....................................................................................24

*Perry v. Thomas*,
482 U.S. 483 (1987) ..............................................................................20, 28

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) .......................................................................30

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ...............................................................23, 32

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ....................................................................................27

*Prudential Ins. Co. of Am. v. Lai*,
42 F.3d 1299 (9th Cir. 1994) .......................................................................24

**JML LAW**
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

*Quevedo v. Macy's, Inc.*,
  798 F.Supp.2d 1122 (C.D.Cal. 2011)............................................................32
*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ....................................................................31
*Rotkiske v. Klemm*,
  140 S.Ct. 355 (2019) ............................................................................23, 24
*Salgado v. Atl. Richfield Co.*,
  823 F.2d 1322 (9th Cir. 1987) ......................................................................24
*Stanley v. Trustees of Cal. State Univ.*,
  433 F.3d 1129 (9th Cir. 2006) ......................................................................26
*Susan B. Anthony List v. Driehaus*,
  134 S.Ct. 2334 (2014)..................................................................................18
*Ting v. AT&T*,
  319 F.3d 1126 (9th Cir. 2003) ......................................................................33
*U.S. ex rel. Bilokumsky v. Tod*,
  263 U.S. 149 (1923)......................................................................................29
*U.S. v. Gonzales*,
  520 U.S. 1 (1997) ..................................................................................23, 25
*W. Coast Hotel Co. v. Parrish*,
  300 U.S. 379 (1937) ......................................................................................27
*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019) ......................................................................18


**STATE CASES**

*24 Hour Fitness, Inc. v. Sup.Ct.*,
  66 Cal.App.4th 1199 (1998) ........................................................................33
*Addison v. State of Cal.*,
  21 Cal.3d 313 (1978)....................................................................................33
*Aixtron, Inc. v. Veeco Instr. Inc.*,
  52 Cal.App.5th 360 (2020) ..........................................................................29
*Allen v. Jordanos Inc.*,
  52 Cal.App.3d 160 (1975) ............................................................................23
*Amaral v. Cintas Corp. No. 2*,
  163 Cal.App.4th 1157 (2008) ......................................................................33
*Armendariz*,
  24 Cal.4th ............................................................................24, 28, 32
*Baltazar v. Forever 21, Inc.*,
  62 Cal.4th 1237 (2016)................................................................................32

**JML LAW**
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC

*Barrington v. A. H. Robins Co.*,
  39 Cal.3d 146 (1985)............................................................................33

*Bihun v. AT&T Info. Sys., Inc.*,
  13 Cal.App.4th 976 (1993)..................................................................26

*Blankenheim v. E. F. Hutton & Co.*,
  217 Cal.App.3d 1463 (1990)................................................................30

*Boghos v. Certain Underwriters at Lloyd's of London*,
  36 Cal.4th 495 (2005).........................................................................26

*Brown v. Grimes*,
  192 Cal.App.4th 265 (2011)...............................................................31

*Carbajal v. CWPSC, Inc.*,
  245 Cal.App.4th 227 (2016).........................................................20, 32

*Cariveau v. Halferty*,
  83 Cal.App.4th 126 (2000).................................................................34

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc*,
  2 Cal.4th 342 (1992)...........................................................................33

*Cruz v. PacifiCare Health Sys., Inc.*,
  30 Cal.4th 303 (2003).........................................................................34

*Elkins v. Derby*,
  12 Cal.3d 410 (1974)...........................................................................33

*Engalla v. Permanente Med. Grp.*,
  15 Cal.4th 951 (1997).........................................................................30

*Grafton Partners L.P. v. Sup.Ct.*,
  36 Cal.4th 944 (2005).........................................................................13

*Guido v. Koopman*,
  1 Cal.App.4th 837 (1991)...................................................................31

*Guz v. Bechtel Nat. Inc.*,
  24 Cal.4th 317 (2000)....................................................................30, 31

*Hunt v. United Bank & Tr. Co.*,
  210 Cal. 108 (1930)............................................................................29

*Kashani v. Tsann Kuen China Enter. Co.*,
  118 Cal.App.4th 531 (2004)...............................................................23

*Lakin v. Watkins Associated Indus.*,
  6 Cal. 4th 644, 863 P.2d 179 (1993)..................................................26

*Larian v. Larian*,
  123 Cal.App.4th 751 (2004), *as modified* ........................................30

*Martinez v. Master Prot. Corp.*,
  118 Cal.App.4th 107 (2004)...............................................................32

*McGill v. Citibank, N.A.*,
  2 Cal.5th 945 (2017)...........................................................................34

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

*Midwest Motor Supply Co. v. Sup.Ct.*,
  56 Cal.App.5th 702 (2020) ...................................................................28
*Morrill v. Everson*,
  77 Cal. 114 (1888) ..............................................................................19
*Nutter v. City of Santa Monica*,
  74 Cal.App.2d 292 (1946) ...................................................................27
*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*,
  8 Cal.App.5th 1 (2017)........................................................................13
*Sandquist v. Lebo Auto., Inc.*,
  1 Cal.5th 233 (2016)............................................................................26
*Sears v. Myerson*,
  106 Cal.App. 220 (1930)......................................................................30
*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal.4th 1109 (2013) ..................................................................32, 33
*Spear v. Cal. State Auto. Assn.*,
  2 Cal.4th 1035 (1992)..........................................................................19
*Tatterson v. Kehrlein*,
  88 Cal.App. 34 (1927)..........................................................................34
*Thom v. Stewart*,
  162 Cal. 413 (1912).............................................................................23
*Trubowitch v. Riverbank Canning Co.*,
  30 Cal.2d 335 (1947)...........................................................................19
*Zullo v. Sup.Ct.*,
  197 Cal.App.4th 477 (2011) .................................................................32


**FEDERAL STATUTES**

9 U.S.C. § 1 ................................................................................20, 21, 22
9 U.S.C. § 2 ........................................................................................19, 21
9 U.S.C. § 4 ................................................................................................22
42 U.S.C. § 2000e-5(c),(d)......................................................................24
42 U.S.C. § 2000e-7.................................................................................24
42 U.S.C. § 2000e-8(b).............................................................................24
42 U.S.C. § 2000e-14...............................................................................24


**STATE STATUTES**

Cal. Civ. Code § 1639..............................................................................26
Cal. Civ. Code § 1689..............................................................................34

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

Cal. Civ. Code § 3391 ............................................................................. 19, 31

Cal. Civ. Code § 3392 ..................................................................................... 19

Cal. Civ. Code § 1667 ..................................................................................... 23

Cal. Code Civ. Proc. § 1281 ............................................................................ 13

Cal. Evid. Code § 412 ..................................................................................... 29

Cal. Govt. Code § 12964.5 .............................................................................. 27

Cal. Govt. Code § 12953 ................................................................................. 27

Cal. Lab. Code § 1197.5(k)(1) ......................................................................... 14

Cal. Lab. Code § 229 ...................................................................................... 28

Cal. Lab. Code § 232.5(a), (b) ........................................................................ 14

Cal. Lab. Code § 432.5 ................................................................................... 27

Cal. Lab. Code § 432.6 ................................................................................... 27

Cal. Lab. Code § 923 ...................................................................................... 27

Cal. Lab. Code § 970 ...................................................................................... 31

Cal. Lab. Code § 2922 ..................................................................................... 28

Cal. Lab. Code §§ 432.4-432.6 ....................................................................... 27

Cal. Lab. Code § 232(a), (b) ........................................................................... 14

## FEDERAL RULES

FRCP 12 ................................................................................................ 16, 33

FRCP 56 ......................................................................................................... 16

FRCP 56(c)(2) ................................................................................................ 29

FRE 302 .......................................................................................................... 29

FRE 803(6) ..................................................................................................... 13

FRE 803(6)(C) ................................................................................................ 18

## FEDERAL REGULATIONS

28 C.F.R. § 2.610(a) ....................................................................................... 25

29 C.F.R. § 1601.70 ........................................................................................ 24

29 C.F.R. § 1601.74 ........................................................................................ 24

34 C.F.R. § 106.6(f) ........................................................................................ 24

48 C.F.R. § 222.7402 ................................................................................ 18, 24

48 C.F.R. § 222.7402(a)(1), (2) ....................................................................... 23

///

///

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC

1

**STATE REGULATIONS**

2

2 C.C.R. § 11023(b)...............................................................................28

3

4

**OTHER AUTHORITIES**

5

A.B. 51 .............................................................................................20

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JML LAW**
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant University of Southern California's ("USC") Motion to Compel Arbitration should be denied. Plaintiff Doe ("Doe" or "Plaintiff") did ***not*** "electronically sign" the Arbitration Agreement ("AA"); rather, USC attached Plaintiff's alleged electronic signature to the AA *before* Plaintiff was ever employed or had even read the document, and did so *without* Plaintiff's consent. Plaintiff also does not recall taking *any* action to electronically sign or agree to an arbitration agreement. Given the significant lack of trustworthiness in the formation and execution of the AA, Plaintiff currently has a motion to compel arbitral discovery pending in this Court, and awaiting a ruling by the magistrate judge.

In addition, the AA fails to comply with *Armendariz*, and beyond that, Plaintiff also has defenses to the enforcement of the AA, as discussed further herein. Accordingly, Plaintiff requests that this Court deny USC's instant Motion.

### II.   SUMMARY OF RELEVANT FACTS

#### A.   USC Is A Regulated Nonprofit Entity Serving The Public Interest

USC is a nonprofit research university that serves a student body of over 48,000 undergraduate and graduate students from all over the country and world. ECF 55-2, at p. 2 (Ishop Decl., ¶¶ 2-4). USC's Mission Statement [Lipski Decl., ¶ 5, Exh. 3] proclaims that its mission is the development of "society as a *whole*" and that it "serves the public interest by being the largest private employer in…Los Angeles…" Lipski Decl., ¶ 5, Exh. 3.

USC is a federal Department of Defense contractor. Lipski Decl., ¶ 4, Exhs. 2, 12, and 13; *see also* https://news.usc.edu/139479/usc-darpa-artificial-intelligence/.

Heidi Thompson also admits that USC's Code of Ethics is "policy", ECF 55-3, at ¶ 6. Yet, USC's Motion fails to acknowledge that USC's "Compliance and *Ethics* Program" references the "Federal Sentencing Guidelines for Organizations" and mandatory governmental regulations. *See* ECF 55-1, 55-3.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

**B.  USC Failed To Set Forth Sufficient Evidence Of An Enforceable AA**

USC hired Plaintiff on or about March 19, 2018, as a "Senior Investigator" in USC's Office of Conduct, Accountability and Professionalism ("OCAP"). Pltf Decl., at ¶¶ 36, 38. In its initial motion to compel arbitration, USC asserted that "a stand-alone, bilateral arbitration agreement" was "signed upon hire in February 2018" and that "Plaintiff electronically signed the Arbitration Agreement on February 12, 2018." *See* ECF 13-1, at 7:3-5, 10:8-9. In its reply to Plaintiff's initial opposition to that motion, USC doubled down on this, again asserting that the AA was "electronically signed by Plaintiff on February 12, 2018". *See* ECF 16, at 6:21.[1]

By way of Thompson's Declaration, USC initially asserted that the AA is viewable through the Workday Candidate Account if the employment candidate clicks on the hyperlink to the right of the PDF icon to electronically review the AA; that below that hyperlink is the statement, " 'Employee understands and agrees that by checking this box, he/she and the university are giving up their respective ***rights to a jury trial***.' Below this statement are the words 'I Agree' in bold. Below 'I Agree' is a box that the offeree may click on using a cursor or mouse."; that "[t]he offeree electronically signs the arbitration agreement by clicking the box directly below 'I Agree.' "; and that "[w]hen the offeree clicks the box, Workday ***affixes*** his/her electronic signature to the arbitration agreement". ECF 16-2, at 3:11-24.[2]

Notably, USC then ***altered*** its theory as to the execution of the AA when it filed *post-Reply* "errata" to suddenly claim that Workday does not "**affix**" the candidate's electronic signature to the separate AA, but that it simply "confirms"

_____

[1] Similarly, on Jan. 28, 2021, in the state court action, USC filed a motion to compel arbitration of Plaintiff's state claims, based on the same AA, and again reiterated its position that "Doe electronically signed the Agreement on or about February 12, 2018". *See* Req't for Judicial Notice ("RJN"), <u>Exh. A</u>, at 10:10-11 (Defts' 1-28-21 MTC Arb., LASC Case No. 20stcv25830).

[2] *See also* RJN, <u>Exh. B</u>, at 3:6-17 (Thompson Decl. ISO Defts' MTC Arb., filed Jan. 28, 2021 in superior court, LASC Case No. 20stcv25830).

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

the candidate's signature. *See* ECF 29, at 3:5-9; *see also* RJN, <u>Exh. C</u>, at p. 2, lns. 18-22 (Defts' 2-19-21 Errata re MTC Arb., filed in LASC Case No. 20stcv25830). In USC's "errata" notices, USC also changed its position as to *when* the AA was purportedly signed, from its *initial* position that it was electronically signed on February *12*, 2018, to its *new* position that it was signed on February *13*, 2018. *See* ECF 29, at 2:6-10, 2:19-24.[3] At the same time, USC fails to explain why the AA is not dated February *13*, 2018 next to the alleged electronic signature *if* the agreement was supposedly "electronically signed" on February 13, 2018 at 12:35 p.m. when Plaintiff *supposedly* clicked the box next to "I Agree".[4] Moreover, Plaintiff asserts that Plaintiff's name was *already* typed on the AA's signature line to the right of the preface "By:" when the AA was sent to Plaintiff. Pltf Doe Decl., at ¶¶ 13, 21. This is because, *contrary to USC's assertion that Plaintiff electronically signed the agreement,* USC had *prepopulated* Plaintiff's electronic signature into the AA and thus *signed for* Plaintiff before Plaintiff was even employed with USC. Pltf Doe Decl., ¶¶ 13, 21. USC thus signed Plaintiff's name, with Plaintiff's authority. *Id.*

*Even if* Plaintiff clicked the box indicating "I Agree" (which she disputes, *see id.*), it would have only been in connection with the signature statement above it that explicitly limited any "agreement" to the following: "Employee understands and agrees that by checking this box, he/she and the university are giving up their respective rights *to a jury trial*." *See* ECF 55-4, at p. 6. The statement any candidate thus claims to "Agree" to does *not* provide that he/she and the university are agreeing to proceed with binding arbitration in lieu of proceeding in court, *but rather*, only that they are agreeing to give up their right to a *jury* trial. *See id.* The

---

[3] *See also* RJN, <u>Exh. C</u>, at 2:6-10 and 2:24-28 (Defts' 2-19-21 Errata).

[4] Plaintiff does not recall performing *any* action to indicate execution of the AA. Pltf Doe Decl., at ¶ 15. In addition, Plaintiff's name was *already* typed onto the AA at the bottom of the last page, where USC had *prepopulated* the electronic signature onto the AA *before* Plaintiff even had a chance to open or read it, and USC did so without consent or authority from Plaintiff. Pltf Doe Decl., at ¶¶ 13, 21.

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

"signature statement" is merely a jury waiver. *Id.* It does *not* say that either side is giving up their right to a *bench* trial in state or federal court. *See id.* It also does *not* in any way explicitly reference or incorporate the Agreement to Arbitrate Claims.[5] *See id.* Waiving the right to a jury trial is *not* synonymous with agreeing to binding arbitration as the exclusive method of resolving claims against one another. *See Grafton Partners L.P. v. Sup.Ct.*, 36 Cal.4th 944, 956 (2005).[6] In sum, there is no evidence that Plaintiff electronically signed the AA herself, and USC's contention that Plaintiff allegedly "signed electronically" fails to comply with FRE 803(6).

Further, USC's contingent *offer* for future employment was *contingent* on Plaintiff executing an "at will" agreement. ECF 55-3, at p. 5 (Offer of Employment, *see* § "Conditions of Employment, item no. 3). Under the plain language, providing that there would be *no* offer absent consent to USC's ability to rescind the offer, there was *no* adequate consideration. The offer describes "mov[ing] forward with the process" for *at-will* employment. *Id.*, at p. 7 ("If you accept all of these conditions and are ready to move forward in the process, please check "Yes" to submit this form.").[7] USC offers no evidence of any *non-illusory* consideration that can support specific performance.

Then, on March 19, 2018, Plaintiff was hired by USC. USC extracted a *one-way* Confidentiality Statement, requiring: 1) familiarization with "*all* current

---

[5] At the very least, the "signature statement" above the box for "I Agree" was misleading and a complete misrepresentation as to what USC would subsequently claim clicking on the "I Agree" box supposedly meant with regard to any individual's right to bringing an action against USC in state or federal court.

[6] Predispute waivers of jury trial are *not* analogous to agreements to arbitrate because those agreements are specifically authorized by statute (Cal. Code Civ. Proc. § 1281) and represent an agreement to avoid a *judicial forum altogether*, whereas only persons who are *already* parties to a pending action may waive a jury trial as provided by statute. *Grafton Partners L.P., supra*, 36 Cal.4th at 955, 957-59.

[7] There is nowhere to actually check "Yes" on the electronic form. *See* ECF 55-3, pp. 5-7 (Exh. A to Thompson Decl., which is the electronic 2/9/2018 Offer).

13

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

university policies," 2) only using "personal and work-related confidential information" in the course of "legitimate and authorized university business," 3) restricting discussion of "personal and work-related information," including "communications" that are "written or conducted via electronic media."[8] In fact, in the Confidentiality Statement, USC reserves the right to take "legal action." *See* Pltf Doe Decl., ¶ 17, <u>Exh. 1</u> (stating that violations "may be grounds for *legal* action").

### C.  USC Fails To Address The Triable Defenses To The Agreement

Plaintiff's allegations are material to enforceability "as exist in law or equity." Plaintiff avers to facts in the FAC concerning: 1) falsification of evidence; 2) suppression of evidence; 3) spoliation of evidence; and 4) outright dishonesty. ECF 51; Pltf Doe Decl., at ¶ 2.

### D.  USC's Arbitration Agreement Is Not Enforceable

The densely-worded, small-type two-page agreement, *partially* incorporating JAMS Employment & Arbitration Rules ("JAMS EARAP"), is full of contradictory and confusing prolix. USC's Motion misrepresents or *omits* material language from the AA in various ways. Some examples of these misrepresentations or omissions:

- ¶ 1 [ECF 55-3, at p. 9], that the "University" is only USC;
- ¶ 1 [ECF 55-3, at p. 9], that the AA *represents* "internal processes are available for collegially resolving differences…" and that "final and binding *impartial* arbitration is a means of avoiding the delay, expense and unpleasantness of a lawsuit."
- ¶ 2 [ECF 55-3, at p. 9], the entire AA is dependent on the first paragraph's covenants ("*Therefore*….");
- ¶ 2 [ECF 55-3, at p. 9], that the employee must arbitrate against all "related-entities," which could encompass claims against JAMS, while such entities

---

[8] These contractual terms appear to attempt to force employees to waiver certain important statutory rights and protections, including those pursuant to Cal. Labor Code §§ 232(a) and (b), 232.5(a) and (b), and 1197.5(k)(1).

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

are *not* bound by the AA;

- ¶ 3 [ECF 55-3, at p. 9], the phrase: "*Notwithstanding the foregoing*, the following claims are not covered…", which *expressly* establishes ¶ 3's primacy over ¶ 2 of the AA;

- ¶ 3 [ECF 55-3, at p. 9], the carveouts to arbitration as to "(1) claims brought under Title VII of the Civil Rights Act of 1964" and "(2) tort claims (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment or negligent hiring, supervision or retention) if they are related to or arising out of sexual assault or sexual harassment", and these carveouts do not apprise employees of the Franken Amendment;

- ¶ 5 [ECF 55-3, at p. 9], only contains *partial* incorporation of JAMS EARAP. "Any arbitration pursuant to this Agreement *shall* be held under the auspices of JAMS, and conducted in accordance *with JAMS [EARAP] (and no other rules), except to the extent the rules conflict* with the procedures set forth herein." The AA *conceals* its numerous conflicts with the EARAP and *other* JAMS rules, such as the Minimum Standards.

- ¶ 5 [ECF 55-3, at p. 9], provision for the employee to pay a "share of the Arbitrator's fees."

- ¶¶ 5 and 8 [ECF 55-3, at pp. 9-10], cost-shifting for arbitration-related motion practice. *See* ECF 13-4, at p. 7 (Exh. E to Young Decl. filed in support of Deft's initial motion to compel arbitration, which includes a letter from USC's counsel to Plaintiff's counsel in which defense counsel asserts that they will "seek costs" if forced to file a motion to compel arbitration);

- ¶ 5 [ECF 55-3, at p. 9], the *express* integration clause at the end of the paragraph;

- ¶ 5 [ECF 5-3, at p. 9], giving USC the *unilateral* power to "revoke" without *any* notice;

- ¶ 6 [ECF 55-3, at p. 9], *expressly* provides that any claim, and/or multiple

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

claims, "*shall*" be made within the "prescribed" statute of limitations, so as to foreclose *equitable* exceptions;

- ¶ 7 [ECF 55-3, at pp. 9-10], this paragraph contains a prohibited one-way procedural rule, i.e., the "class action" waiver limits bringing of "claims … *only* for" an employee, and similarly, collective actions cannot be brought by employees, but *nothing* limits consolidation *by USC*.

- ¶ 8 [ECF 55-3, at p. 10], contains no method for enforcement of third-party subpoenas;

- ¶ 8 [ECF 55-3, at p. 10], the AA states that "The arbitrator *shall*" take "into account *their shared desire to have a fast, cost-effective* dispute-resolution mechanism", which thus displaces the three-factor standard in JAMS EARAP's Rule 17(b) ("the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon [1] the reasonable need for the requested information, [2] the availability of other discovery and [3] the burdensomeness of the request on the opposing Parties and the witness.") [ECF 55-6, at p. 12 (JAMS EARAP, Rule 17)];

- ¶ 8 [ECF 55-3, at p. 10], supersedes JAMS Rule 18 (arbitrator discretion concerning whether a party may file a motion for summary disposition of a particular claim or issue, which states that the request to file a motion for summary disposition "may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case."). Under the AA, however, the arbitrator "shall" allow motions to dismiss under FRCP 12, applying *Iqbal* standards. And, the arbitrator "shall" allow MSJs and "shall" apply FRCP 56's standards, which presumably includes *Celotex*.

- ¶ 8 [ECF 55-3, at p. 10], states that "Except as provided in this Agreement, the Federal Arbitration Act shall govern…";

- Throughout the AA, it *expressly* only authorizes *legal* remedies that would

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

be available in court.[9] ECF 55-3, at pp. 9-10. *Cf.*, JAMS EARAP Rule 24(c), which permits equitable remedies *if* "within the scope of the Parties' agreement," and expressly distinguishing "equitable *or* legal remedy". ECF 55-6, at p. 15.[10]

### E.   Plaintiff Has A *Pending* Discovery Motion Seeking Discovery Pertaining To The Formation And Execution Of The AA

There have been several discovery conferences with the magistrate judge with respect to Plaintiff's need for initial disclosures and discovery from Defendant in connection to the purported formation and execution of the Arbitration Agreement. *See, e.g.,* ECF 22 through ECF 27, and ECF 30 through ECF 36. Although Magistrate Judge Alicia G. Rosenberg granted *in part* Plaintiff's most recent request for discovery, *see* ECF 36, she also indicated that "Plaintiff may file a motion to compel additional discovery on or before April 9, 2021." ECF 36.

On April 9, 2021, Plaintiff filed the now-pending Motion to Compel Arbitral Discovery. ECF 37.[11] In that Motion to Compel Arbitral Discovery, Plaintiff details the need for discovery as to whether: (1) USC *knowingly* concealed material facts regarding its financial relationship with JAMS, the arbitral forum imposed by the Agreement to Arbitrate Claims; (2) the recent *additional* revelations regarding USC's spoliation practices, which spoliation practices resulted in a *billion*-dollar liability against USC, renders arbitration fundamentally suspect as an adequate

---

[9] *See* ECF 55-3, pp. 9-10, at ¶ 2 (claims "decidable in a court of law"), at ¶ 5 ("prescribed" statute of limitations), at ¶ 7 (*infra*), and at ¶ 8 ("remedies" to which a party is "*legally* entitled").

[10] The AA put forth by USC is contrary to judicially noticeable *prior* versions of its AA, which *formerly* provided for "remedies," and *not* limited to only "*legal* remedies", excluded from arbitration "sexual assault *or* harassment", and *not* "sexual harassment", and actually stated that the parties were "giving up their respective rights to a jury trial".

[11] An Errata/Amendment to the Motion to Compel Arbitral Discovery was filed by Plaintiff on April 12, 2021, along with the Declaration of Levi Lesches. ECF 38, 39.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

mechanism under *Armendariz* for enforcing statutory rights against USC; (3) USC misrepresented to the District Judge key facts regarding electronic execution; (4) USC misrepresents the data integrity of its business records regarding arbitration; (5) there is any truth to USC's assertion that the arbitration agreement constitutes "a regular practice of th[e] activity" under FRE 803(6)(C); (6) USC previously breached the arbitration agreement; and (7) Plaintiff has rights as a third-party beneficiary to enforce the Franken Amendment, 48 C.F.R. § 222.7402, as a defense to arbitration. *See* ECF 37, at p. 3.

Plaintiff's Motion to Compel Arbitral Discovery is fully-briefed, *see* ECF 43 – ECF 47, and is simply awaiting a ruling by the magistrate judge.

There are concerns with the validity and trustworthiness of the alleged "electronic signature" and the shifting theories asserted by USC as to the formation and execution of the AA. These significant concerns warrant further discovery on these issues, particularly where, as here, the purported AA was inexplicably *already signed for* Plaintiff *by USC*, but *without* Plaintiff's authority or consent. ECF 37, 38.

## III. LEGAL ARGUMENT

### A. Legal Standard On Motions To Compel Arbitration

Federal courts have a "virtually unflagging" duty to hear all controversies justiciable under Article III. *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2347 (2014). Congress cannot infringe on Article III powers. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83-84 (1982). An arbitration agreement thus limits constitutional rights. When determining whether a valid arbitration agreement *exists*, "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).

Courts generally apply state law to determine validity. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008). "Only when there is no genuine issue of fact concerning" formation "should the court decide" the issue "as a matter of law."

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

*Three Valleys Mun. Wat. Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Where factual issues may exist, a court should permit "discovery…before a court entertains *further* briefing on [the] question." *Guidotti v. Legal Helpers Debt Resolution,* 716 F.3d 764, 775 (3d Cir. 2013). The moving party must establish a *prima facie* case for validity and specific performance before requiring opposing defenses. *Asfaw v. Lowes*, 2014 WL 1928612, at *3 (C.D.Cal., May 13, 2014) ("(1) parties *capable* of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration"); *Trubowitch v. Riverbank Canning*, 30 Cal.2d 335, 347 (1947) ("adequate" consideration for specific performance); *Morrill v. Everson*, 77 Cal. 114, 116 (1888) ("adequacy" is at "time of the formation").[12]

## B.  USC Has Not Established FAA Preemption

USC's conclusory contentions that the FAA applies are unavailing. Starting with 9 U.S.C. § 2,[13] USC's Motion fails to establish that Plaintiff's employment meets the test in *Allied-Bruce* and *Bernhardt*,[14] because USC furnishes no evidence

---

[12] *Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc.*, 334 F.Supp. 1013 (S.D.N.Y. 1971) (An FAA § 4 petition is "simply a request for an order compelling specific performance of part of a contract."); *see also Spear v. Cal. State Auto. Assn.*, 2 Cal.4th 1035, 1040 (1992); Cal. Civ. Code § 3391 ("Specific performance cannot be enforced against a party to a contract in any of the following cases:" including 1) "[she] has not received an adequate consideration for the contract;" or 2) "If it is not, as to [her], just and reasonable…"); Cal. Civ. Code § 3392 ("Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent…except" for certain failures not applicable here.)

[13] "A written provision in *any…contract* evidencing a **transaction involving commerce** to settle by arbitration a controversy ***thereafter arising*** out of such contract or transaction, …shall be valid, irrevocable, and enforceable, save upon such grounds ***as exist*** at law or in equity for the revocation of ***any*** contract."

[14] *See Allied-Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 276 (1995), *citing Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 200 (1956) ("There is *no* showing that petitioner while performing his duties under the employment contract was working 'in' commerce, was producing goods for commerce, or was engaging

19

of Plaintiff's work. *Allied-Bruce Terminix Companies, Inc.*, 513 U.S. 265 (1995).
USC's cases on commerce powers [ECF 55-1 (Deft's Motion), at p. 13, fn. 4] are
all inapposite.[15] USC's citations to choice-of-law arbitration doctrines [ECF 55-1, at
12:25-28] do *not* establish preemption. *Victrola 89* and *Biller* are irrelevant to
whether *California* would enforce an arbitration agreement that waives A.B. 51,
and disregarding § 8116, for a continuing at-will employee.

Ishop's Declaration, ECF 55-2, triggers § 1's exemption for employment
contracts. USC *assumes* that because Plaintiff was not employed to drive a vehicle
with wheels, that Plaintiff *ipso facto* falls outside any other "class of workers
engaged in...interstate commerce." *Not so.* While "transportation" may have served
as shorthand in *Circuit City*, it appears *nowhere* in 9 U.S.C. § 1. *See* 9 U.S.C. § 1.[16]

---

in activity that affected commerce, within the meaning of our decisions"). USC
must establish that the AA is a "contract evidencing a transaction interstate
commerce," *i.e.*, that it had a "substantial relationship to interstate commerce." *See
Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227, 240 (2016); *cf., Perry v. Thomas*,
482 U.S. 483, 490 (1987).

[15] *Daghlian v. DeVry Univ., Inc.*, 582 F.Supp.2d 1231 (C.D. Cal. 2007)
(determining that *state regulation* of private post-secondary schools requiring
WASC accreditation violated dormant commerce clause by discriminating against
interstate commerce); *Gelow v. Cent. Pac. Mortg. Corp.*, 560 F.Supp.2d 972 (E.D.
Cal. 2008) (in a case alleging a RICO conspiracy by multi-state mortgage loan
companies, court conclusory held that *branch manager* employment contracts
containing arbitration clauses, concerned "interstate commerce.")

[16] In fact, Justice Stevens' dissent—which Justice Ginsburg and Justice Breyer
joined—discusses the history of the Act. *Circuit City Stores, Inc. v. Adams*, 532
U.S. at 125 (J. Stevens, dissenting). It explains how the original bill was opposed by
organized labor representative due to concern that the legislation might authorize
federal judicial enforcement of arbitration clauses in employment contracts and
CBAs. *Id.* at 126-127 (J. Stevens, dissent). Then-Secretary of Commerce Herbert
Hoover suggested that "[i]f objection appears to the inclusion of workers' contracts
in the law's scheme, it might be well amended by stating 'but nothing herein
contained shall apply to contracts of employment of seamen, railroad employees, or
any other class of workers engaged in interstate or foreign commerce.' " *Id.* at 127.
The legislation was reintroduced in Congress' next session *with* Secretary Hoover's

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

20

1    In 2001, the Supreme Court in *Circuit City Stores, Inc. v. Adams*, 532 U.S.

2    105, 109, 120-121 (2001) held, in response to a contention that § 1 covered *all*

3    employees, that an *in-store* "sales counselor" was not "engaged…in interstate

4    commerce." *Id.* at 111. Invoking a *textualist* approach, *id.* at 116-118, and *expressly*

5    *eschewing any* Congressional-intent analysis, *id.* at 118-120, *Circuit City* held that

6    "engaged in commerce" "appears to denote only persons or activities within the

7    *flow* of interstate commerce." *Id.*

8    Precisely the same reasoning that was employed in *Circuit City* to exclude a

9    "sales clerk" at a private retailer explains why USC cannot invoke the FAA. *Circuit*

10   *City* declined to read § 1 through the lens of *Lochner*-era restrictions on commerce

11   powers, because doing so would "bring instability to *statutory interpretation*." *Id.* at

12   117, 119. And, in the same vein, reading "engaged in interstate commerce" as

13   limited to archaic lines of employment is impossible. It is undisputed, for instance,

14   that § 1 covers truck drivers. But, contrary to the majority's view, and as recognized

15   by the dissenting justices, it is the act of modernizing § 1's meaning through

16   reference to *strictly* trucks and planes which in turn actually "bring[s] instability to

17   statutory interpretation." *Id.* at 117, 128-129.

18   According to Kedra Ishop's Declaration, USC is a regulated industry, and its

19   employees are "engaged in interstate commerce." ECF 55-2, ¶¶ 2-4; *see also* ECF

20   15-8 [USC's Senate Minutes], at p. 7, lns. 272–73 ("For geographically dispersed

21   faculty, they use a secure file-sharing website, and interviews are conducted via

22   video conference"). USC employees transact business over video conferencing and

23   the like, which constitutes "engag[ing] in…interstate commerce" as a matter of law.

24   *See, e.g.*, *Intl Text-Book Co. v. Pigg*, 217 U.S. 91, 112 (1910) ("If intercourse

25

26

27   exclusionary language added to § 1. *Id.* Thus, "[h]istory amply supports the
     proposition that it was an uncontroversial provision that merely confirmed the fact

28   that *no one interested in the enactment of the FAA ever intended or expected* that
     § 2 would apply to employment contracts." *Id.* at 128 (dis., J. Stevens).

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

between persons in different states by means of telegraphic messages conveying intelligence or information is commerce among the states, … we cannot doubt that intercourse or communication between persons in different states, by means of correspondence through the mails, is commerce among the states….").

Section 1 of the FAA unambiguously states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce*." 9 U.S.C. § 1. **There is *no* basis to rewrite § 1 with "transportation" nomenclature that appears *nowhere* therein.** USC's employees are equivalent to a 1925 "seaman" and/or "railroad employee" engaged in, or connected to, federally regulated interstate activities. USC's employees are similarly subject to heavy federal regulation. Indeed, Plaintiff's work included, for example, investigations of violations of Title IX and other federal regulations. Further, USC's investigators use advanced technology for broad geographic reach.[17] As such, USC cannot establish FAA preemption under 9 U.S.C. §§ 1 and 2.

## C.   USC Has Failed To Establish Enforceability Of The Purported Arbitration Agreement

Assuming, *arguendo*, that the FAA applies, USC's *prima facie* case, as well as Plaintiff's defenses to enforcement, are triable under § 4, which confirms that *no* pro-employer presumption exists. 9 U.S.C. § 4 ("*If* the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. … Where such an issue is raised, the party…may…demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury… *If* the jury *find* that an agreement for arbitration was made in writing...."); *Three Valleys*, 925 F.2d at 1141.

---

[17] *Cf.*, *New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 539 (2019), explaining that "happily" there was no dispute as to whether the employee was "engaged in interstate commerce." Here, by contrast, there are factual disputes.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

USC's own authority requires it to prove: 1) a lawful contract; 2) with binding terms; and 3) not contrary to the Labor Code.[18] Courts are "particularly attuned"[19] to ensuring that such agreements are bilateral *in effect*.[20] Here, Franken Amendment and state dual-sovereignty police-power "waiver" statutes are at issue.

### D.   The Arbitration Agreement Violates The Franken Amendment

Contracts with an unlawful object are ***void***. Cal. Civ. Code §§ 1667.[21] A "violation of federal law is a violation of law for purposes of" § 1667. *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal.App.4th 531, 543 (2004). The Franken Amendment provides that, as a condition of USC's defense contracting, USC must "***agree[] not to***" enter into, ***or enforce***, any agreements for the arbitration of "any claim under Title VII." 48 C.F.R. § 222.7402(a)(1)&(2). USC, however, drafted the AA to circumvent Congress and Article III.

*First*, the AA *excises* the word "any," ¶ 3; but the word "any" is in the statute and regulation, and "any" has "expansive meaning." *U.S. v. Gonzales,* 520 U.S. 1, 5 (1997). Next, USC's AA excludes claims "*brought* under" Title VII, but "brought" is *not* in the statute or regulation.[22] USC's own argument that California may enact

---

[18] *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093, 1095 n. 10 (9th Cir. 2014) (noting arbitration contract cannot "run afoul of the Labor Code," and declining to address "whether a mandatory arbitration program" violated the NLRA).

[19] *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017).

[20] *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893-94 (9th Cir. 2002).

[21] That is not lawful which is: "Contrary to an express provision of law;" "Contrary to the policy of express law, though not expressly prohibited;" or "Otherwise contrary to *good morals*"); *see also Thom v. Stewart*, 162 Cal. 413, 415 (1912) (Any agreement "the consideration of which is immoral or unlawful is void," and "incapable of enforcement"); *Allen v. Jordanos Inc.*, 52 Cal.App.3d 160, 166 (1975) (consideration "void for illegality is no consideration.").

[22] "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.' " *Rotkiske v. Klemm*, 140 S.Ct. 355, 361 (2019). By introducing limitations, USC would have to ask the court to alter, rather than to interpret. *Nichols v. U.S.*, 578 U. S. — (2016).

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

more protective statutes under Title VII demonstrates the point. Title VII *expressly* authorizes more protective state rights.[23] As *Armendariz* explained, "[p]arallel state anti-discrimination laws are explicitly *made part of* Title VII's enforcement scheme."[24] *Armendariz*, 24 Cal.4th at 95; *cf.* 29 C.F.R. §§ 1601.70, 1601.74. USC, by introducing modifiers, makes itself the "arbiter" of statutory interpretation, violating *Nichols v. U.S.,* 578 U. S. — (2016).[25] "Under," as used in § 8116 and § 222.7402, is a broad word meaning "subject to the authority, control, guidance, or instruction of."[26] State statutes and regulations under Title VII and Title IX need to maintain consistency with Title VII.[27] Reading "under" to include state laws

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

---

[23] 42 U.S.C. § 2007e-7 ("Nothing in this subchapter shall be deemed to exempt or relieve any person from liability, duty, penalty or punishment provided by any present or future law of any State...other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter"); *see also* 42 U.S.C. § 2000e-7 (authorizing work-sharing agreements between EEOC and state agencies like California's DFEH); 42 U.S.C. § 2000e-8(b) (providing for executive-branch coordination with state agencies for furthering equal opportunity); 42 U.S.C. § 2000e-5(c),(d) (EEOC defers to state agencies in parallel enforcement actions). Under Title VII, the EEOC is authorized to enter into workshare agreements with more protective states like California.                                                   https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2019/01/WorksharingAgreementFY2019WSA.pdf.

[24] *Cf.*, *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1303 n.1 (9th Cir. 1994), *citing Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 477 (1982); *Salgado v. Atl. Richfield Co.*, 823 F.2d 1322, 1326 (9th Cir. 1987).

[25] It is fundamental that "absent provision[s] cannot be supplied by the courts," *Rotkiske*, 140 S.Ct. at 361; let alone by USC, which is not an Article III court.

[26] "Under" Merriam-Webster.com. Merriam-Webster (2020), https://www.merriam-webster.com/dictionary/under .

[27] Title VII provides for the EEOC's guidance and instruction, as the EEOC shall "coordinate" with other agencies responsible for enforcing and implementing employment equal-employment-opportunity legislation. 42 U.S.C. § 2000e-14; *cf.* 34 C.F.R. § 106.6(f) (clarification that Title IX cannot be read in derogation of rights under Title VII); 85 F.R. 300026-1, at 590 (taking guidance from Title VII and providing that the "Department will construe Title IX and its implementing

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

1  coextensive with Title VII is *consistent* with the Congressional record.[28] Plaintiff's

2  claims are "*under* Title VII of the Civil Rights Act." FAC ¶¶ 2, 36, 64-82.

3      Similarly, the AA at ¶ 3(2) violates § 8116 by modifying "*any*" tort" to "tort

4  *claims*," once again leaving out the broad modifier "any," and adding the limiting

5  modifier "claims." This compresses § 8116, so as to limit USC's liability.

6  Narrowing "torts" to "tort claims" appears calculated to compel arbitration over

7  retaliation-predicated liability theories. The Franken Amendment, clearly broad

8  enough to compel an open trial over an employer's unlawful attempts to intimidate

9  or retaliate against reporting/assisting parties, is deceptively narrowed by USC.

10  Indeed, the proof is in the pudding, because USC's *motion* argues that FEHA

11  retaliation against assisting parties in a sexual harassment investigation is not a "tort

12  claim." USC's Motion proves that reducing "torts" to "tort claims" was, and is,

13  intentional. USC also adds the limiting modifier "sexual" to "harassment," rather

14  than § 8116's "sexual assault *or* harassment." Nothing in § 8116 authorizes adding

15  modifiers. There are district court opinions addressing § 8116, but with conclusory

16  analysis. The pleading alleges that Plaintiff's "common law and statutory [claims]

17  herein *arise*, at least in part from alleged sexual harassment or assault." FAC ¶ 47.

18  Doe's allegations are within the Franken Amendment. FAC ¶¶ 48-63, and 129-144.

19      **E.  <u>The Arbitration Agreement *Excludes* Plaintiff's Claims</u>**

20      "Courts generally...should apply ordinary state-law principles that govern the

21  formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938,

22

23

24  regulations in a manner to avoid an actual conflict between an employer's
   obligations under Title VII and Title IX"); 28 C.F.R. § 2.610(a) (requiring giving

25  due weight to EEOC's determination that reasonable cause exists to believe that
   Title VII was violated.)

26  [28] Doe's plain-language interpretation is consistent with the Congressional record.

27  155 Cong. Rec. 23, 403 (2009). The purpose was "to give the victims...of
   discrimination their day in court." *Id.* at 23,559. The "amendment would make sure

28  all military contractors...give victims that basic right." *Id.* at 23, 560-61.

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

939 (1995); Cal. Civ. Code § 1639. The statutory requirement to resolve ambiguities against USC carries particular force here. *Sandquist v. Lebo Auto., Inc.*, 1 Cal.5th 233, 248 (2016). As explained, the AA's ¶ 3 ("[n]otwithstanding") expressly supersedes ¶ 2, and ¶ 3's limiting function must be enforced "even if other provisions read in isolation...seem to dictate a different result." *Boghos*, 36 Cal.4th at 503-504. Even without the Franken Amendment, the AA's ¶ 3(2) demonstrates that Plaintiff's claims are *not* covered by the AA, because ¶ 3(2) excludes "tort *claims* (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment *or negligent hiring, supervision or retention*) if they are *related to or arising out* of sexual assault or sexual harassment." Plaintiff's 3rd and 5th "tort claims" in the FAC are "related to or arise out of sexual assault or *sexual* harassment." Additionally, Title IX is a tort claim. *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129 (9th Cir. 2006). FEHA is a tort claim.[29] *Bihun v. AT&T Info. Sys., Inc.*, 13 Cal.App.4th 976, 1002 (1993).[30] Negligent Hiring is a tort claim and is also alleged. FAC ¶¶ 129-144. As noted, however, the Franken Amendment is *not* limited to "tort claims." FAC ¶¶ 47-48, 64-82.

## F.   The Arbitration Agreement Does *Not* Govern CA's Police Powers

Federal courts are "subject to the *restrictions and limitations* of the public policy of the United States.' " *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1286 (9th Cir. 1982). Courts "refer to basic principles of federalism," and insist on a *clear* indication of Congressional intent, "before interpreting the statute's expansive language in a way that intrudes on the police power of the States." *Bond v. U.S.*, 572 U.S. 844, 134 S. Ct. 2077, 2090 (2014); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S.Ct. 3346, 473 U.S.

---

[29] Doe filed state claims in state court permissible under *Colorado River* abstention.
[30] *As modified on denial of reh'g* (Mar. 25, 1993); *disapproved on other grounds by Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644, 863 P.2d 179 (1993) ("The fact sexual harassment is made actionable by statute does not make it any less a 'tort'than battery, false imprisonment or negligence").

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

614, 628 (1985). In *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937), the Supreme Court upheld the expansive police powers of the states.[31] The FAA exhibits no manifest intent to preempt general dual sovereign legislative police powers that are not hostile to arbitration specifically. *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967). The Congressional Record of the FAA is again consistent.[32] California's *legislature* has exercised *police power* to protect employees generally.[33] *See FAC ¶¶ 162-168.*

USC's argument against Labor Code §§ 432.4-432.6 and Government Code § 12953, ECF 55-1 at p. 26 fn. 8, misses the mark. California has statutory police powers. USC's evidence concedes the lack of *negotiation*, continuing at-will employment, and unlawful waivers. Additionally, Labor Code § 432.6 applies to

---

[31] "In dealing with the relation of employer and employed, the [state] has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression...where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself."

[32] *See, e.g.*, 65 Cong. Rec. 1931 (remarks of Rep. Graham) (the FAA provides an "opportunity to enforce...an agreement to arbitrate, when voluntarily placed in the document by the parties to it"). Congress never endorsed a policy favoring arbitration where one party sets the terms while the other is left to "take it or leave it." Hearing 9 (remarks of Sen. Walsh) (internal quotation marks omitted).

[33] Examples include: (1) Cal. Labor Code § 923 (1937) safeguards employees "from entering into" agreements "that are not *voluntary*…" *Nutter v. City of Santa Monica*, 74 Cal.App.2d 292 (1946) (voluntary means "negotiated"); (2) Cal. Labor Code § 432.5 (1963) (prohibits employers from "requiring" employees to agree in writing to any "*condition*" known to be "prohibited by law"); (3) Cal. Government Code § 12964.5 (2019) declares it an "unlawful employment practice for an employer...as a *condition* of employment" to require the waiver of FEHA rights, including "the right to file and pursue a civil action or complaint with...*any court or other governmental agency*."; and (4) Cal. Labor Code § 432.6 (2020) prohibits an employer from making it a "*condition* of employment" for an employee to "waive any right, forum or procedure" for a violation of the FEHA or Labor Code.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

"contracts for employment *entered into, modified or extended* on or after January 1, 2020." USC alleges at-will employment. *Compare* Cal. Lab. Code § 2922 *with* § 2924; *see* FAC ¶ 168; *see also Midwest Motor Supply Co. v. Sup.Ct.*, 56 Cal.App.5th 702 (2020).[34] In 2020 alone, USC adopted about ten new policies,[35] modifying Plaintiff's at-will employment. *See* FAC ¶ 76[36]; 2 C.C.R. § 11023(b).

Lastly, Defendant's citation to *Chamber of Com. v. Becerra*, 438 F.Supp.3d 1078, 1108 (E.D. Cal. 2020), is inapposite. The issue of legislative police powers under the States' dual-sovereign powers was neither raised nor analyzed. *Becerra*'s reasoning was, in part, rejected in *Midwest Motor Supply*, 56 Cal.5th at 702 (but failing to see the issue of continued at-will employment).[37]

### G.  The Arbitration Agreement Does *Not* Comply With *Armendariz*

*Armendariz* requires a "*neutral forum*." *Armendariz*, 24 Cal.4th at 101, 126 (citing cases prohibiting "less-than-neutral arbitration forum.") Arbitration cannot: (1) "limit statutorily imposed remedies," *id.* at 103; (2) contain express discovery limitations *contrary* to "procedures necessary to vindicate the claim," *id.* at 106; (3) provide for an award that does *not* contain within it the "essential finding and conclusions on which the award is based," *id.* at 107; (4) "bear *any* type of expense that the employee would not be required to bear if [Plaintiff] were free to bring the matter in court." *Id.* at 110.

---

[34] As the FAA is merely a procedural enforcement mechanism for private *contracts*, there is **no** logical prohibition on California's exercise of police power.

[35] https://policy.usc.edu/new-revised-policies/.

[36] https://policy.usc.edu/discrimination/.

[37] In *Perry, supra* fn. 42, the Supreme Court addressed different language in *Labor Code* § 229. Justice O'Connor's prescient reasoning in her *Perry* dissent applies to Doe's assertions and the facts at bar. In *Perry*, 482 U.S. at 494, the majority held that *Labor Code* § 229 was preempted by the FAA, due to its disregarding the FAA through mandating a judicial forum. Justice O'Connor's dissent, 482 U.S. at 494–495, would have read that statute as prohibiting a waiver of a judicial forum, which would not be preempted by the FAA.

28

Here, the AA fails *Armendariz*. **First**, the AA falsely warrants "impartial arbitration." JAMS is ***not*** a neutral forum.[38] Courts are to "be even more scrupulous to safeguard the impartiality of arbitrators than judges." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149 (1968) ("we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges") Cal. Evid. Code § 412;[39] Lipski Decl., ¶¶ 6-11, Exhs. 4-8. **Second**, the AA's express provisions limit discovery while imposing Rule 12 and 56 formalism, contrary to *Gilmer* and federal public policy favoring broad discovery. *See* AA at ¶ 8; JAMS EARAP 17(b);[40] *see* F.R.C.P. 56(c)(2). Further, there is *no* mechanism for enforceable third-party discovery. *Aixtron, Inc. v. Veeco Instr. Inc.*, 52 Cal.App.5th 360 (2020); *Gilmer*, 500 U.S. at 31 (SEC rule allowed for "subpoenas.") **Third**, the form of Award in ¶ 8, conflicts with *Armendariz*, and/or prohibitions in JAMS EARAP Rule 24(h).[41] **Fourth**, the *express* language of the AA *limits* equitable

---

[38] *See also Hunt v. United Bank & Tr. Co.*, 210 Cal. 108 (1930) ("whenever the court can collect from the instrument or engagement on the one side to do or not to do a certain thing, it amounts to a covenant, whether it be contained in the recital or in any other part of the instrument").

[39] FRE 302 ("In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision"); *see also* Cal. Evid. Code § 412 ("If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust"); *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153, 154 (1923) ("Conduct which forms a basis for inference is evidence. ***Silence*** is often evidence of the most persuasive character").

[40] "***Absent agreement***, the Arbitrator **shall** determine" discovery "based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and witness."

[41] "The **Award *shall*** consist of a written statement . . . regarding the disposition of each claim and the relief, if any, as to each claim. The **Award *shall*** also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based." (Emphasis added).

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT USC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION TO PLTF'S FAC**

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

remedies. *See* JAMS EARAP Rule 24(c).[42] **Fifth**, the AA *expressly* violates *Armendariz's* rule that an employee cannot be required to "bear *any* type of expense that the employee would not be required to bear if he or she were free to bring the matter in court." The AA reads: "[1] USC will provide a printed copy upon request Employee's share of the arbitrator's fee and [2] the JAMS filing fee shall be no more than the then-current filing fee in court." *See* AA at ¶ 5, *and compare with* JAMS EARAP Rule 31(c) ("If an Arbitration is based on a clause or agreement that is required as a condition of employment, *the only fee* that an employee may be required to pay is the initial JAMS Case Management Fee." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1104 (9th Cir. 2010); AA at ¶¶ 5 & 8. Similarly, the AA improperly provides for cost-shifting on Motion. *See Pokorny*; ECF 13-4, at p. 7 (¶ 2 of Exh. E to Young Decl.) Thus, USC's AA here fails *Armendariz*.

### H.  USC's Fraud And/Or Breach Are Defenses To Enforcement

USC has ***not*** established that its misrepresentations, or concealment, as articulated above, are "so obviously unimportant as to make them immaterial as a matter of law."[43] USC's authorities concerning private investors, and 10b-5 fraud, are inapposite.[44] The cases are contrary to the reasoning of *Guz v. Bechtel Nat. Inc.*,

---

[42] "The Arbitrator may grant any remedy or relief that is just and equitable and ***within the scope of the Parties' agreement***, including, but not limited to, specific performance of a contract or any other equitable or legal remedy."

[43] *Engalla v. Permanente Med. Grp.*, 15 Cal.4th 951, 977-78 (1997) (an issue of materiality exists if a claimed misrepresentation, or *concealment*, was "not so obviously unimportant as to make them immaterial as a matter of law", and "materiality is a question of fact"); *Larian v. Larian*, 123 Cal.App.4th 751, 765 (2004) ("Claims that a party has employed fraud in inducing consent specifically to the arbitration agreement" are "decided by the court [not arbitrator], because they go to the valid making of the arbitration [agreement] itself").

[44] *Blankenheim v. E. F. Hutton & Co.*, 217 Cal.App.3d 1463, 1474-75 (1990) (finding reliance "manifestly unreasonable"); *Sears v. Myerson*, 106 Cal.App. 220 (1930) ("If there is a doubt as to whether or not a representation was intended and understood as a mere expression of opinion or a statement of fact, **the question is**

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

24 Cal.4th 317, 371 (2000), and other well-reasoned employment cases.[45]

USC ignores the duties to disclose owed to potential employees. USC's breaches of the *express* "collegial processes" warranty is a defense. *Brown v. Grimes*, 192 Cal.App.4th 265, 277-78 (2011); *see also* Cal. Civ. Code §§ 3391, 3392 (specific performance unavailable). USC's misrepresentations include: (1) available "internal processes" for "collegially resolving differences"; and (2) "impartial arbitration" with JAMS. FAC ¶¶ 21-22. The misrepresentations also go to the "kind" or "character" of work. Cal. Lab. Code § 970. USC also misrepresents the applicability of the FAA, or a § 4 jury trial. ECF 55-1, pp. 12-13; AA at ¶ 8.

USC's assertion that a "reasonable person" such as Plaintiff could *not* rely upon its misrepresentations is absurd. USC misrepresents and/or conceals the relevance of § 8116 (Franken Amendment) to it from courts in this district. *See* Exhs. 9 and 10 to Lipski Decl. USC has also omitted that a final court order against it in which the court held that FEHA *is* a tort. *See* Exh. 11 to Lipski Decl.

## I.   <u>The Arbitration Agreement Is Highly Unconscionable</u>

Unless the *employer* demonstrates that the ***effect*** is bilateral, "courts should *presume* such contracts substantively unconscionable." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1108 (9th Cir. 2003), *citing Ingle*, 328 F.3d at 1173-74;

---

**one** *not* of law **but of fact for the court or jury**"). Plaintiff is not claiming to have relied on a horseback riding instructor's representation that an injury waiver was "meaningless." Plaintiff is not a private investor claiming securities fraud under 10b-5, based on an "aspirational" code of ethics. *Guido v. Koopman*, 1 Cal.App.4th 837 (1991); *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017).

[45] *Guz*, 24 Cal.4th 317 ("[an] employer may intend, and employees may understand, such generally promulgated policies as a systematic approach to personnel relations, providing a clear and uniform alternative to haphazard practices..."); *Harshbarger v. CSX Transp., Inc.*, 478 F.Supp.2d 890 (S.D.W. Va. 2006) (employee could reasonably rely on assurances in Code of Ethics).

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

*Armendariz*, 24 Cal.4th at 115-17[46]. Courts "examine the totality of the...substantive terms as well as the circumstances of its formation". *Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227, 242 (2016), *citing Sonic-Calabasas*, 57 Cal.4th at 1146.

Here**,** procedural unconscionability is certainly present. "An arbitration agreement that is an essential part of a take it or leave it employment condition, without more, is procedurally unconscionable." *Martinez v. Master Prot. Corp.*, 118 Cal.App.4th 107, 114 (2004). Sophistication does not undercut "surprise *or* other sharp practices where a party with less bargaining power is *not* told about an *unusual* provision," or is otherwise "*lied to*, placed under duress, or *otherwise manipulated*..." *Poublon*, 846 F.3d at 1261, *citing Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1245 (2016). Further, an agreement's use of confusing language is unconscionable. *Milliner v. Bock Evans Fin. Counsel, Ltd.*, 114 F.Supp.3d 871 (N.D. Cal. 2015). So, too, is a one-sided description of arbitration. *Quevedo v. Macy's, Inc.*, 798 F.Supp.2d 1122, 1137 (C.D.Cal. 2011).[47] USC also cannot expect employees to go elsewhere to figure out how the AA deviates from JAMS Rules, particularly in introducing the formalism of federal procedure.[48] Here, as demonstrated above, USC violates all of the above.

**Substantive unconscionability** is shown by:

> [T]erms that ***impair*** *the integrity of the bargaining process* or otherwise ***contravene the public interest or public policy***; terms (usually of an

[46] ("Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees," courts "must be particularly attuned to claims that employers with *superior bargaining power* have imposed *one-sided*, substantively unconscionable terms as part of an arbitration agreement.").

[47] Holding that there is procedural unconscionability where the defendant "[gave] a one-side view of the benefits of arbitration and [did] not alert employees to the potential drawbacks of foregoing the rights available in federal court to a jury trial, to more extensive discovery, and appeal".

[48] *Zullo v. Sup.Ct.*, 197 Cal.App.4th 477, 485-86 (2011) (requiring account Executive to engage in an independent inquiry to find the applicable rules in order to understand that what she was asked to sign was unconscionable).

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

adhesion or boilerplate nature) that attempt to *alter* in an impermissible manner *fundamental duties otherwise imposed by the law*, *fine-print terms*, or provisions that seek to *negate the reasonable expectations* of the nondrafting party, or *unreasonably and unexpectedly* harsh terms having to do with...central aspects of the transaction.

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1146 (2013).

USC's AA fails on all these grounds. In *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003),[49] there was, as here, an improper express power to revoke. Also, the express terms here foreclose equitable exceptions to the "prescribed" limitations. AA at ¶ 6; *see Ingle*, 328 F.3d at 1165.[50] Further, the JAMS Minimum Standards on the statute of limitations do *not* save USC, as neither those standards, nor the JAMS EARAP, are fully incorporated; instead ¶ 5 *supersedes* conflicting JAMS Rules. One-way waivers are also improper. *Ingle*, 328 F.3d 1165. Even ¶ 8's hurdles on discovery negate expectations, especially when combined with the formalism of FRCP 12 and 56. Yet, the AA imposes restrictions permitted by JAMS Rule 17(b), and a court cannot imply contrary provisions. Moreover, JAMS Rule 26, and the Confidentiality Statement, negate expectations.

---

[49] *Cf. 24 Hour Fitness, Inc. v. Sup.Ct.*, 66 Cal.App.4th 1199, 1214-15 (1998) (where handbook provided for notice of changes to employee, unilateral right to *modify* the agreement was not "illusory" because it must be exercised with the implied covenant of good faith and fair dealing). In contrast, where "express provisions of the contract grant the right to engage in the very acts and conduct," the parties are not "forbidden by an implied covenant of good faith and fair dealing." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc*, 2 Cal.4th 342, 374 (1992).

[50] *Addison v. State of Cal.*, 21 Cal.3d 313, 318-19 (1978) ("Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the [CCP]' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness"); *Barrington v. A. H. Robins Co.*, 39 Cal.3d 146, 151 (1985); *Elkins v. Derby*, 12 Cal.3d 410, 420 (1974); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1199-1200 (2008); *cf.*, JAMS Minimum Standards ("All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available").

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1176 (S.D. Cal. 2011) (confidentiality handicaps employees).

### J. The Arbitration Agreement Is Prejudicial To The Public Interest

California Civil Code § 1689's public interest "may be based on the policy expressed in a statute or the rules of a voluntary regulatory entity or may be implied from the language of such statute or rule." *Cariveau v. Halferty*, 83 Cal.App.4th 126, 131 (2000); *Tatterson v. Kehrlein*, 88 Cal.App. 34 (1927). First, JAMS "might reasonably be thought biased against one litigant and favorable to another." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149 (1968). Second, USC's AA is contrary to federal statute and dual sovereignty. *Cf., Fed. Sav. & Loan Ins. Corp. v. Angell, Holmes & Lea*, 838 F.2d 395, 397 (9th Cir. 1988). Third, the FAA does not preempt *McGill*, and meets *McGill's* rule,[51] and Art. III. *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal.4th 303, 304, 315 (2003). USC's cases and authority are inapposite.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Defendant USC's Motion to Compel Arbitration of Plaintiff's First Amended Complaint.

DATED:      June 22, 2021          JML LAW, A Professional Law Corporation

By:   _____
      JOSEPH M. LOVRETOVICH
      JENNIFER A. LIPSKI
      *Attorneys for Plaintiff DOE*

---

[51] *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 961 (2017) ("Because the arbitration provision purported to waive the plaintiff's right to seek public injunctive relief in any forum, the Court "conclude[d] that the arbitration provision here at issue [was] invalid and unenforceable."); *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 822 (9th Cir. 2019) (contractual agreement that purports to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law).

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367